**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08-CR-50013 |
| vs. | ) | |
| | ) | |
| ROBERT S. JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS COUNT II OF THE INDICTMENT**

NOW COMES the defendant, ROBERT S. JOHNSON, by his attorneys, SREENAN & CAIN, P.C., RANDY WILT, and for his Memorandum in Support of Motion to Dismiss Count II of the Indictment, states as follows:

**PERTINENT FACTS (UNDISPUTED)**

For the purposes of this Motion and based upon discovery received from the Government, it is believed to be undisputed that Defendant, ROBERT JOHNSON, operated a business in Gays Mill, Wisconsin, involved in the breeding and raising in captivity of elk. Defendant's operation was known as Hard Rock Game Farms and had been in existence for a number of years prior to March 2005. The elk, while in Wisconsin, were confined, fed, and periodically examined and otherwise cared for by a veterinarian and/or Defendant and his employees.

In March 2005, Defendant obtained a permit to transport a set number of these elk to Illinois for slaughter. These elk were taken to a farm in Leaf River owned by Defendant's mother, and not subsequently transported for immediate slaughter. The reasons for such delay are not relevant to the motion.

**COUNT II**

It is alleged in Count II of the Indictment as follows:

> *On or about March 18, 2006, at Leaf River, in the Northern District of Illinois, Western Division, and elsewhere*
>
> *ROBERT S. JOHNSON*

1

*Defendant herein, transported **Wildlife**, namely six elk, in interstate commerce, knowing that said wildlife was transported in violation of the laws and regulations of the State of Illinois, specifically 520 Illinois Compiled Statutes, 5/2.2, and in so doing, knowingly engaged in conduct involving the sale, the offer of sale, and the intent to sell, of wildlife having a market value exceeding $350;*

*In violation of Title 16, United States Code, Sections 3372(a)(2)(A) and 3373(d)(1)(B).*  (Emphasis added.)

## DISCUSSION

Defendant is charged with a violation of the Lacey Act, Title 16 USC, Section 3371, et seq.  As charged in Count II and as required, to commit a Lacey Act violation, there must also be an underlying violation of a separate State statute of Federal regulation.  *U.S. v. McDougall*, 25 F.2upp2d 85 (NDNY 1998).

In Count II, the underlying violation alleged is a violation of Section 5/2-2 of the Illinois Wildlife Code (520 ILCS, Section 5/1.1 et seq)  (Exhibit A).

Section 5/2.2 identifies certain protected species of wildlife and imposes restrictions upon their being transported into the state and taking, possessing, selling, or offering to seel such animals within the state.  The Act, and, therefore, Section 5/2.2, ". . .apply ONLY to the wild birds. . .and wild mammals. . .in the State of Illinois or which may be brought into the State. . . ."  (Emphasis added.)

Simply stated, elk are not included among the identified protected species in Section 5/2.2.

Section 5/2.2 also contains what may be viewed as an umbrella/catch-all provision.  This catch-all provision is believed to be the basis for the government's claim against Defendant, ROBERT JOHNSON, as asserted in Count II.  It reads as follows:

*It shall be unlawful for any person to bring into the State of Illinois for the purpose of holding, releasing, propagating, or selling any living wild animal, not covered by this Act, without first obtaining a permit from the director.*

In light of the language of this section, it is necessary to determine what is a "wild" animal.  Certainly Defendant's elk are animals.  Do they, however, meet the definition of "wild"?

Sections 5/1.2s and 5/1.2t of the Illinois Wildlife Code (520 ILCS 5/1.2s and (5/1.2t), respectively, define the terms "wild" and "wildlife" for purposes of the Act.  An animal is "wild" if it is ". . .*not domesticated, living unconfined in a state of nature.*"  Similarly, an animal qualifies as "wildlife" if it is "  . . .*living in a state of nature without the care of man, including all species covered by this Act.*"

2

The elk in question, allegedly moved by Defendant from Wisconsin to Illinois in March of 2005, are not "wild" animals nor are they "wildlife" as defined in the Illinois Wildlife Code. As noted, they were born and raised in captivity as a part of a commercial venture in Wisconsin. While in Wisconsin, they were confined in a fenced area, fed, tagged, and cared for by Defendant or persons working in his employ. The elk were part of a registered domestic herd categorized in the State of Wisconsin as "farm-raised deer." (Exhibits B and C.)

Similarly, in Illinois, the elk were held at a family farm in Leaf River. The elk were confined in a fenced area and fed and cared for by Defendant's sister or others in Defendant's employ of the employ of his sister.

Neither in the State of Wisconsin nor the State of Illinois did the elk live "unconfined" nor in a "state of nature." At all times, they were "cared for by man." Consequently, they met neither the definition of "wild" or "wildlife" under the Illinois Wildlife Code.

[NOTE: Illinois DNR agents became involved only after some of the elk escaped from the confinement area in Leaf River.]

If the elk in question did not qualify as wild or wildlife, their transport into Illinois was not and could not be a violation of 520 ILCS, Section 5/2.2. Absent a violation of 520 ILCS, Section 5/2.2, the charge in Count II of the Indictment is without basis and must be dismissed.

ROBERT S. JOHNSON, Defendant,


By_____S/_____
RANDY WILT, Attorney at Law

*Prepared by:*
RANDY WILT #3127828
SREENAN & CAIN, P.C.
321 West State Street, Suite 700
Rockford, IL 61101
(815) 962-5490

310

n this Code,
Act shall be

his Code as
home rule
er prior law
andates Act

of Acts are

pealed)

TE

ct upon be-

# CHAPTER 520

# WILDLIFE

**Act**
5.   Wildlife Code
10.  Illinois Endangered Species Protection Act.
15.  Wildlife Restoration Cooperation Act.
20.  Wildlife Habitat Management Areas Act.
25.  Habitat Endowment Act.
30.  Illinois Hunting Heritage Protection Act.

## ACT 5.  WILDLIFE CODE

**Article**
I.    Authorities and Powers.
II.   Game Protective Regulations
III.  Licenses and Permits.
IV.   Transportation Of Birds And Game

## ARTICLE I.  AUTHORITIES AND POWERS

**Section**
5/1 1.      Short title
5/1 2.      Administration by Department of Natural Resources; definitions.
5/1 2a      Administrative rule.
5/1 2b.     Authorized employee.
5/1 2b-1    Case
5/1 2c.     Contraband
5/1 2c-1.   Daily Limit.
5/1 2d      Department
5/1 2e.     Director.
5/1 2f.     Freshly killed
5/1 2g      Fur-bearing mammals.
5/1 2h      Game mammals.
5/1 2i.     Green hide.
5/1 2j      Gun.
5/1 2k      Hunt.
5/1 2l.     Person
5/1 2m      Resident
5/1 2m-1.   Possession Limit.
5/1 2n.     Sale.
5/1 2o.     Take
5/1 2p.     Transport or ship.
5/1 2q.     Trap.
5/1 2r      Vehicle.
5/1 2s.     Wild.
5/1 2t.     Wildlife.
5/1 2u.     Individual
5/1 2v.     Water set.
5/1 2w.     Land set.
5/1 2x.     Taxidermy.
5/1 3.      Authority to manage and regulate the taking of wildlife
5/1 4.      Administrative rules; promulgation; copy as evidence; enforcement
5/1 5.      Cooperation in pollution investigations and reports
5/1 6.      Propagation and stocking of mammals or birds.
5/1 7.      Distribution of mammals and birds for propagation purposes.
5/1 8.      Refuges or public hunting areas.

**Section**
5/1 9.      Acquisition of lands; purchase, gift and eminent domain—Purposes
5/1 9–1.    State game farms.
5/1 9–2.    Eminent domain
5/1 10.     Conservation, distribution, introduction and restoration of birds and mammals; actions and proceedings; change of penalties, etc.; cooperation with federal and state agencies
5/1 11      Conservation training schools; dissemination of conservation information; bulletin or magazine
5/1 12.     Management and habitat development
5/1 13.     Daily usage stamp; public hunting grounds; rules and regulations governing public hunting areas.
5/1 14.     Employees as peace officers.
5/1 15      Duties and powers of peace officers
5/1 16.     Enforcement by State's attorney.
5/1 17      Venue; limitations
5/1 18.     Remittance of fines
5/1 19.     Authority to search
5/1 20.     Confiscation; evidence of illegality
5/1 21      Search warrants.
5/1 22      Resistance to officers.
5/1 23.     False representation.
5/1 24      Contraband; definition and disposition
5/1 25      Nuisances; confiscation and disposition.
5/1 26.     Separate offenses
5/1 27.     Accessories
5/1 28.     Fees and fines; deposit in funds.
5/1 28a     Use of wildlife and fish fund for capital development bonds.
5/1 29.     Migratory Waterfowl Stamp Fund
5/1 30      Federal Migratory Bird Hunting and Conservation Stamps.
5/1 31.     Pheasant Fund
5/1 32.     Distribution of funds; State Furbearer Committee.
5/1 33.     Repealed

### 5/1 1.  Short title

§ 1.1.  This Act shall be known and may be cited as the "Wildlife Code"

P.A. 77–1781, § 1.1, eff. July 1, 1972.  Amended by P.A. 81–382, § 1, eff. Jan. 1, 1980

Formerly Ill Rev Stat 1991, ch 61, ¶ 1.1

**Title of Act:**

An Act to revise the law of Illinois in relation to the conserving of wild birds and wild mammals, to provide penalties for violations thereof and further to repeal an Act named herein  P.A. 77–1781, approved Dec. 10, 1971, eff. July 1, 1972

### 5/1.2.  Administration by Department of Natural Resources; definitions

§ 1.2.  This Act shall be administered by and under the direction of the Department of Natural Resources  As used in this Act, unless the context otherwise requires, the terms

311



**EXHIBIT**
tabbies
A

specified in Sections 1.2a through 1.2t have the meanings ascribed to them in those Sections.

P.A. 77–1781, § 12, eff. July 1, 1972. Amended by P.A. 78–826, § 1, eff. Oct. 1, 1973; P.A. 79–469, § 1, eff. Oct. 1, 1975; P.A. 81–382, § 1, eff. Jan. 1, 1980; P.A. 89–445, § 9A–62, eff. Feb. 7, 1996.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2.

## 5/1.2a.  Administrative rule

§ 1.2a. "Administrative rule" means an administrative rule of the Department issued under Section 13 of this Act.

P.A. 77–1781, § 1.2a, added by P.A. 81–382, § 1, eff. Jan. 1, 1980. Amended by P.A. 85–152, § 1, eff. Jan. 1, 1988.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2a.

## 5/1.2b.  Authorized employee

§ 1.2b. "Authorized Employee" means all sworn members of the Law Enforcement Division and those persons specifically granted law enforcement authorization by the Director.

P.A. 77–1781, § 1.2b, added by P.A. 81–382, § 1, eff. Jan. 1, 1980.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2b.

## 5/1.2b–1.  Case

§ 1.2b–1.  Case.  Case means a container specifically designed for the purpose of housing a gun or bow and arrow device which completely encloses such gun or bow and arrow device by being zipped, snapped, buckled, tied or otherwise fastened with no portion of the gun or bow and arrow device exposed.

P.A. 77–1781, § 1.2b–1, added by P.A. 84–150, § 1, eff. Jan. 1, 1986.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2b–1.

## 5/1.2c.  Contraband

§ 1.2c. "Contraband" means all wild birds or any part thereof, (their nests or eggs), wild mammals or any part thereof, taken, bought, sold or bartered, shipped or had in possession, or any conveyance, vehicle, water craft or other means of transportation whatsoever (except sealed railroad cars or other common carrier) used to transport or ship any part thereof so taken, contrary to any of the provisions hereof or an administrative rule of the Department; or any of the previously specified species when taken legally but transported contrary to any of the provisions of this Act or an administrative rule of the Department.

P.A. 77–1781, § 1.2c, added by P.A. 81–382, § 1, eff. Jan. 1, 1980. Amended by P.A. 85–152, § 1, eff. Jan. 1, 1988.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2c.

## 5/1.2c–1.  Daily Limit

§ 1.2c–1.  Daily Limit.  Daily Limit means the maximum number or amount of species which can be lawfully taken by one person in one calendar day.

P.A. 77–1781, § 1.2c–1, added by P.A. 84–150, § 1, eff. Jan. 1, 1986.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2c–1.

## 5/1.2d.  Department

§ 1.2d. "Department" means the Department of Natural Resources.

P.A. 77–1781, § 1.2d, added by P.A. 81–382, § 1, eff. Jan. 1, 1980. Amended by P.A. 89–445, § 9A–62, eff. Feb. 7, 1996.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2d.

## 5/1.2e.  Director

§ 1.2e. "Director" means the Director of Natural Resources.

P.A. 77–1781, § 1.2e, added by P.A. 81–382, § 1, eff. Jan. 1, 1980. Amended by P.A. 89–445, § 9A–62, eff. Feb. 7, 1996.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2e.

## 5/1.2f.  Freshly killed

§ 1.2f. "Freshly killed" means any carcass, remains or parts of the body of any dead mammal or bird that has not been prepared for immediate consumption or storage for later consumption.

P.A. 77–1781, § 1.2f, added by P.A. 81–382, § 1, eff. Jan. 1, 1980.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2f.

## 5/1.2g.  Fur-bearing mammals

§ 1.2g. "Fur-bearing mammals" means the following specific species: mink, muskrat, raccoon, striped skunk, weasel, bobcat, opossum, beaver, river otter, badger, red fox, gray fox, and coyote.

P.A. 77–1781, § 1.2g, added by P.A. 81–382, § 1, eff. Jan. 1, 1980.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2g.

## 5/1.2h.  Game mammals

§ 1.2h. "Game mammals" means the following specific species: cottontail, swamp, and jack rabbit, white-tailed deer, fox squirrel, gray squirrel and ground hog.

P.A. 77–1781, § 1.2h, added by P.A. 81–382, § 1, eff. Jan. 1, 1980.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2h.

## 5/1.2i.  Green hide

§ 1.2i. "Green hide" means any hide or pelt which has not been tanned.

P.A. 77–1781, § 1.2i, added by P.A. 81–382, § 1, eff. Jan. 1, 1980.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2i.

## 5/1.2j.  Gun

§ 1.2j. "Gun" means shotgun, rifle, handgun, or air gun.

P.A. 77–1781, § 1.2j, added by P.A. 81–382, § 1, eff. Jan. 1, 1980.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2j.

## 5/1.2k.  Hunt

§ 1.2k. "Hunt" means the act of a person possessing a weapon or being accompanied by a dog or a bird of prey for the purpose of taking species protected by this Act in any location such species may inhabit.

P.A. 77–1781, § 1.2k, added by P.A. 81–382, § 1, eff. Jan. 1, 1980. Amended by P.A. 85–152, § 1, eff. Jan. 1, 1988.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2k.

Case 3:08-cr-50013    Document 25-2    Filed 07/30/2008    Page 3 of 12

## 5/1.2l.  Person

§ 1.2l.  "Person" includes the plural "persons", "females" as well as "males" and shall extend and be applied to clubs, associations, corporations, firms and partnerships as well as individuals.

P.A. 77-1781, § 1.2l, added by P.A. 81-382, § 1, eff. Jan. 1, 1980.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2l.

## 5/1.2m.  Resident

§ 1.2m.  "Resident" means a person who in good faith makes application for any license or permit and verifies by statement that he or she has maintained his or her permanent abode in this State for a period of at least 30 consecutive days immediately preceding the person's application, and who does not maintain permanent abode or claim residency in another state for the purposes of obtaining any of the same or similar licenses or permits covered by this Code.  A person's permanent abode is his or her fixed and permanent dwelling place, as distinguished from a temporary or transient place of residence.  Domiciliary intent is required to establish that the person is maintaining his or her permanent abode in this State.  Evidence of domiciliary intent includes, but is not limited to, the location where the person votes, pays personal income tax, or obtains a drivers license.  Except for the purposes of obtaining a Lifetime License, any person on active duty in the Armed Forces shall be considered a resident of Illinois during his or her period of military duty.

P.A. 77-1781, § 1.2m, added by P.A. 81-382, § 1, eff. Jan. 1, 1980.  Amended by P.A. 94-10, § 15, eff. June 7, 2005.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2m.

## 5/1.2m–1.  Possession Limit

§ 1.2m–1.  Possession Limit.  Possession Limit means the maximum number or amount of species which can be lawfully held or possessed by one person at any time.

P.A. 77-1781, § 1.2m–1, added by P.A. 84-150, § 1, eff. Jan. 1, 1986.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2m–1.

## 5/1.2n.  Sale

§ 1.2n.  "Sale" means to sell, barter or otherwise offer goods to another for consideration.  The term sale shall include serving the same as a part of a meal by any restaurant, hotel, or other commercial establishment.  Proof of sale of any such game bird or game mammal shall constitute prima facie evidence that such birds or mammals were also sold in violation of this Act except as provided in Sections 3.23 and 3.24.

P.A. 77-1781, § 1.2n, added by P.A. 81-382, § 1, eff. Jan. 1, 1980.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2n.

## 5/1.2o.  Take

§ 1.2o.  "Take" means hunt, shoot, pursue, lure, kill, destroy, capture, gig or spear, trap or ensnare, harass, or to attempt to do so.

P.A. 77-1781, § 1.2o, added by P.A. 81-382, § 1, eff. Jan. 1, 1980.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2o.

## 5/1.2p.  Transport or ship

§ 1.2p.  "Transport" or "ship" means to convey by means of parcel post, express, freight, baggage or shipment by common carrier of any description; or by automobile, motorcycle, or other vehicle of any kind; or by water or aircraft of any kind or by any other means of transportation whatsoever.

P.A. 77-1781, § 1.2p, added by P.A. 81-382, § 1, eff. Jan. 1, 1980.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2p.

## 5/1.2q.  Trap

§ 1.2q.  "Trap" means to capture, or attempt to capture, by setting or placing a leg hold trap, cushion-hold trap, bodygripping trap, cage or box trap, snare or other similar device permitted by this Act to capture, hold or kill any wildlife protected by this Act.

P.A. 77-1781, § 1.2q, added by P.A. 81-382, § 1, eff. Jan. 1, 1980.  Amended by P.A. 85-152, § 1, eff. Jan. 1, 1988;  P.A. 86-1354, § 1, eff. Jan. 1, 1991.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2q.

## 5/1.2r.  Vehicle

§ 1.2r.  "Vehicle" means any device capable of transporting a person on land, on ice, on water, in water, or in the air.

P.A. 77-1781, § 1.2r, added by P.A. 81-382, § 1, eff. Jan. 1, 1980.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2r.

## 5/1.2s.  Wild

§ 1.2s.  "Wild" means not domesticated, living unconfined in a state of nature.

P.A. 77-1781, § 1.2s, added by P.A. 81-382, § 1, eff. Jan. 1, 1980.  Amended by P.A. 85-152, § 1, eff. Jan. 1, 1988.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2s.

## 5/1.2t.  Wildlife

§ 1.2t.  "Wildlife" means any bird or mammal living in a state of nature without the care of man including all species covered by this Act.

P.A. 77-1781, § 1.2t, added by P.A. 81-382, § 1, eff. Jan. 1, 1980.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2t.

## 5/1.2u.  Individual

§ 1.2u.  "Individual" means a natural person.

P.A. 77-1781, § 1.2u, added by P.A. 84-150, § 1, eff. Jan. 1, 1986.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2u.

## 5/1.2v.  Water set

§ 1.2v.  "Water set" means any trap or similar device which is placed or set in contact with flowing or impounded water.

P.A. 77-1781, § 1.2v, added by P.A. 85-152, § 1, eff. Jan. 1, 1988.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2v.

**520 ILCS 5/1.2w**        WILDLIFE        314

### 5/1.2w. Land set

§ 1.2w. "Land set" means any trap or similar device which is not placed or set in contact with flowing or impounded water.

P.A. 77–1781, § 1.2w, added by P.A. 85–152, § 1, eff. Jan. 1, 1988

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.2w.

### 5/1.2x. Taxidermy

§ 1.2x. Taxidermy. "Taxidermy" means the art of preparing, preserving, and mounting the skins of fish, birds, or mammals to make them appear lifelike.

P.A. 77–1781, § 1.2x, added by P.A. 88–416, § 10, eff. Jan. 1, 1994.

### 5/1.3. Authority to manage and regulate the taking of wildlife

§ 1.3. The Department shall have the authority to manage wildlife and regulate the taking of wildlife for the purposes of providing public recreation and controlling wildlife populations. The seasons during which wildlife may be taken, the methods for taking wildlife, the daily bag limits, and the possession limits shall be established by the Department through administrative rule, but the Department may not provide for a longer season, a larger daily bag limit, or a larger possession limit than is provided in this Code.

The Natural Resources Advisory Board may also recommend to the Director of Natural Resources any reductions or increases of seasons and bag or possession limits or the closure of any season when research and inventory data indicate the need for such changes.

The Department is authorized to establish seasons for the taking of migratory birds within the dates established annually by Proclamation of the Secretary, United States Department of the Interior, known as the "Rules and Regulations for Migratory Bird Hunting" (50 CFR 20 et seq.). When the biological balance of any species is affected, the Director may with the approval of the Conservation Advisory Board, by administrative rule, lengthen, shorten or close the season during which waterfowl may be taken within the federal limitations prescribed. If the Department does not adopt an administrative rule establishing a season, then the season shall be as set forth in the current "Rules and Regulations for Migratory Bird Hunting". The Department shall advise the public by reasonable means of the dates of the various seasons.

The Department may utilize the services of the staff of the Illinois State Natural History Survey Division in the Department of Natural Resources for making investigations as to the population status of the various species of wildlife.

Employees or agents of any state, federal, or municipal government or body when engaged in investigational work and law enforcement, may with prior approval of the Director, be exempted from the provisions of this Act.

P.A. 77–1781, § 1.3, eff. July 1, 1972. Amended by P.A. 77–2064, § 1, eff. July 18, 1972; P.A. 78–255, § 61, eff. Oct. 1, 1973; P.A. 81–382, § 1, eff. Jan. 1, 1980; P.A 82–592, § 3, eff. Sept. 24, 1981; P.A. 85–152, § 1, eff. Jan. 1, 1988; P.A. 87–1015, § 45, eff. April 1, 1993; P.A. 89–445, § 9B–64, eff. Feb. 7, 1996; P.A 90–435, § 15, eff. Jan. 1, 1998.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.3.

### 5/1.4. Administrative rules; promulgation; copy as evidence; enforcement

§ 1.4. The Department is authorized to make rules and regulations for carrying out, administering and enforcing the provisions of this Act. These rules and regulations shall be called and hereinafter referred to as administrative rules.

Each rule shall be promulgated in accordance with the Illinois Administrative Procedure Act.[1]

A copy of any such rule, under the seal of the Department and certified by the Director thereof shall be received in evidence in all courts of this State with the same effect as the original.

Such rules, after becoming effective, shall be enforced in the same manner as are any other provisions of this Act and violators thereof are subject to the penalties set out in Section 3.5 of this Act.

P.A. 77–1781, § 1.4, eff. July 1, 1972. Amended by P.A. 78–826, § 1, eff. Oct. 1, 1973; P.A. 81–382, § 1, eff. Jan. 1, 1980; P.A 85–152, § 1, eff. Jan. 1, 1988; P.A. 91–357, § 220, eff. July 29, 1999.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.4.

    1 5 ILCS 100/1–1 et seq.

### 5/1.5. Cooperation in pollution investigations and reports

§ 1.5. The Department is authorized to cooperate with the Environmental Protection Agency of the State of Illinois in making pollution investigations and making reports thereof.

P.A. 77–1781, § 1.5, eff. July 1, 1972. Amended by P.A 77–2064, § 1, eff. July 18, 1972; P.A. 78–255, § 61, eff. Oct. 1, 1973.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.5.

### 5/1.6. Propagation and stocking of mammals or birds

§ 1.6. The Department, and persons authorized by it, may take, purchase or propagate, any mammals or birds, or eggs of such birds for propagation and stocking purposes, and when so taken, may transmit them to parts of the State where a scarcity of such birds or mammals exists, for the purpose of restocking such parts of the State.

P.A. 77–1781, § 1.6, eff. July 1, 1972. Amended by P.A. 81–382, § 1, eff. Jan. 1, 1980.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.6.

### 5/1.7. Distribution of mammals and birds for propagation purposes

§ 1.7. The Department is authorized to produce such mammals, birds or their eggs, and to distribute them to anyone having suitable land or means for their breeding, hatching or further propagation; the Department shall also have authority to enter into agreements with such distributees for the propagation or purchase of mammals, birds, (or their eggs), produced by such distributees.

P.A. 77–1781, § 1.7, eff. July 1, 1972. Amended by P.A. 81–382, § 1, eff. Jan. 1, 1980.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.7.

### 5/1.8. Refuges or public hunting areas

§ 1.8. The Department may establish and maintain refuges or public hunting areas upon any lands or waters owned by the Federal government by mutual consent of the Federal

and State governments and upon any lands owned or leased by the State, with the consent and approval of the state department or agency having jurisdiction over such lands.

The Department may designate state managed lands and waters or portions thereof as wildlife refuges by administrative rule.

It shall be unlawful to take any species of wildlife on any property named as a wildlife refuge by the Department or other Department management areas except as provided by Section 2.25 and Administrative Rules.

The Department shall post the boundaries of such refuges and shall publish legal notices in accordance with the procedure set forth in Section 1.13 pertaining to the operation of Public Hunting Areas.

P.A. 77-1781, § 1.8, eff. July 1, 1972.   Amended by P.A. 81-382, § 1, eff. Jan. 1, 1980;  P.A. 85-152, § 1, eff. Jan. 1, 1988.
Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.8.

### 5/1.9.   Acquisition of lands; purchase, gift and eminent domain—Purposes

§ 1.9   The Department shall have the power and authority to select and purchase or lease, receive by donation or acquire, in accordance with the laws relating to eminent domain: (a) suitable lands for the breeding, hatching, propagation and conservation of birds or mammals, (b) lands or lands and waters, to be used as public hunting and fishing grounds, or (c) lands or lands and waters to be used as wildlife refuges.

P.A. 77-1781, § 1.9, eff. July 1, 1972.   Amended by P.A. 81-382, § 1, eff. Jan. 1, 1980.
Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.9.

### 5/1.9-1.   State game farms

§ 1.9-1.   The following described areas are designated as State game farms:

Wilmington State Game Farm in Will County;

Glen D. Palmer State Game Farm in Kendall County;

Mt. Vernon State Game Farm in Jefferson County.

P.A. 77-1781, § 1.9-1, added by P.A. 77-2064, § 1, eff. July 18, 1972.   Amended by P.A. 78-255, § 61, eff. Oct. 1, 1973.
Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.9-1.

### 5/1.9-2.   Eminent domain

§ 1.9-2   Eminent domain.   Notwithstanding any other provision of this Code, any power granted under this Code to acquire property by condemnation or eminent domain is subject to, and shall be exercised in accordance with, the Eminent Domain Act.

P.A. 77-1781, § 1.9-2, added by P.A. 94-1055, Art. 95, § 95-5-720, eff. Jan. 1, 2007.

### 5/1.10.   Conservation, distribution, introduction and restoration of birds and mammals; actions and proceedings; change of penalties, etc.; cooperation with federal and state agencies

§ 1.10.   The Department shall take all measures necessary for the conservation, distribution, introduction and restoration of birds and mammals. The Department also shall bring or cause to be brought, actions and proceedings, in the name, and by the authority, of the People of the State of Illinois, to enforce the provisions of this Act, including administrative rules, and to recover any and all fines and penalties hereinaf-

ter provided for.  Nothing in this Act shall be construed to authorize the Department to change any penalty prescribed by law for a violation of its provisions, or to change the amount of licenses prescribed by law.  The Department is authorized to cooperate with the appropriate Departments of the Federal Government and other Departments or agencies of the State government and educational institutions in conducting surveys, experiments, or work of joint interest or benefit.

P.A. 77-1781, § 1.10, eff. July 1, 1972.   Amended by P.A. 81-382, § 1, eff. Jan. 1, 1980;  P.A. 85-152, § 1, eff. Jan. 1, 1988.
Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.10.

### 5/1.11.   Conservation training schools; dissemination of conservation information; bulletin or magazine

§ 1.11.   The Department may establish Conservation Training Schools and employ technicians and such other help as may be necessary for the purpose of teaching conservation methods to employees of the Department, and such other interested groups as the Department shall deem necessary or desirable to carry out the provisions and purposes of this Act.

The Department shall, in order to educate the citizens of this State in the modern trends of conservation, disseminate conservation information and the provisions of this Act through the mediums of lectures, motion pictures, photographs, pictures, exhibits, radio, news items, pamphlets and other media the Department may deem suitable for this purpose.

The Department may publish, periodically, a bulletin or magazine containing information concerning the work of the Department, the conservation and propagation of wildlife, hunting and fishing, and any such other information as the Department deems to be of general or special interest to sportsmen and others affected by law administered by the Department.  A reasonable charge may be made for each copy of such publication.  All funds derived from the sale of such publication shall be deposited in the Wildlife and Fish fund in the State Treasury.

P.A. 77-1781, § 1.11, eff. July 1, 1972.   Amended by P.A. 81-382, § 1, eff. Jan. 1, 1980.
Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.11.

### 5/1.12.   Management and habitat development

§ 1.12.   The Department shall use the most modern conservation methods to manage wildlife on State controlled lands or waters for propagation or breeding wildlife.  The Department may cooperate with any person desirous of managing wildlife on private lands or waters by (a) furnishing trees, shrubs, seeds or other materials where deemed necessary or desirable and (b) providing labor, equipment and technical supervision to plan and assist the landowner in wildlife habitat development.

P.A. 77-1781, § 1.12, eff. July 1, 1972.   Amended by P.A. 81-382, § 1, eff. Jan. 1, 1980.
Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.12.

### 5/1.13.   Daily usage stamp; public hunting grounds; rules and regulations governing public hunting areas

§ 1.13.   The Department is authorized to issue a "Public Hunting Grounds for Waterfowl" daily usage stamp at a fee not to exceed $10 for duck hunting areas, and not to exceed $15 for Canada goose hunting areas; and a "Public Hunting

Grounds for Pheasants" daily usage stamp not to exceed $15, such stamp to expire at the end of the day of issue. Each person shall obtain such a stamp from the Department to be attached to the permit card assigned to a person under the provisions of the rules and regulations made by the Department for the operation of State Public Hunting Grounds.

The Department is authorized to permit hunters to harvest both male and female hand reared pheasants released on such public hunting grounds.

The Department shall cause an administrative rule, setting forth the rules and regulations for the operation of Public Hunting Areas on lands and waters owned or leased by this State.

P.A. 77-1781, § 1.13, eff. July 1, 1972. Amended by P.A. 80-1409, § 1, eff. March 31, 1979; P.A. 81-382, § 1, eff. Jan. 1, 1980; P.A. 82-434, § 2, eff. Sept. 8, 1981; P.A. 85-152, § 1, eff. Jan. 1, 1988; P.A. 87-126, § 1, eff. Aug. 13, 1991

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.13

## 5/1.14. Employees as peace officers

§ 1.14. All authorized employees of the Department shall have the power of, and shall be peace officers in the enforcement of the provisions of this Act, including administrative rules, and may carry such weapons as may be necessary to arrest any person resisting arrest.

P.A. 77-1781, § 1.14, eff. July 1, 1972. Amended by P.A. 85-152, § 1, eff. Jan. 1, 1988.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.14

## 5/1.15. Duties and powers of peace officers

§ 1.15. All authorized employees of the Department, duly accredited officers of the U.S. Fish and Wildlife Service, and all sheriffs, deputy sheriffs, and other peace officers shall be empowered to arrest any person detected in violation of any of the provisions of this Act, including administrative rules.

All such officers shall make prompt investigation of any violation of the provisions of this Act, including administrative rules, reported by any other person, and cause a complaint to be filed before the Circuit Court having jurisdiction thereof in case there seems just ground for such complaint and evidence procurable to support the same.

Upon the filing of such complaint, such officers shall render assistance in the prosecution of the party against whom complaint is made.

Peace officers, but no employee of the Department, making arrests and serving warrants provided for by this Act, shall receive the fees and mileage as provided by law for sheriffs.

Each duly accredited officer and authorized employee of the Department is authorized to execute and serve all warrants and processes issued by any Circuit Court.

In the performance of their law enforcement duties under this Act, authorized employees of the Department may operate vehicles owned or leased by the Department upon a highway, other than an interstate highway, limited access highway, State highway or any highway within the limits of an incorporated area, during hours of darkness without lighted headlamps, tail lamps and clearance lamps, notwithstanding the provisions of Article 12 of The Illinois Vehicle Code [1] if so operating such vehicles will aid in the accomplishment of a lawful arrest for violation of this Act or subsequent administrative rules or in ascertaining whether a violation of this Act or subsequent administrative rules has

been or is about to be committed and when it will not endanger the public health, safety and welfare.

P.A. 77-1781, § 1.15, eff. July 1, 1972. Amended by P.A. 78-826, § 1, eff. Oct. 1, 1973; P.A. 81-382, § 1, eff. Jan. 1, 1980; P.A. 84-150, § 1, eff. Jan. 1, 1986; P.A. 85-152, § 1, eff. Jan. 1, 1988.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.15.

[1] 625 ILCS 5/12-100 et seq.

## 5/1.16. Enforcement by State's attorney

§ 1.16. All State's Attorneys shall enforce the provisions of this Act, including administrative rules, in their respective counties, and shall prosecute all persons charged with violating such provisions, when so requested by the Department.

P.A. 77-1781, § 1.16, eff. July 1, 1972. Amended by P.A. 77-2064, § 1, eff. July 18, 1972; P.A. 77-2518, § 1, eff. Jan. 1, 1973; P.A. 78-255, § 19, eff. Oct. 1, 1973; P.A. 85-152, § 1, eff. Jan. 1, 1988.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.16.

## 5/1.17. Venue; limitations

§ 1.17. All prosecutions provided for by this Act shall be brought before the Circuit Court for the county within which the offense was committed.

All such prosecutions shall be commenced within 2 years from the time the offense charged was committed.

P.A. 77-1781, § 1.17, eff. July 1, 1972. Amended by P.A. 82-965, § 2, eff. Sept. 2, 1982.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.17.

## 5/1.18. Remittance of fines

§ 1.18. All fines provided for by this Act which are imposed and collected shall be remitted to the Department, within 30 days after the collection thereof, by the Clerk of the Circuit Court collecting such fines, who shall submit at the same time to the Department, a statement of the names of the persons so fined, the name of the arresting officer, the citation number, the amount of the fine, and the date of conviction.

P.A. 77-1781, § 1.18, eff. July 1, 1972. Amended by P.A. 81-382, § 1, eff. Jan. 1, 1980.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.18.

## 5/1.19. Authority to search

§ 1.19. All authorized employees of the Department are empowered, pursuant to law, to enter all lands and waters to enforce the provisions of this Act. Authorized employees are further empowered to examine all buildings, private or public clubs, (except dwellings), fish markets, cold storage houses, locker plants, camps, vessels, cars (except sealed railroad cars or other sealed common carrier), conveyances, vehicles, watercraft, or other means of transportation or shipping whatsoever, tents, game bags, game coats or other receptacles, and to open and examine any box, barrel, package, or other receptacle in the possession of a common carrier, which they have reason to believe contains wild birds or any part thereof (their nests or eggs), or wild mammals or any part thereof, taken, destroyed, bought, sold or bartered, shipped or held in possession contrary to any of the provisions of this Act, including administrative rules, or that the receptacle containing the same is falsely labeled.

All authorized employees of the Department shall be given free access to and shall not be hindered or interfered with in making such examination, and any license issued by the

Department held by the person preventing such free access or interfering with or hindering such authorized employee shall be subject to confiscation by the Department; and no license or permit of any kind whatsoever shall be issued to such person for the period of one year thereafter

Authorized law enforcement employees of the Department are empowered to conduct examination of equipment and devices in the field, pursuant to law, to ensure compliance with the provisions of this Act.

P.A. 77–1781, § 1.19, eff. July 1, 1972.  Amended by P.A. 78–826, § 1, eff. Oct. 1, 1973; P.A. 81–382, § 1, eff. Jan. 1, 1980; P.A. 85–152, § 1, eff. Jan. 1, 1988.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.19

### 5/1.20.  Confiscation; evidence of illegality

§ 1.20.  The possession of any wild bird or wild mammal protected under this Act, is prima facie evidence that the same is subject to all the provisions of this Act, including administrative rules, pertaining to the taking, possession and disposition thereof

Whenever the contents of any box, barrel, package, or receptacle consists partly of contraband and partly of legal species or any part thereof (their nests or eggs), the entire contents of such box, barrel, package or other receptacle is subject to confiscation

Whenever a person has in his or her possession in excess of the number of wild birds or wild mammals, or parts thereof, permitted under the provisions of this Act, including administrative rules, the entire number of wild birds or wild mammals, or parts thereof, in his or her possession is subject to confiscation.

P.A. 77–1781, § 1.20, eff. July 1, 1972.  Amended by P.A. 81–382, § 1, eff. Jan. 1, 1980; P.A. 85–152, § 1, eff. Jan. 1, 1988.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.20

### 5/1.21.  Search warrants

§ 1.21  Whenever any authorized employee of the Department, sheriff, deputy sheriff or other peace officer of the State shall have reason to believe that any person, commercial institution, commission house, restaurant or cafe keeper, has in his or her, or its possession any wild birds or any part thereof (their nests or eggs), or wild mammals or any part thereof, contrary to the provisions of this Act, including administrative rules, he may file, or cause to be filed, his sworn complaint to such effect, before the Circuit Court and procure a search warrant and execute the same. Upon the execution of such search warrant, the officer executing same shall make due return thereof to the court issuing the same, together with an inventory of all the wild birds or any part thereof (their nests or eggs), or wild mammals or any part thereof, taken thereunder. The court shall thereupon issue process against the party owning, controlling or transporting the wild birds or any part thereof (their nests or eggs), or wild mammals or any part thereof, seized, and upon the return thereof it shall proceed to determine whether or not the same were held, possessed, or transported in violation of this Act, including administrative rules, and in case of a finding to the effect that the same were illegally held, possessed, transported or sold, a judgment shall be entered against the owner or party found in possession of the same for the costs of the proceeding and providing for the disposition of the property seized, as provided for by the terms hereof

P.A. 77–1781, § 1.21, eff. July 1, 1972.  Amended by P.A. 85–152, § 1, eff. Jan. 1, 1988.

### 5/1.22.  Resistance to officers

§ 1.22.  It shall be unlawful for any person to resist or obstruct any authorized employee of the Department or other peace officer in the discharge of his duties under the provisions hereof

P.A. 77–1781, § 1.22, eff. July 1, 1972.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.22.

### 5/1.23.  False representation

§ 1.23.  It shall be unlawful for any person to represent himself falsely to be an authorized employee of the Department, or to assume to act as such without having been duly appointed and employed as such.

P.A. 77–1781, § 1.23, eff. July 1, 1972

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.23.

### 5/1.24.  Contraband; definition and disposition

§ 1.24.  Contraband wild birds or any part thereof (their nests or eggs), or wild mammals or any part thereof, or fur-bearing mammals or any part thereof seized and confiscated in accordance with the provisions hereof, shall be disposed of as directed by the Department.

P.A. 77–1781, § 1.24, eff. July 1, 1972.  Amended by P.A. 78–826, § 1, eff. Oct. 1, 1973

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.24.

### 5/1.25.  Nuisances; confiscation and disposition

§ 1.25.  Every hunting or trapping device, vehicle or conveyance, when used or operated illegally, or attempted to be used or operated illegally by any person in taking, transporting, holding, or conveying any wild bird or wild mammal, contrary to the provisions of this Act, including administrative rules, is a public nuisance and subject to seizure and confiscation by any authorized employee of the Department; upon the seizure of such item the Department shall take and hold the same until disposed of as hereinafter provided

Upon the seizure of any property as herein provided, the authorized employee of the Department making such seizure shall forthwith cause a complaint to be filed before the Circuit Court and a summons to be issued requiring the person who illegally used or operated or attempted to use or operate such property and the owner and person in possession of such property to appear in court and show cause why the property seized should not be forfeited to the State. Upon the return of the summons duly served or other notice as herein provided, the court shall proceed to determine the question of the illegality of the use of the seized property and upon judgment being entered to the effect that such property was illegally used, an order may be entered providing for the forfeiture of such seized property to the Department and shall thereupon become the property of the Department; but the owner of such property may have a jury determine the illegality of its use, and shall have the right of an appeal, as in other cases.  Such confiscation or forfeiture shall not preclude or mitigate against prosecution and assessment of penalties otherwise provided in this Act.

Upon seizure of any property under circumstances supporting a reasonable belief that such property was abandoned, lost or stolen or otherwise illegally possessed or used contrary to the provisions of this Act, except property seized during a search or arrest, and ultimately returned, destroyed, or otherwise disposed of pursuant to order of a court in accordance with this Act, the authorized employee of the

520 ILCS 5/1.25          WILDLIFE          318

Department shall make reasonable inquiry and efforts to identify and notify the owner or other person entitled to possession thereof, and shall return the property after such person provides reasonable and satisfactory proof of his ownership or right to possession and reimburses the Department for all reasonable expenses of such custody. If the identity or location of the owner or other person entitled to possession of the property has not been ascertained within 6 months after the Department obtains such possession, the Department shall effectuate the sale of the property for cash to the highest bidder at a public auction. The owner or other person entitled to possession of such property may claim and recover possession of the property at any time before its sale at public auction, upon providing reasonable and satisfactory proof of ownership or right of possession and reimbursing the Department for all reasonable expenses of custody thereof.

Any property, including guns, forfeited to the State by court order pursuant to this Section, may be disposed of by public auction, except that any property which is the subject of such a court order shall not be disposed of pending appeal of the order. The proceeds of the sales at auction shall be deposited in the Wildlife and Fish Fund.

The Department shall pay all costs of notices required by this Section.

P.A. 77–1781, § 1.25, eff. July 1, 1972. Amended by P.A 79–1362, § 20, eff. Oct. 1, 1976; P.A 79–1365, § 28, eff. Oct. 1, 1976; P.A. 82–434, § 2, eff. Sept. 8, 1981; P.A. 84–150, § 1, eff. Jan. 1, 1986; P.A. 85–152, § 1, eff. Jan. 1, 1988

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.25.

### 5/1.26. Separate offenses

§ 1.26. Each wild bird or wild mammal, or any part thereof (including the nests or eggs of wild birds), taken, shipped, offered or received for shipment, transported, bought, sold, or bartered, or had in possession, and each green hide of game mammals or fur-bearing mammals bought, sold, shipped, or had in possession contrary to the provisions of this Act, including administrative rules, and each trap, snare, net or other device, including ferrets, used or attempted to be used, in violation of such provisions constitutes a separate offense.

P.A 77–1781, § 1.26, eff. July 1, 1972. Amended by P.A. 85–152, § 1, eff. Jan. 1, 1988.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.26.

### 5/1.27. Accessories

§ 1.27 Any person who aids or contributes in any manner to a violation of this Act, including administrative rules, is individually liable, as a separate offense under the provisions hereof, for the penalties imposed against the person who committed the violation.

P.A. 77–1781, § 1.27, eff. July 1, 1972. Amended by P.A. 81–382, § 1, eff. Jan. 1, 1980; P.A. 85–152, § 1, eff. Jan. 1, 1988; P.A. 85–1181, § 1, eff. Aug. 13, 1988

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.27.

P.A 85–1181 incorporated the amendment by P.A. 85–152

### 5/1.28. Fees and fines; deposit in funds

§ 1.28. Fees and fines; deposit in funds. All fees, fines, including bond forfeitures, income of whatsoever kind or nature derived from hunting and fishing activities on lands or waters or both under the jurisdiction or control of the Department, and all penalties collected under this Act shall be deposited in the State Treasury and shall be set apart in a special fund to be known as the "Wildlife and Fish Fund"; except that fees derived solely from the sale of salmon stamps, income from art contests for the salmon stamp, including income from the sale of reprints, and gifts, donations, grants and bequests of money for the conservation and propagation of salmon shall be deposited in the State Treasury and set apart in the special fund to be known as the "Salmon Fund"; and except that fees derived solely from the sale of state migratory waterfowl stamps, and gifts, donations, grants and bequests of money for the conservation and propagation of waterfowl shall be deposited in the special fund to be known as the "State Migratory Waterfowl Stamp Fund"; and except that, of fees derived solely from the sale of State Habitat Stamps, 64% shall be deposited into the Illinois Habitat Fund, 30% into the State Pheasant Fund, and 6% into the State Furbearer Fund. Income generated from the sale of artwork associated with the State Habitat Stamps shall be deposited into the Illinois Habitat Fund. All interest that accrues from monies deposited into the Wildlife and Fish Fund, the Salmon Fund, the State Migratory Waterfowl Stamp Fund, the State Furbearer Fund, the State Pheasant Fund, and the Illinois Habitat Fund shall be deposited into those funds, respectively Appropriations from the "Wildlife and Fish Fund" shall be made only to the Department for the carrying out of the powers and functions vested by law in the Department, including but not limited to the purchase of land for fish hatcheries, wildlife refuges, preserves and public shooting and fishing grounds; the purchase and distribution of wild birds, the eggs of wild birds, and wild mammals for rescuing, restoring and distributing fish; the maintenance of wildlife refuges, or preserves, public shooting grounds, public fishing grounds and fish hatcheries; and the feeding and care of wild birds, wild animals and fish.

P.A. 77–1781, § 1.28, eff. July 1, 1972. Amended by P.A 77–2064, § 1, eff. July 18, 1972; P.A 78–255, § 6I, eff. Oct. 1, 1973; P.A. 79–187, § 2, eff. March 31, 1976; P.A. 81–382, § 1, eff. Jan. 1, 1980; P.A. 83–1267, § 2, eff. Jan. 1, 1985; P.A. 87–135, § 2, eff. Aug. 13, 1991; P.A. 87–1015, § 45, eff. April 1, 1993.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.28

### 5/1.28a. Use of wildlife and fish fund for capital development bonds

§ 1.28a The Wildlife and Fish Fund shall also be used for the purposes set forth in Section 1–235 of the Fish and Aquatic Life Code.[1]

P.A. 77–1781, § 1.28a, added by P.A 80–1496, § 2, eff. July 1, 1979 Amended by P.A. 81–382, § 1, eff. Jan. 1, 1980; P.A. 87–895, Art 3, § 3–33, eff. Aug. 14, 1992

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 1.28a

1 515 ILCS 5/1–235

### 5/1.29. Migratory Waterfowl Stamp Fund

§ 1.29 Migratory Waterfowl Stamp Fund (a) There is hereby created in the State Treasury the State Migratory Waterfowl Stamp Fund. All fees collected from the sale of State Migratory Waterfowl Stamps shall be deposited into this Fund These moneys shall be appropriated to the Department for the following purposes:

(1) 50% of funds derived from the sale of State migratory waterfowl stamps and 100% of all gifts, donations, grants and bequests of money for the conservation and propagation of waterfowl, for projects approved by the Department for the purpose of attracting waterfowl and improving public migratory waterfowl areas within the State, and for payment of the costs of printing State

319

Fish Fund"; le of salmon almon stamp, d gifts, donaiservation and ie State Treaknown as the olely from the d gifts, donaiservation and in the special terfowl Stamp from the sale sited into the ieasant Fund, ime generated State Habitat itat Fund. All ito the Wildlife 'und, the State shall be, depostions from the to the Departmctions vested limited to the : refuges, prei; the purchase birds; and wild uting fish; the public shooting heries; and the id fish.

led by P.A. 77– 61, eff. Oct. 1; i; P.A. 81–382, f. Jan 1, 1985; -1015; § 45, eff.

for capital

all also be made of the Fish and

)6, § 2, eff. July f Jan 1, 1980;

'und

id. (a) There is State Migratory from the sale of e deposited into opriated to the

)f State migratogifts, donations, conservation and approved by the g waterfowl and areas within the f painting State

migratory waterfowl stamps, the expenses incurred in acquiring State waterfowl stamp designs and the expenses of producing reprints. These projects may include the repair, maintenance and operation of public migratory waterfowl areas only in emergencies as determined by the State Duck Stamp Committee; but none of the monies spent within the State shall be used for administrative expenses

(2) 25% of funds derived from the sale of State migratory waterfowl stamps shall be turned over by the Department to appropriate non-profit organizations for the development of waterfowl propagation areas within the Dominion of Canada or the United States that specifically provide waterfowl for the Mississippi Flyway

(3) 25% of funds derived from the sale of State migratory waterfowl stamps shall be turned over by the Department to appropriate non-profit organizations to be used for the implementation of the North American Waterfowl Management Plan. These funds shall be used for the development of waterfowl areas within the Dominion of Canada or the United States that specifically provide waterfowl for the Mississippi Flyway

(b) Before turning over any funds under the provisions of paragraphs (2) and (3) of subsection (a) the Department shall obtain evidence that the project is acceptable to the appropriate governmental agency of the Dominion of Canada or the United States or of one of its Provinces or States having jurisdiction over the lands and waters affected by the project, and shall consult those agencies and the State Duck Stamp Committee for approval before allocating funds.

(c) The State Duck Stamp Committee shall consist of: (1) The State Waterfowl Biologist, (2) The Chief of the Wildlife Resources Division or his designee, (3) The Chief of the Land Management Division or his designee, (4) The Chief of the Technical Services Division or his designee, and (5) Two or more at large representatives from statewide waterfowl organizations appointed by the Director. The Committee's duties shall be to review and recommend all Duck Stamp Projects and review and recommend all expenditures from the State Migratory Waterfowl Stamp Fund. The committee shall give due consideration to waterfowl projects that are readily available to holders of the State Migratory Waterfowl Stamp, wherever they may live in Illinois

P.A. 77–1781, § 1.29, added by P.A 79–468, § 1, eff. Aug. 21, 1975. Amended by P.A. 81–382, § 1, eff. Jan. 1, 1980; P.A. 83–1267, § 2, eff. Jan 1, 1985; P.A. 84–152, § 2, eff. Jan. 1, 1986; P.A. 85–1181, § 1, eff. Aug. 13, 1988; P.A. 86–155, § 1, eff. Jan. 1, 1990; P.A. 87–135, § 2, eff. Aug. 13, 1991. Formerly Ill Rev Stat 1991, ch 61, ¶1 29

## 5/1.30.  Federal Migratory Bird Hunting and Conservation Stamps

§ 1.30.  The Department has the authority to sell Federal Migratory Bird Hunting and Conservation Stamps  The Department may consign, issue or otherwise make available such stamps for sale by designated agents as authorized in Section 3 37 of this Act. The income received from the sale of Federal Migratory Bird Hunting and Conservation Stamps shall be deposited in the Wildlife and Fish Fund Proceeds collected, less administrative fees so authorized, shall be remitted to the United States Fish and Wildlife Services

P.A. 77–1781, § 1 30, added by P.A. 85–966, § 1, eff. Dec 9, 1987

Formerly Ill Rev Stat 1991, ch 61, ¶1 30

## 5/1.31.  Pheasant Fund

§ 1 31  Pheasant Fund.  There is created in the State Treasury the State Pheasant Fund.  All interest earned on monies in this Fund shall remain in the fund.

(a) Thirty percent of the money collected from the sale of State Habitat Stamps, and all interest earned, gifts, donations, grants, and bequests of money for the conservation of wild pheasants shall be deposited into the State Pheasant Fund for appropriation to the Department for the following purposes:

(1) 50% of funds derived from the sale of State Habitat Stamps and deposited into the State Pheasant Fund, and all interest earned, gifts, donations, grants and bequests of money for the conservation of wild pheasants shall be used by the Department for the conservation of wild pheasants. Before allocating any funds under the provisions of this subsection, the Department shall submit plans for use of the funds to the State Pheasant Committee for its approval. Pheasant conservation projects may include land acquisition, pheasant habitat improvement on public or private land, pheasant research, and education of the public regarding pheasants and pheasant hunting. None of the monies spent under this Section shall be used for administrative expenses.

(2) 50% of funds derived from the sale of State Habitat Stamps and deposited into the Pheasant Fund shall be allocated by the Department to appropriate not-for-profit organizations for the purpose of wild pheasant conservation. Before allocating any funds under the provisions of this paragraph (2), the Department shall submit the organizations' plans for use of the funds to the State Pheasant Committee for its approval.  By December 31 of each year, any organization receiving funds under this paragraph (2) shall report to the Department and the Committee on its use of those funds  Pheasant conservation projects may include land acquisition, pheasant habitat improvement on public or private land, pheasant research, or education of the public regarding pheasants and pheasant hunting.

(b) The State Pheasant Committee is created and shall consist of: (1) the Chief of the Wildlife Resources Division or his designee, (2) the Chief of the Land Management Division or his designee, (3) one representative appointed by the Director who is from a nonprofit institution, corporation, or university within the State and is actively engaged in wildlife research pertaining to game birds, especially pheasants, (4) the Chief of the Technical Services Division or his designee, and (5) 2 or more representatives from statewide pheasant organizations, appointed by the Director  The Committee shall review and recommend all allocation of funds from the State Pheasant Fund

(c) At the end of each license accounting period, if 30% of the money collected from the sale of State Habitat Stamps and deposited into the State Pheasant Fund is less than $500,000, the Director shall request a transfer and the State Comptroller and State Treasurer shall transfer from the Illinois Habitat Fund to the State Pheasant Fund the amount necessary to bring the total deposited into the State Pheasant Fund to $500,000.

P.A. 77–1781, § 1.31, added by P.A 86–158, § 1, eff. Jan. 1, 1990  Amended by P.A. 86–1028, Art. II, § 2–35, eff. Feb. 5, 1990; P.A 87–135, § 2, eff Aug. 13, 1991; P.A 87–1015, § 45, eff. April 1, 1993.

Formerly Ill Rev Stat 1991, ch 61, ¶1 31

Another § 1.31 was renumbered as § 1 32

P.A. 87–1015 incorporated the amendment by P.A 87–135.

**WILDLIFE**

**5/1.32.  Distribution of funds; State Furbearer Committee**

§ 1.32    Distribution of funds; State Furbearer Committee

(a)  There is created within the State Treasury the State Furbearer Fund.  All interest earned on monies in this Fund shall remain in the fund.  Six percent of the money collected from the sale of State Habitat Stamps, and all interest earned, gifts, donations, grants, and bequests of money for the conservation of furbearing mammals shall be deposited into the State Furbearer Fund and shall be held separate and apart from the general fund.  These monies shall be appropriated to the Department for the following purposes:

(1)  10% of all funds derived from the sale of State Habitat Stamps and deposited into the State Furbearer Fund, and 100% of all interest earned, gifts, donations, grants and bequests of money for the conservation of furbearing mammals shall be appropriated for the purpose of conservation of fur-bearing mammals, and for projects, approved by the Department, for the purpose of developing and improving public fur-bearing mammal habitat management areas within the State.  The State Furbearer Committee may include, on an emergency basis only, any projects as the repair, maintenance, and operation of mammal habitat management areas, except that no monies spent within the State for this purpose shall be used for administrative expenses

(2)  45% of all funds derived from the sale of State Habitat Stamps and deposited into the State Furbearer Fund shall be allocated by the Department to suitable nonprofit institutions, corporations, or universities, for projects approved by the Department, for the purpose of conducting surveys and investigations concerning the biology, ecology, and management of fur-bearing mammals within the State.  Before allocating any funds under the provisions of this paragraph (2), the Department shall obtain evidence that the project is acceptable to the appropriate non-profit institution, corporation, or university having jurisdiction over the expenditure of funds for the project; and shall consult those non-profit institutions, corporations, and universities and the State Furbearer Committee for approval before allocating funds.

(3)  45% of all funds derived from the sale of State Habitat Stamps and deposited into the State Furbearer Fund shall be allocated for projects approved by the Department for the purpose of educating hunters and trappers of fur-bearing mammals within the State and the general public concerning the role that hunting and trapping has upon fur-bearing mammal management, concerning the laws associated with the harvesting of fur-bearing mammals, concerning the techniques used in the hunting and trapping of fur-bearing mammals, and concerning the conservation, management, and ecology of fur-bearing mammals.  Projects, as determined by the State Furbearer Committee, may include the promotion of products made from wild fur-bearing mammals, except that no monies spent for these projects shall be used for administrative expenses

All allocations and accounting of moneys in the State Furbearer Fund, including all expenditures previously incurred, shall be allocated according to the percentages established by this amendatory Act of 1992.

(b)  The State Furbearer Committee shall consist of:  (1) the State Furbearer Biologist, (2) the Chief of the Division of Wildlife Resources or his designee, (3) the Chief of the Division of Land Management or his designee, (4) one representative appointed by the Director who is from a nonprofit institution, corporation or university within the State and is actively engaged in wildlife research pertaining to game or fur-bearing mammals, and (5) at least 2, but not more than 3, at large representatives from statewide fur-bearing mammal hunting and trapping organizations appointed by the Director.  The Committee's duties shall be to review and recommend all State Furbearer Projects, and to review and recommend all expenditures from the State Furbearer Fund.

(c)  At the end of each license accounting period, if 6% of the money collected from the sale of State Habitat Stamps and deposited into the State Furbearer Fund is less than $100,000, the Director shall request a transfer and the State Comptroller and State Treasurer shall transfer from the Illinois Habitat Fund to the State Furbearer Fund the amount necessary to bring the total deposited into the State Furbearer Fund to $100,000.

P.A. 77-1781, § 1.31, added by P.A. 86-159, § 1, eff. Jan. 1, 1990.  Renumbered § 1.32 and amended by P.A. 86-1028, Art. II, § 2-35, eff. Feb. 5, 1990.  Amended by P.A. 87-135, § 2, eff. Aug. 13, 1991;  P.A. 87-1015, § 45, eff. April 1, 1993.

**Formerly** Ill.Rev.Stat.1991, ch. 61, ¶ 1.32.

P.A. 87-1015 incorporated the amendment by P.A. 87-135

**5/1.33.  § 1.33.  Repealed by P.A. 87-1197, Art. 3, § 3, eff. Sept. 25, 1992**

The repealed section, relating to the Illinois Habitat Fund, was derived from P.A. 77-1781, § 1.33, added by P.A. 87-1015, § 45, eff. April 1, 1993

## ARTICLE II.  GAME PROTECTIVE REGULATIONS

Section
5/2.1.    Ownership and title.
5/2.2.    Protected species; definitions
5/2.3.    Release of Wildlife—Permission.
5/2.4.    Birds of prey.
5/2.5.    Repealed.

### GAME BIRDS

5/2.6.    Pheasant season; limits.
5/2.7.    Bobwhite quail.
5/2.8.    Ruffed grouse
5/2.9.    Wild turkey.
5/2.10.   Open season for wild turkey.
5/2.11.   Wild turkey hunting permits
5/2.12.   Repealed.
5/2.13.   Hungarian partridge.
5/2.14.   Repealed.
5/2.15.   Nets or traps; possession
5/2.16.   Sale of game birds.
5/2.17.   Repealed.

### MIGRATORY GAME BIRDS

5/2.18.        Migratory game birds
5/2.18-1.      Use of lead or steel shotgun pellets
5/2.19.        Floating blind
5/2.20.        Public hunting grounds; compliance with rules and regulations
5/2.21 to 5/2.22    Repealed
5/2.23         Unlawful taking of waterfowl; Horseshoe Lake Waterfowl Management Area; Marion-Pickerel Wildlife Refuge.

Section
5/2.24.
5/2.25

5/2.26.
5/2.27
5/2.28.
5/2.29.
5/2.30

5/2.31.
5/2.32
5/2.33
5/2.33–
5/2.33a
5/2.34
5/2.35.
5/2.36
5/2.36a
5/2.37
5/2.38

5/2.1.
§ 2.1

wild ma
declare
mamma
time, u
same sl
in the S
possess
taking
killing
manner
part of
mamma
regulati
of

The
Illinois
home r
wildlife.
powers
Article
P.A. 77-
296, § 1
Former

5/2.2.
§ 2.2.
parts of
and par
hides, ir
the Stat
– All bi
Sparrow
vulgaris
livia)
Sharp-ta
quail, C
perdix;
Pheasan

nonprofit
e and is
game or
e than 3,
the Di-
iew and
view and
er Fund

if 6% of
: Stamps
ess than
he State
rom the
'und the
he State

f. Jan. 1,
86–1028,
1 1, 1993

Art 3,

Fund, wi
§ 45 eff

Section
### GAME AND FUR–BEARING ANIMALS

5/2.24    Deer
5/2.25    Open season for deer; harvest periods; rules and
          regulations
5/2.26    Deer hunting permits
5/2.27    Rabbits
5/2.28    Squirrels
5/2.29    Game mammals; sale
5/2.30    Fur-bearing animals

### ADDITIONAL PROVISIONS

5/2.31    Hunting or trapping on highways
5/2.32    Molesting or destroying dens
5/2.33    Prohibitions
5/2.33–1  Shotguns on boats
5/2.33a   Traps; illegal methods
5/2.34    Dog Trials
5/2.35    Possession; time limit
5/2.36    Sale and commercial possession
5/2.36a   Value of protected species; violations
5/2.37    Authority to kill wildlife responsible for damage
5/2.38    Falsification or misrepresentation; fraudulent ob-
          tainment

### 5/2.1  Ownership and title

§ 2.1.  The ownership of and title to all wild birds and wild mammals within the jurisdiction of the State are hereby declared to be in the State, and no wild birds or wild mammals shall be taken or killed, in any manner or at any time, unless the person or persons so taking or killing the same shall consent that the title thereto shall be and remain in the State for the purpose of regulating the taking, killing, possession, use, sale and transportation thereof, after such taking or killing, as hereinafter set forth. The taking or killing of wild birds or wild mammals at any time, in any manner, and by any person, shall be deemed a consent on the part of such person that the title to such wild birds or wild mammals shall remain in the State for the purpose of regulating the possession, use, sale and transportation thereof

The regulation and licensing of the taking of wildlife in Illinois are exclusive powers and functions of the State. A home rule unit may not regulate or license the taking of wildlife. This Section is a denial and limitation of home rule powers and functions under subsection (h) of Section 6 of Article VII of the Illinois Constitution

P.A 77–1781, § 2.1, eff. July 1, 1972. Amended by P.A. 87–296, § 1, eff. Jan 1, 1992

Formerly Ill Rev Stat 1991, ch. 61, ¶ 2.1

### 5/2.2  Protected species; definitions

§ 2.2.  This Act shall apply only to the wild birds and parts of wild birds (their nests and eggs), and wild mammals and parts of wild mammals, which shall include their green hides, in the State of Illinois, or which may be brought into the State, that are hereby defined as follows:

All birds, both game and non-game (except the House Sparrow, Passer domesticus; European Starling, Sturnus vulgaris; and Rock Dove or Domestic Pigeon, Columba livia). GAME BIRDS–Ruffed grouse, Bonasa umbellus; Sharp-tailed grouse, Pediocetes phasianellus; Bobwhite quail, Colinus virginianus; Hungarian Partridge, Perdix perdix; Chukar Partridge, Alectoris graeca; Ring-necked Pheasant, Phasianus colchicus; Greater Prairie Chicken,

Tympanuchus cupido; Wild Turkey, Meleagris gallopavo. MIGRATORY GAME BIRDS–Waterfowl including brant, wild ducks, geese and swans, Anatidae; rails, gallinules and coots, Rallidae; snipe, Gallinago gallinago; woodcock, Scolopax minor; pigeons, including doves and wild pigeons (except domestic pigeons), Columbidae; and crows, Corvidae RESIDENT AND MIGRATORY NON–GAME BIRDS– Loons, Gaviidae; grebes, Podicipedidae; pelicans, Pelecanidae; cormorants, Phalacrocoracidae; herons, bitterns and egrets, Ardeidae; ibises and spoonbills, Threskiornithidae; storks, Ciconiidae; vultures, Carthartidae; kites, hawks and eagles, Accipitridae; ospreys, Pandionidae; falcons, including the Peregrine Falcon, Falconidae; cranes, Gruidae; rails and gallinules, Rallidae; all shorebirds of the families Charadriidae, Scolopacidae, Recurvirostridae and Phalaropodidae; jaegers, Stercorariidae; gulls and terns, Laridae; cuckoos, Cuculidae; owls, Tytonidae and Strigidae; whippoor-wills and nighthawks, Caprimulgidae; swifts, Apodidae; hummingbirds, Trochilidae; Kingfishers, Alcedinidae; woodpeckers, Picidae; kingbirds and flycatchers, Tyrannidae; larks, Alaudidae; swallows and martins, Hirundinidae; crows, magpies and jays, Corvidae; chickadees and titmice, Paridae; nuthatches, Sittidae; creepers, Certhiidae; wrens, Troglodytidae; mockingbirds, catbirds and thrashers, Mimidae; robins, bluebirds and thrushes, Turdidae; gnatcatchers and kinglets, Sylviidae; pipits, Motacillidae; waxwings, Bombycillidae; shrikes, Laniidae; vireos, Vireonidae; warblers, Parulidae; European Tree Sparrow, Passer montanus; blackbirds, meadowlarks and orioles, Icteridae; tanagers, thraupidae; cardinals, grosbeaks, finches, towhees, dickcissels, sparrows, juncos, buntings and longspurs, Fringillidae. GAME MAMMALS–Woodchuck, Marmota monax; Gray squirrel, Sciurus carolinensis; Fox squirrel, Sciurus niger; White-tailed jackrabbit, Lepus townsendii; Eastern cottontail, Sylvilagus floridanus; Swamp rabbit, Sylvilagus aquaticus; White-tailed deer, Odocoileus virginianus. FUR–BEARING MAMMALS–Muskrat, Ondatra zibethicus; Beaver, Castor canadensis; Raccoon, Procyon lotor; Opossum, Didelphis marsupialis; Least weasel, Mustela rixosa; Long-tailed weasel, Mustela frenata; Mink, Mustela vison; River otter, Lutra canadensis; Striped skunk, Mephitis mephitis; Badger, Taxidea taxus; Red fox, Vulpes vulpes; Gray fox, Urocyon cinereoargenteus; Coyote, Canis latrans; Bobcat, Lynx rufus. OTHER MAMMALS–Flying squirrel, Glaucomys volans; Red squirrel, Tamiasciurus hudsonicus; Eastern Woodrat, Neotoma floridana; Golden Mouse, Ochrotomys nuttalli; Rice Rat, Oryzomys palustris; Bats, Vespertilionidae

It shall be unlawful for any person at any time to take, possess, sell, or offer for sale, any of these wild birds (dead or alive) and parts of wild birds (including their nests and eggs), wild mammals (dead or alive) and parts of wild mammals, including their green hides contrary to the provisions of this Act. However, nothing in this Act shall prohibit bona-fide public or state scientific, educational or zoological institutions from receiving, holding and displaying wildlife specimens that were salvaged or legally obtained

It shall be unlawful for any person to bring into the State of Illinois for the purpose of holding, releasing, propagating or selling any other living wild animal not covered by this Act without first obtaining a permit from the Director. The permit shall be granted only upon satisfactory proof that the specific animals intended to be imported are free of communicable disease at the time of importation, will not become a nuisance, and will not cause damage to any existing wild or domestic species. Application for this permit shall be filed with the Director not less than 30 days in advance of the proposed date of importation. The Director may incorporate

rith rules

noe Lake
-Pickerell

**520 ILCS 5/2.2** WILDLIFE 322

in the permit any restrictions as he may deem appropriate. These provisions shall not apply to any animal imported into this State for the purpose of being confined and exhibited in any zoo or other public display of animals nor to any other animals or groups of animals that the Department of Natural Resources may exempt by administrative rule.

It shall be unlawful for any person to take any other living wild animal not covered by this Act without the permission of the landowner or tenant.

P.A. 77–1781, § 2.2, eff. July 1, 1972. Amended by P.A. 78–826, § 1, eff. Oct. 1, 1973; P.A. 81–382, § 1, eff. Jan. 1, 1980; P.A. 84–150, § 1, eff. Jan. 1, 1986; P.A. 87–126, § 1, eff. Jan. 1, 1992; P.A. 87–298, § 1, eff. Jan. 1, 1992; P.A. 87–895, Art. 2, § 2–32, eff. Aug. 14, 1992; P.A. 89–445, § 9A–62, eff. Feb. 7, 1996.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 2.2.

### 5/2.3. Release of Wildlife—Permission

§ 2.3. Release of Wildlife—Permission. It shall be unlawful to release from captivity any live species protected by this Act, except as provided in Sections 2.34, 3.23 and 3.29, anywhere in this State without first securing permission of the Department to do so.

P.A. 77–1781, § 2.3, added by P.A. 84–150, § 1, eff. Jan. 1, 1986.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 2.3.

A former § 2.3, was repealed by P.A. 81–382, § 2, eff. Jan. 1, 1980, and related to the taking of song, insectivorous or nongame birds.

### 5/2.4. Birds of prey

§ 2.4. The term birds of prey shall include all species of owls, falcons, hawks, kites, harriers, ospreys and eagles. It shall be unlawful for any person, organization or institution to take or possess a bird of prey (raptor) without first obtaining a license or appropriate permit from the Department. All applicants must be at least 14 years of age. Regulations for the capture, use, possession and transportation of birds of prey for falconry or captive propagation purposes are provided by administrative rule. The fee for a falconry license is $75 for 3 years and must be renewed every 3 years. The fee for a captive propagation permit is $75 for 3 years and must be renewed every 3 years. The fee for a raptor capture permit for a resident of the State of Illinois is $30 per year. The fee for a non-resident raptor capture permit is $50 per year. A Scientific Collectors Permit, available at no charge to qualified individuals as provided in Section 3.22 of this Act, may be obtained from the Department for scientific, educational or zoological purposes. No person may have in their possession Bald Eagle, Haliaeetus leucocephalus; Osprey, Pandion haliaeetus; or Barn Owl, Tyto alba. All captive-held birds of prey must be permanently marked as provided by administrative rule. The use of birds of prey for the hunting of game birds, migratory birds, game mammals, and furbearing mammals shall be lawful during falconry seasons, which shall be set by administrative rule.

P.A. 77–1781, § 2.4, eff. July 1, 1972. Amended by P.A. 81–382, § 1, eff. Jan. 1, 1980; P.A. 85–150, § 7, eff. Jan. 1, 1988; P.A. 85–152, § 1, eff. Jan. 1, 1988; P.A. 85–1209, Art. II, § 2–37, eff. Aug. 30, 1988; P.A. 86–1046, § 1, eff. June 29, 1990; P.A. 87–298, § 1, eff. Jan. 1, 1992.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 2.4.

### 5/2.5. § 2.5. Repealed by P.A. 81–382, § 2, eff. Jan 1, 1980

## GAME BIRDS

### 5/2.6. Pheasant season; limits

§ 2.6. Pheasant season; limits. It shall be unlawful for any person to take cock pheasants except with shotgun or bow and arrow during the open season which will be set annually by the Director between the dates of October 15—January 31st, both inclusive. Dogs may be used in hunting with either shotgun or bow and arrow.

It shall be unlawful to take or possess more than the daily limit and possession limit of cock pheasants. The daily and possession limits for cock pheasants shall be set annually by the Director of the Department and shall not exceed a daily limit of 3 and a possession limit of 6, except as provided by Sections 1.13, 3.27 and 3.28 of this Act.

It is unlawful to remove plumage of pheasants in the field or while being transported from the field to one's home or to a commercial preservation facility.

It shall be unlawful to take or possess hen pheasants at any time, except as provided in Section 2.4, 3.23 or 3.27.

The provisions of this Section are subject to modification by administrative rule.

P.A. 77–1781, § 2.6, eff. July 1, 1972. Amended by P.A. 78–826, § 1, eff. Oct. 1, 1973; P.A. 81–382, § 1, eff. Jan. 1, 1980; P.A. 84–150, § 1, eff. Jan. 1, 1986; P.A. 85–152, § 1, eff. Jan. 1, 1988; P.A. 86–158, § 1, eff. Jan. 1, 1990; P.A. 87–135, § 2, eff. Aug. 13, 1991; P.A. 87–789, § 3, eff. Dec. 16, 1991; P.A. 90–225, § 10, eff. July 25, 1997.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 2.6.

### 5/2.7. Bobwhite quail

§ 2.7. It shall be unlawful for any person to take quail except with shotgun, or bow and arrow, and only during the open season which will be set annually by the Director between the dates of October 15th—January 31st, both inclusive. Dogs may be used in hunting with either shotgun or bow and arrow.

It shall be unlawful to take or possess more than the daily limit and possession limit of bobwhite quail that shall be set annually by the Director of the Department which cannot exceed a daily take limit of 10 and a possession limit of 20.

The provisions of this Section are subject to modification by administrative rule.

P.A. 77–1781, § 2.7, eff. July 1, 1972. Amended by P.A. 81–382, § 1, eff. Jan. 1, 1980; P.A. 85–152, § 1, eff. Jan. 1, 1988; P.A. 85–1209, Art. III, § 3–49, eff. Aug. 30, 1988.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 2.7.

### 5/2.8. Ruffed grouse

§ 2.8. It is unlawful for any person to take ruffed, sharp-tailed, and pinnated grouse (prairie chicken) in this State at any time.

P.A. 77–1781, § 2.8, eff. July 1, 1972. Amended by P.A. 81–382, § 1, eff. Jan. 1, 1980.

Formerly Ill.Rev.Stat.1991, ch. 61, ¶ 2.8.

### 5/2.9. Wild turkey

§ 2.9. It shall be unlawful for any person to take or possess wild turkey unless they are taken or possessed in

Case 3:08-cr-50013   Document 25-3   Filed 07/30/2008   Page 1 of 32

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30 2008 and 2007 Wis. Act 242

1   Updated 05–06 Wis. Stats. Database
*Not certified under s. 35.18 (2), stats.*

CAPTIVE WILDLIFE   169 01

# CHAPTER 169

## CAPTIVE WILDLIFE

169 01   Definitions.
169 02   Title to wild animals.
169 03   Interagency cooperation
169 04   Possession of live wild animals
169 05   Taking of wild animals.
169 06   Introduction, stocking, and release of wild animals
169 07   Exhibition of live wild animals.
169 08   Propagation of wild animals
169 085  Rehabilitation of wild animals.
169 09   Hunting of captive wild animals
169 10   Sale and purchase of live wild animals
169 11   Harmful wild animals.
169 12   Sale and purchase of native wild reptiles and wild amphibians
169 14   Carcasses of captive wild animals
169 15   Captive wild animal farm licenses
169 18   Wild fur farm license.
169 19   Bird hunting preserve licenses
169 20   Dog training licenses
169 21   Dog trial licenses
169 23   Stocking license.
169 24   Rehabilitation license

169 25   Scientific research license.
169 26   Nonprofit educational exhibiting license.
169 27   Nonresident temporary exhibiting license
169 29   Validation licenses
169 30   Endangered or threatened species
169 31   License and tag fees
169 32   Licenses; effective periods
169 33   Licenses; applications; renewals; terminations
169 34   Denial and revocation of licenses based on child support delinquency
169 35   Denial and revocation of licenses based on tax delinquency
169 36   Record–keeping and reporting requirements
169 37   Inspections
169 38   Inspections of items subject to regulation by the department of agriculture
         trade and consumer protection
169 39   Humane care and housing
169 40   Trespassing.
169 42   Taking custody of captive wild animals
169 43   Local ordinances.
169 45   Penalties; revocations
169 46   Natural resources surcharges and restitution surcharges

Cross Reference: See also ch NR 16 Wis adm code

**169 01   Definitions.** In this chapter:

**(1)** "Animal" means any mammal, bird, reptile, amphibian, mollusk, or arthropod or any egg of any bird, reptile, amphibian, mollusk, or arthropod except that "animal" does not include any mollusk or arthropod, or any egg of any mollusk or arthropod, if the mollusk or arthropod is regulated under s. 93 07 (12) or (13), 94 01, 94 02, 94 03, or 94 76

**(2)** "Captive" means any of the following:

(a) Restrained by a cage, pen, fence, or other enclosure

(b) Restrained by physical alterations that limit movement or facilitate capture

(c) Restrained by a leash or a tether or otherwise tied.

(d) Held in a controlled environment that is designed to prevent the departure from the controlled environment

**(3)** "Carcass" means the dead body of any wild animal including the head, hair, skin, plumage, skeleton, meat, or any other part thereof.

**(4)** "Circus" means a scheduled event staged by a traveling company with mobile facilities in which entertainment consisting of a variety of performances by acrobats, clowns, or trained animals is the primary attraction or principal business.

**(5)** "Conservation warden" means a warden appointed under s. 23 10

**(6)** "Department" means the department of natural resources.

**(7)** "Domestic animal" means a farm–raised deer, a pet bird, a farm–raised game bird, or an animal that is listed as a domestic animal by rule by the department of agriculture, trade and consumer protection

**(8)** "Dressed fur" has the meaning given in s. 29 501 (1) (a).

**(9)** "Endangered or threatened species" means those species of wild animals that are indigenous to the United States or Canada and are identified on the federal list of endangered and threatened species or on the Wisconsin list of endangered and threatened species

**(11)** "Exhibit" means to display for the purpose of public viewing, regardless of whether a fee is charged

**(12)** "Farm–raised deer" has the meaning given in 95 001 (1) (ag)

**(12m)** "Farm–raised game bird" means a bird of a wild nature that is not native that is held captive, but that is not possessed under the authority of a license issued under s. 169 15, 169 19, 169 20, or 169 21.

**(13)** "Free–roaming" means not captive

**(14)** "Fur–bearing wild animal" includes badger, beaver, bobcat, coyote, fisher, red fox, gray fox, lynx, marten, mink, muskrat, opossum, otter, raccoon, skunk, weasel, and wolf.

**(15)** "Harm to the environment" includes adversely affecting the natural population dynamics of wild animals or wild plants, adversely affecting the habitat of wild animals or wild plants, or displacing wild animals or wild plants from any part of their habitat

**(15m)** "Harmful wild animal" means a wild animal designated under s. 169 11 (1) (a)

**(16)** "Humane officer" means an officer appointed under s. 173 03

**(18)** "Introduce" means to release for the purpose of allowing the animal to establish a population in an area in the wild where that species of animal is not naturally present at the time the wild animal is released

**(19)** "Law enforcement officer" has the meaning given in s. 165.85 (2) (c) and does not include a conservation warden

**(20)** "License year" means the year during which a license is valid

**(20m)** "Migratory bird" means a bird of a species on the list in 50 CFR 10 13 that is promulgated under 16 USC 701 to 715s.

**(21)** "Municipality" means a city, village, or town

**(22)** "Native" means indigenous and occurring or having occurred naturally within the boundaries of this state

**(23)** "Nonnative wild animal" means a wild animal that is not native

**(24)** "Nonresident" means a person who is not a resident of this state

**(25)** "Person" means any individual, partnership, firm, joint stock company, corporation, association, trust, estate, or other legal entity.

**(25m)** "Pet bird" means a bird that is either a psittacine or a soft bill and that is not native, not identified on the federal list of endangered and threatened species, and not a migratory bird.

EXHIBIT

B

Electronic reproduction of 2005−06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242

**169.01   CAPTIVE WILDLIFE**

Updated 05−06 Wis. Stats. Database   2
*Not certified under s. 35.18 (2), stats.*

**(26)** 'Possess' means to own, control, restrain, transport, or keep.

**(27)** "Propagate" means to breed, encourage, or facilitate for the purpose of generating offspring.

**(28)** "Public zoo or aquarium" means a zoo or aquarium that is operated by the state or by a city, village, or county or that is an accredited member of the American Zoo and Aquarium Association.

**(29)** "Purchase" means to acquire through a sale or through an exchange for consideration.

**(30)** "Raw fur" has the meaning given in s. 29.501 (1) (e).

**(30m)** "Rehabilitate" means to provide care or treatment to an orphaned, sick, or injured wild animal for the purpose of releasing it back into the wild.

**(31)** "Sell" means to transfer or exchange for consideration.

**(32)** "State resident" has the meaning given "resident" in s. 27.01 (10) (a).

**(33)** "Stock" means to release for the purpose of increasing or maintaining a population of the animal.

**(34)** "Take" means to capture, but does not include killing.

**(35)** "Veterinarian" means either of the following:

(a) A veterinarian who is licensed in this state to practice veterinary medicine under ch. 453 and who is certified under rules promulgated by the department of agriculture, trade and consumer protection.

(b) A veterinarian who is licensed by another state to practice veterinary medicine and who is accredited under 9 CFR ch. I subch. J.

**(36)** "Wild amphibian" means a wild animal that is an amphibian.

**(37)** "Wild animal" means any animal of a wild nature that is normally found in the wild and that is not a domestic animal.

**(38)** "Wild bird" means a wild animal that is a bird.

**(39)** "Wild reptile" means a wild animal that is a reptile.
**History:** 2001 a. 56.

**169.02   Title to wild animals. (1)** TITLE VESTED IN OWNER. Except as provided in sub. (3), legal title to a live captive wild animal or the carcass of a captive wild animal is vested in the person who owns the wild animal if the person is in compliance with this chapter and the rules promulgated under this chapter. A person holding legal title may transfer without consideration the live captive wild animal or the carcass of the captive wild animal to a person who is in compliance with this chapter and the rules promulgated under this chapter. A person holding legal title to a live captive wild animal may kill it, or have it killed, in a humane manner.

**(2)** TITLE WITH STATE. The department may assume on behalf of the state, or may sell or otherwise transfer to another person, legal title to any live captive wild animal, or the carcass of any captive wild animal, that is possessed by any person in violation of this chapter or the rules promulgated under this chapter.

**(3)** EXCEPTIONS. Legal title to a live captive wild animal or the carcass of a captive wild animal that is possessed as authorized under a rehabilitation license or a scientific research license remains with the state. A person holding a rehabilitation license or a scientific research license may transfer or dispose of a live captive wild animal or the carcass of a captive wild animal only as specifically authorized by the department.
**History:** 2001 a. 56.

**169.03   Interagency cooperation.** The department of natural resources and the department of agriculture, trade and consumer protection shall cooperate with each other with respect to any wild animal that is subject to regulation under this chapter and under ch. 93 or 95.
**History:** 2001 a. 56.

**169.04   Possession of live wild animals. (1)** RESTRICTIONS ON POSSESSION. (a) No person may possess any live wild animal unless the wild animal is legally obtained.

(b) No person may possess any live wild animal unless the person holds a license or other approval to possess the wild animal as required under this chapter or under s. 29.319 and the person is otherwise in compliance with this chapter and the rules promulgated under this chapter.

**(2)** TEMPORARY POSSESSION. (a) A person possessing a live native wild animal for a period not to exceed 24 hours is exempt from having a license or other approval as required under sub. (1) (b) if the person is possessing the wild animal for any of the following purposes:

1. To restrain or transport the wild animal for medical treatment by a veterinarian or by a person holding a rehabilitation license.

2. To remove or transport the wild animal from one location to a more appropriate location.

3. To restrain or transport the wild animal for game censuses or surveys, or other purposes authorized by the department.

(b) If a person possessing a live native wild animal under par. (a) determines that it is necessary to possess the wild animal for a period exceeding 24 hours after the time the wild animal was first possessed, the person shall request that the department approve an extension of the time period for the temporary possession. The department may either deny the requested extension or approve it for a specific period of time.

(d) If a live wild animal has been exposed to or infected with any contagious or infectious disease, as defined under rules promulgated by the department of agriculture, trade and consumer protection under s. 95.001 (2), during the time the wild animal is being temporarily possessed, the person possessing the wild animal shall ensure that a veterinarian files with the department of agriculture, trade and consumer protection a copy of a valid certificate of veterinary inspection that certifies that the wild animal is free of any such diseases before releasing it into the wild.

(e) No person may operate on a live skunk to remove its scent glands unless the person holds a Class A or Class B captive wild animal farm license or unless the person is a veterinarian and the person bringing the skunk to the veterinarian holds such a license. A veterinarian to whom a person brings a live skunk for removal of its scent glands shall verify whether the person holds a Class A or Class B captive wild animal farm license. If the person does not hold such a license, the veterinarian shall notify that person that possession of a live skunk is illegal and shall notify the department.

**(3)** WILD ANIMALS UNDER ANOTHER JURISDICTION. A live wild animal possessed by a nonresident under the legal authority of another state, province, or country may be possessed in this state by the nonresident for not more than 60 days from the date the wild animal enters the state if all of the following apply:

(a) The nonresident ensures that a veterinarian files a copy of a valid certificate of veterinary inspection for the wild animal with the department of agriculture, trade and consumer protection.

(b) The nonresident holds every license or other approval that is required by the other state, province, or country.

**(4)** EXEMPTION FOR CERTAIN WILD ANIMALS. (a) A person is exempt from holding a license or other approval as required under this chapter to possess live native wild animals if the wild animals are not endangered or threatened species and are any of the following:

1. Arthropods
2. Chipmunks
3. Pocket gophers
4. Mice
5. Moles
6. Mollusks

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242

3  **Updated 05–06 Wis. Stats. Database**
*Not certified under s. 35.18 (2), stats.*

**CAPTIVE WILDLIFE**    **169.06**

7. Opossums.

8. Pigeons.

9. Porcupines.

10. Rats.

11. Shrews.

12. English sparrows.

13. Starlings.

14. Ground squirrels.

15. Red squirrels.

16. Voles.

17. Weasels.

(b) A person is exempt from holding a license or other approval as required under this chapter to possess live nonnative wild animals that are not endangered or threatened species, except for any of the following:

1. Pheasants of the species Phasianus colchicus or Syrnaticus reevesii, chukar partridge, gray partridge, or red–legged partridge that are possessed for use under a bird hunting preserve license, a dog training license, a hound training license, a dog club training license, a dog trial license, or a hound trial license.

2. Nonnative wild birds of the family anatidae that are migratory birds.

3. Nonnative wild animals that are harmful wild animals.

**(5)** EXEMPTION FOR CERTAIN PERSONS AND INSTITUTIONS. (a) Each of the following is exempt from holding a license or other approval as required under this chapter to possess any wild animal:

1. A veterinarian, for the purpose of providing medical treatment to wild animals.

2. A public zoo or aquarium.

3. A circus or the Circus World Museum located in Baraboo, Wisconsin.

4. The department.

5. A person who is licensed under s. 95.68 or 95.71 and who is possessing the wild animal under the authority of the license.

6. A person who is licensed under s. 95.69 and who possesses wild animals for 10 days or less and solely for the purpose of resale or slaughter.

(b) For purposes of par. (a) 1., "medical treatment" does not include rehabilitation.

**(5m)** EXEMPTION FOR CERTAIN DEER. (a) A person holding a rehabilitation license who is rehabilitating white–tailed deer in Walworth County may possess these white–tailed deer after they have been rehabilitated without holding any other license or approval as required under this chapter and without being registered under s. 95.55 if all of the following conditions apply:

1. The deer were taken from the wild before August 1, 2003.

2. The license holder keeps the deer within a fenced area that has a double perimeter fence around the area and that complies with all of the requirements under the rules promulgated under s. 90.21 (6).

3. The license holder identifies the deer by tagging or by other means as required by the department of agriculture, trade and consumer protection.

4. The license holder does not propagate the deer or otherwise allow the deer to reproduce.

5. The license holder does not remove, or authorize the removal of, the deer from the facilities and premises that are approved for use under the rehabilitation license.

6. The license holder notifies the department of agriculture, trade and consumer protection of any illness found in any of the deer.

7. If any of the deer dies, the license holder shall have the carcass tested for chronic wasting disease and shall have the test results submitted to the department of natural resources and the department of agriculture, trade and consumer protection.

8. If any of the deer is found, as a result of testing, to have chronic wasting disease, the license holder shall have all of the deer destroyed.

(b) Legal title to the white–tailed deer subject to par. (a) remains with the state.

(c) The holder of the rehabilitation license who possesses the white–tailed deer as authorized under par. (a) shall immediately notify the department if any of the deer are not fenced as required under par. (a) 2., are not identified as required under par. (a) 3., reproduce, or are removed from the facilities and premises that are approved for use under the rehabilitation license.

(d) Upon notification under par. (c), or if the department determines that any of the conditions under par. (a) are not met, the holder of the rehabilitation license shall no longer be authorized to possess the white–tailed deer.

(e) If any of the deer escape from the facilities or premises that are approved for use under the rehabilitation license, the license holder shall notify the department immediately.

(f) The holder of the rehabilitation license may not release any of the deer subject to par. (a) into the wild without the prior approval of the department.

**(6)** INAPPLICABILITY TO CERTAIN WILD ANIMALS. (a) This section does not authorize the possession of harmful wild animals.

(b) The possession of native wild reptiles and native wild amphibians is subject to s. 169.12 and not to this section.

**History:** 2001 a. 56 ss. 75, 224; 2003 a. 179.

**169.05  Taking of wild animals. (1)** REQUIREMENT. No person may take any wild animal from the wild except as authorized under a bird hunting preserve license, a wild fur farm license, a rehabilitation license, or a scientific research license or under s. 29.319.

**(2)** EXEMPTION FOR CERTAIN WILD ANIMALS. A person is exempt from the requirement under sub. (1) if the wild animal that the person takes from the wild is a native wild animal that is exempt under s. 169.04 (4) (a).

**(3)** EXEMPTION FOR CERTAIN PERSONS AND INSTITUTIONS. (a) Each of the following is exempt from the requirement under sub. (1):

1. A veterinarian, for the purpose of providing medical treatment to wild animals.

2. The department.

(b) For purposes of par. (a) 1., "medical treatment" does not include rehabilitation.

**(4)** INAPPLICABILITY TO CERTAIN WILD ANIMALS. (a) This section does not authorize the taking of harmful wild animals.

(b) The taking of native wild reptiles and native wild amphibians is subject to s. 169.12 and not to this section.

**History:** 2001 a. 56.

**169.06  Introduction, stocking, and release of wild animals. (1)** REQUIREMENT; PERSONS OTHER THAN THE DEPARTMENT. (a) No person may introduce, stock, or release into the wild, or import into this state to introduce, stock, or release into the wild, any wild animal except as authorized under a bird hunting preserve license, a bird dog training license, a hound dog training license, a dog club training license, a bird dog trial license, a hound dog trial license, a stocking license, a rehabilitation license, or a scientific research license or under s. 29.319.

(b) No person may introduce, stock, or release into the wild, or import into this state for introducing, stocking, or releasing into the wild, any wild animal unless the department has given its authorization under par. (c) and the person has complied with the requirements under par. (d).

(c) The department may authorize the introducing, stocking, releasing into the wild, or importing of a species of wild animal only if the department has determined that the wild animal will not be detrimental in any manner to the conservation of the natural resources of this state.

Case 3:08-cr-50013    Document 25-3    Filed 07/30/2008    Page 4 of 32

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242.

**169.06    CAPTIVE WILDLIFE**

Updated 05–06 Wis. Stats. Database    4
*Not certified under s. 35.18 (2), stats.*

(d) Introducing, stocking, or releasing a wild animal under this section is subject to all of the following requirements:

1. If a wild animal has been exposed to or infected with any contagious or infectious disease, as defined under rules promulgated by the department of agriculture, trade and consumer protection under s. 95.001 (2), the person introducing, stocking, or releasing the wild animal shall ensure that a veterinarian files a copy of a valid certificate of veterinary inspection with the department of agriculture, trade and consumer protection certifying that the wild animal is free of any such diseases before the introducing, stocking, or release.

2. A person introducing, stocking, or releasing wild birds under the authority of a stocking license, a bird hunting preserve license, a bird dog training license, or a bird dog trial license may only introduce, stock, or release wild birds that meet all of the following requirements:

a. The wild birds originate from a flock of a person participating in the national poultry improvement plan under 9 CFR part 145 and any other captive wild birds with which they have had contact originate from such a flock.

b. Within 30 days before the introducing, stocking, or release, the wild birds meet the requirements of any rules promulgated by the department under sub. (3m).

**(2)** REPORTS. At the request of a municipality in an area in which wild animals are introduced, stocked, or released under sub. (1), the department shall require a person who introduced, stocked, or released those wild animals to report to the municipality the number and species of wild animals introduced, stocked, or released and the location at which the animals were introduced, stocked, or released.

**(3)** BY THE DEPARTMENT. The department may import into this state to introduce, stock, or release into the wild, may introduce, stock, or release into the wild, or may authorize introducing, stocking, or releasing into the wild, a wild animal without holding a license as required under sub. (1) (a).

**(3m)** INTRODUCTION REQUIREMENTS. (a) The department may promulgate rules to establish the following:

1. Additional requirements that wild animals shall meet before they enter this state.

2. Additional requirements that any animals shall meet before they may be introduced, stocked, or released into the wild.

(b) The requirements under par. (a) may include mandatory testing of the animals for disease.

**(4)** EXEMPTION. Subsections (1) to (3m) do not apply to wild animals that are released into the wild after being accidentally trapped or confined.

**History:** 2001 a. 56.

**169.07  Exhibition of live wild animals. (1)** REQUIREMENT. (a) No person may exhibit any captive live native wild animal or any captive live nonnative wild animal of the family ursidae except as authorized under a captive wild animal farm license, a rehabilitation license, a nonprofit educational exhibiting license, or a nonresident temporary exhibiting license or under s. 29.319.

(b) If a person exhibits a wild animal subject to par. (a) under the authority of a captive wild animal farm license or a rehabilitation license, the person may exhibit only those species of wild animals that are specified by the department on the license.

**(2)** EXEMPTION FOR CERTAIN WILD ANIMALS. A person is exempt from the requirements under sub. (1) if the wild animal that the person exhibits is a wild animal that is exempt under s. 169.04 (4) (a) or (b).

**(3)** EXEMPTION FOR CERTAIN INSTITUTIONS. Each of the following is exempt from the requirements under sub. (1):

(a) A public zoo or aquarium.

(b) A circus or the Circus World Museum located in Baraboo, Wisconsin.

(c) The department.

(d) A person who is licensed under s. 95.68.

(e) A person who is licensed under s. 95.69 and who possesses wild animals for 10 days or less and solely for the purpose of resale or slaughter.

**(4)** INAPPLICABILITY TO CERTAIN WILD ANIMALS. This section does not authorize the exhibiting of harmful wild animals.

**History:** 2001 a. 56.

**169.08  Propagation of wild animals. (1)** REQUIREMENT. No person may propagate any native wild animal or any nonnative wild animal of the family ursidae except as authorized under a captive wild animal farm license, a bird hunting preserve license, a wild fur farm license, a nonprofit educational exhibiting license, or a scientific research license.

**(2)** EXEMPTION FOR CERTAIN WILD ANIMALS. A person is exempt from the requirement under sub. (1) if the wild animal that the person propagates is a wild animal that is exempt under s. 169.04 (4) (a) or (b).

**(3)** EXEMPTION FOR CERTAIN INSTITUTIONS. Each of the following is exempt from the requirement under sub. (1):

(a) A public zoo or aquarium.

(b) A circus or the Circus World Museum located in Baraboo, Wisconsin.

(c) The department.

**(4)** INAPPLICABILITY TO CERTAIN WILD ANIMALS. This section does not authorize the propagating of harmful wild animals.

**History:** 2001 a. 56.

**169.085  Rehabilitation of wild animals. (1)** REQUIREMENT. No person may rehabilitate any wild animal except as authorized under a rehabilitation license.

**(2)** INAPPLICABILITY TO CERTAIN WILD ANIMALS. This section does not authorize the rehabilitation of harmful wild animals.

**History:** 2001 a. 56.

**169.09  Hunting of captive wild animals. (1)** REQUIREMENT; GENERALLY. No person may hunt a captive wild animal except as authorized under a bird hunting preserve license, a bird dog training license, a hound dog training license, a dog club training license, a bird dog trial license, or a hound dog trial license.

**(1m)** POSSESSION OF WEAPON WHILE HUNTING. Notwithstanding any authorization for hunting under this section, no person may do any of the following:

(a) Shoot or shoot at any wild animal that is or has been captive while hunting unless the person is in physical possession of the weapon.

(b) Provide or operate, or offer to provide or operate, a facility that allows a person the opportunity to hunt any wild animal that is or has been captive if the person who is hunting is in violation of par. (a).

**(2)** REQUIREMENT; COMMERCIAL HUNTING. (a) No person may sell or offer to sell or purchase or offer to purchase the opportunity to hunt any wild animal that is or has been captive except as authorized under one of the following:

1. A bird hunting preserve license.

2. A dog training license, if the hunting does not involve the release of a captive wild animal into the wild and does not include shooting, shooting at, intentional killing, or attempting to kill any wild animal.

(b) This subsection does not apply to any of the following:

1. Fees paid to enter into an organized competitive field trial event involving sporting dog breeds that is sanctioned, licensed, or recognized by a local, state, regional, or national dog organization and authorized under a valid bird dog trial license or hound dog trial license.

2. Membership fees paid to join a dog club.

**History:** 2001 a. 56; 2003 a. 239; 2005 a. 35.

**169.10  Sale and purchase of live wild animals. (1)** SALE. Except as authorized under a captive wild animal farm

Case 3:08-cr-50013   Document 25-3   Filed 07/30/2008   Page 5 of 32

Electronic reproduction of 2005–06 Wis. Stats. database updated and current through June 30, 2008 and 2007 Wis. Act 242

5   Updated 05–06 Wis. Stats. Database
*Not certified under s. 35.18 (2), stats.*

CAPTIVE WILDLIFE      169.14

license, a bird hunting preserve license, a wild fur farm license, or a nonprofit educational exhibiting license or under s. 29.319, no person may sell or offer to sell any of the following:

(a) Any live native wild animal that is not exempt under s. 169.04 (4) (a).

(b) Any live nonnative wild animal that is not exempt under s. 169.04 (4) (b).

(2) PURCHASE. (a) Except as provided under par. (b) and except as authorized under a captive wild animal farm license, a bird hunting preserve license, a bird dog training license, a hound dog training license, a dog club training license, a bird dog trial license, a hound dog trial license, a nonprofit educational exhibiting license, or a stocking license or under s. 29.319, no person may purchase or offer to purchase any of the following:

1. Any live native wild animal that is not exempt under s. 169.04 (4) (a).

2. Any live nonnative wild animal that is not exempt under s. 169.04 (4) (b).

(b) A nonresident who purchases a live wild animal is exempt from holding a license under this chapter to possess the wild animal if the nonresident possesses the wild animal in this state for not more than 10 days after the date of purchase.

(4) EXEMPTION FOR CERTAIN INSTITUTIONS. Each of the following is exempt from the requirements under subs. (1) and (2):

(a) A public zoo or aquarium.

(b) A circus or the Circus World Museum located in Baraboo, Wisconsin.

(c) The department.

(d) A person who is licensed under s. 95.68 or 95.69.

(5) INAPPLICABILITY TO CERTAIN WILD ANIMALS. (a) This section does not authorize the selling or purchasing of harmful wild animals.

(b) The selling and purchasing of native wild reptiles and native wild amphibians is subject to s. 169.12 and not to this section.

**History:** 2001 a. 56.

**169.11  Harmful wild animals.** (1) DESIGNATION. (a) The department shall designate by rule cougars, members of the family ursidae, wild swine, and feral swine as harmful wild animals. After consulting with the department of agriculture, trade and consumer protection and the department of health services, the department of natural resources may designate by rule other species of wild animals as harmful wild animals if any of the following applies:

1. The wild animal is not a native wild animal and is capable of inflicting harm to the environment.

2. The wild animal is capable of creating a risk to public health or to the health of domestic animals.

3. The wild animal is capable of inflicting severe physical harm to humans or to domestic animals.

(b) No person may possess, take, propagate, sell, purchase, transfer, exhibit, or rehabilitate a live harmful wild animal unless specifically authorized to do so by the department.

(c) No person may introduce, stock, or release, or import into this state to introduce, stock, or release, any harmful wild animal unless specifically authorized to do so by the department under s. 169.06 (1) (c).

(3) EXEMPTIONS. (a) Public zoos and aquariums are exempt from the prohibition under sub. (1) (b).

(b) 1. Veterinarians are exempt from the prohibition under sub. (1) (b) for the purpose of providing medical treatment to harmful wild animals.

2. For purposes of subd. 1., "medical treatment" does not include rehabilitation.

**History:** 2001 a. 56; 2005 a. 253; 2007 a. 20 s. 9121 (6) (a); 2007 a. 119.

**169.12  Sale and purchase of native wild reptiles and wild amphibians.** (1) POSSESSION; GENERAL. No person may take from the wild or possess live native wild reptiles or live native wild amphibians unless the person is authorized to do so under rules promulgated by the department or unless sub. (3) applies.

(3) POSSESSION OF NATIVE FROGS. A person using native frogs for bait while fishing may take from the wild, possess, and kill more than 5 native frogs, but may not possess more than 5 of any subspecies of native frog for more than 24 hours.

(4) RESTRICTIONS ON SALES AND PURCHASES. Unless authorized to do so under rules promulgated by the department, no person may sell or purchase live native wild reptiles or live native wild amphibians except for the following:

(a) Color variants of these wild reptiles and wild amphibians that have been bred in captivity and have coloration that is clearly distinct from the normal morphological color patterns.

(b) Leopard frogs, mud puppies, and tiger salamanders that are sold or purchased under the authorization of a Class A captive wild animal farm license.

(c) Native reptiles or amphibians that are legally taken or reared outside this state and that are sold to educational institutions under the authorization of a Class A captive wild animal farm license.

(6) EXEMPTION FOR VETERINARIANS. (a) Veterinarians are exempt from the requirement under sub. (1) for the purpose of providing medical treatment to native wild reptiles and native wild amphibians.

(b) For purposes of par. (a), "medical treatment" does not include rehabilitation.

**History:** 2001 a. 56.

**169.14  Carcasses of captive wild animals.** (1) RESTRICTIONS ON SALES AND PURCHASES. (a) No person may sell the carcass of any captive wild animal unless the seller provides to the purchaser written proof of origin.

(b) No person may purchase or possess the carcass of any captive wild animal unless the purchaser maintains written proof of origin during the time the purchaser possesses the carcass.

(c) No person may sell or purchase the gallbladder of a bear that was a captive wild animal.

(d) No person may preserve and mount a carcass of a captive wild animal for consideration unless that person holds a valid taxidermist permit issued under s. 29.506.

(2) TAGGING REQUIREMENTS FOR CAPTIVE WILD ANIMAL FARMS. (a) A person killing a wild animal under the authority of a captive wild animal farm license shall tag the carcass in the manner required by the department before removing the carcass from the farm. No person may remove the tag from the carcass except as provided in par. (b).

(b) A person acquiring a carcass tagged under par. (a) that is to be consumed for food may remove the tag at the time the carcass is prepared for final consumption. The person shall keep the tag in evidence until the carcass is consumed or otherwise disposed of.

(c) For purposes of pars. (a) and (b), for the carcasses of wild reptiles and wild amphibians, a person need not tag each carcass, but shall tag each shipment in the manner required by the department.

(3) INAPPLICABILITY TO CERTAIN CARCASSES. (a) Subsections (1) and (2) do not apply to the raw fur or dressed fur of fur−bearing wild animals that are possessed as authorized by a license issued under s. 169.18.

(c) The selling, purchasing, or possessing of carcasses of endangered or threatened species is subject to s. 29.604 and not to this section.

**History:** 2001 a. 56.

*Text from the 2005–06 Wis. Stats. database updated by the Revisor of Statutes. Only printed statutes are certified under s. 35.18 (2), stats. Statutory changes effective prior to 4−2−08 are printed as if currently in effect. Statutory changes effective on or after 4−2−08 are designated by NOTES. Report errors at (608) 266−3561, FAX 264−6948, http://www.legis.state.wi.us/rsb/stats.html*

Case 3:08-cr-50013    Document 25-3    Filed 07/30/2008    Page 6 of 32

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242

Updated 05–06 Wis. Stats. Database    6
*Not certified under s. 35.18 (2), stats.*

**169.15    CAPTIVE WILDLIFE**

**169.15    Captive wild animal farm licenses.    (1)**
ISSUANCE    (a)    The department shall issue a Class A captive wild
animal farm license to operate a captive wild animal farm that
grosses $10,000 or more in annual sales to any person who files
a proper application for the license and who pays the applicable
fee.

(b)    The department shall issue a Class B captive wild animal
farm license to operate a captive wild animal farm that grosses less
than $10,000 in annual sales to any person who files a proper
application for the license and who pays the applicable fee.

(d)    The applicant shall specify the location of the enclosures
for the wild animals on the application.

**(2)** AUTHORIZATION    (a)    A captive wild animal farm license
authorizes the holder of the license to possess, propagate, kill,
exhibit, purchase, and sell live captive wild animals of the species
specified by the department on the license.

(b)    A captive wild animal farm license authorizes the killing
of captive wild animals only by the holder of the license or an
employee of the holder of the license.

**(3)** CALCULATION OF ANNUAL SALES    (a)    The calculation of
annual sales under sub. (1) and par. (b) shall be based on sales from
the prior year that involve live captive wild animals that are any
of the following:

1.    Native wild animals.

3.    Harmful wild animals.

4.    Endangered or threatened species.

(b)    For the first year that a person is issued a captive wild ani-
mal farm license, the person shall be issued a Class B captive wild
animal farm license, unless one of the following applies:

1.    The person operated a game bird and animal farm licensed
under s. 29.867, 1999 stats., on January 1, 2003, that grossed
$10,000 or more in annual sales.

2.    The person elects to be issued a Class A captive wild animal
farm license.

**(4)** CONTROL OF WILD ANIMALS    (a)    A person holding a captive
wild animal farm license shall control the wild animals at all times
in the manner required by the department and shall keep the wild
animals at the locations specified on the application for the
license.

(b)    If any member of the family ursidae, felidae, or canidae
escapes from its enclosure or fenced area on a captive wild animal
farm, the person holding the captive wild animal farm license shall
notify the department within 24 hours after the escape.

**(5)** RULES    The department may promulgate rules to establish
additional standards, limitations, and requirements for captive
wild animal farm licenses and for captive wild animal farms,
including fencing of the farms.

**History:** 2001 a. 56.

**169.18    Wild fur farm license. (1)** ISSUANCE    The depart-
ment shall issue a wild fur farm license to any person who files a
proper application and who pays the applicable fee.

**(2)** AUTHORIZATION; LIMITATIONS    (a)    A wild fur farm license
authorizes all of the following:

1.    The holder of the license to possess and propagate live
muskrat, beaver, coyote, raccoon, otter, and mink on the land sub-
ject to the license.

2.    The holder of the license and other persons authorized by
the holder to take the live fur–bearing wild animals specified in
subd. 1. or kill by trapping the fur–bearing wild animals specified
in subd. 1.

3.    The holder of the license to sell the live fur–bearing wild
animals specified in subd. 1. to persons authorized to possess the
fur–bearing wild animals.

(b)    Section 29.501 applies to the possession and selling of the
raw furs and dressed furs of the fur–bearing wild animals that are
possessed as authorized under a wild fur farm license.

(c)    The number of otter that are taken or killed may not exceed
the quota established by rule by the department under sub. (5) (a).

**(3)** ELIGIBLE LAND    (a)    Except as provided in par. (b), a wild
fur farm licensed under this section shall be in a single parcel and
may not exceed 640 acres.

(b)    Upon the request of the applicant for a license under this
section, the department shall issue a single license for a wild fur
farm that does not meet all of the requirements of par. (a) if the
wild fur farm is licensed as a fur animal farm under s. 29.869, 1999
stats., on January 1, 2003.

**(4)** EXEMPTION FROM TRAPPING RESTRICTIONS    Except as pro-
vided in sub. (2) (c), a person trapping fur–bearing wild animals
on a wild fur farm is exempt from having any trapping approval
issued under ch. 29 and is exempt from any closed season restric-
tions, bag limits, or other conditions or restrictions established by
the department under s. 29.014 (1) or 29.192.

**(5)** RULES    (a)    The department shall promulgate by rule a
quota for taking, or killing by trapping, otter for purposes of this
section.

(b)    The department shall promulgate rules for the purpose of
determining whether a piece of land qualifies as a single parcel
under sub. (3).

(c)    The department may promulgate rules to establish addi-
tional standards, limitations, and requirements for wild fur farm
licenses and for wild fur farms.

**History:** 2001 a. 56.

**169.19    Bird hunting preserve licenses. (1)** ISSUANCE
The department shall issue a Class A or a Class B bird hunting pre-
serve license to any person who files a proper application and who
pays the applicable fee.

**(2)** AUTHORIZATION    (a)    A Class A or a Class B bird hunting
preserve license authorizes all of the following:

1.    Possessing, stocking, propagating, releasing into the wild,
selling, and purchasing of live wild birds of the species authorized
under par. (b) by the holder of the license.

2.    Hunting or taking of released wild birds of those species
that have been stocked in the preserve by the holder of the license
and other persons authorized by the holder.

(b)    The department may authorize any of the following species
of live wild birds under a Class A or a Class B bird hunting pre-
serve license:

1.    Pheasants of the species Phasianus colchicus or the species
Syrmaticus reevesii.

2.    Quail that are of the subfamily Odontophorinae.

3.    Gray partridge.

4.    Chukar partridge.

5.    Red–legged partridge.

6.    Mallard ducks that are bred in captivity.

7.    Wild turkeys, if the wild turkeys are located outside a wild
turkey hunting zone established under s. 29.164.

(c)    The department shall specify on the license the species of
wild birds that the department authorizes under the license.

**(3)** REGULATION OF NUMBER OF BIRDS    (a)    A person holding
a bird hunting preserve license may not allow the number of wild
birds of a given species in the preserve that are killed or taken in
a given year to exceed the number of captive wild birds of that spe-
cies that have been stocked in the preserve for that license year.

(b)    A Class A bird hunting preserve license authorizes the per-
son holding the license to possess any number of the species speci-
fied in sub. (2) (b) 2. to 7. and requires the person to stock at least
1,001 adult pheasants in the preserve during the license year.

(c)    A Class B bird hunting preserve license authorizes the per-
son holding the license to possess any number of the species speci-
fied in sub. (2) (b) 2. to 7. and prohibits the person from stocking
more than 1,000 adult pheasants in the preserve.    A holder of a
Class B bird hunting preserve license possessing pheasants under
the license shall stock a minimum of one adult pheasant per 4 acres

Case 3:08-cr-50013   Document 25-3   Filed 07/30/2008   Page 7 of 32

Electronic reproduction of 2005–06 Wis. Stats. database updated and current through June 30, 2008 and 2007 Wis. Act 242

7   Updated 05–06 Wis. Stats. Database
*Not certified under s. 35.18 (2), stats.*

CAPTIVE WILDLIFE    169.23

that are within the boundaries of the licensed preserve during the license year.

**(4)** REQUIREMENTS FOR MALLARD DUCKS. A person possessing mallard ducks under the authority of a bird hunting preserve license may possess only mallard ducks that are bred in captivity and shall identify them as required under 50 CFR 21.13 (b). The person shall house the mallard ducks in pens that are covered and maintained to prevent free–roaming wild waterfowl from being attracted to the pens with the mallard ducks that are being bred.

**(4m)** RESTRICTIONS ON HEN PHEASANTS. A person holding a Class B bird hunting preserve license may not allow the hunting or taking of hen pheasants beginning on December 15 of each year and ending on the following March 31 within the boundaries of the licensed preserve, if the preserve is located totally or partially within a pheasant management zone, as established by the department, for purposes of s. 29.191.

**(5)** EXEMPTION FROM HUNTING RESTRICTIONS. (a) A person hunting or taking wild birds on a bird hunting preserve that have been stocked on the preserve is exempt from having any approval issued under ch. 29.

(b) Except as provided in par. (c), a person hunting or taking wild birds on a bird hunting preserve that have been stocked on the preserve is exempt from any closed season restrictions, bag limits, or other conditions or restrictions established by the department under s. 29.014 (1) or 29.192.

(c) A person hunting mallard ducks shall comply with rules promulgated by the department under ss. 29.014 and 29.192 governing the hunting of waterfowl.

**(6)** RULES. The department may promulgate rules to establish additional standards, limitations, and requirements for bird hunting preserve licenses and for bird hunting preserves.

**History:** 2001 a. 56.

**169.20 Dog training licenses. (1)** BIRD DOG TRAINING LICENSE. (a) The department shall issue a bird dog training license to any individual who is at least 12 years of age who files a proper application and who pays the applicable fee.

(b) Except as provided in par. (c), a bird dog training license authorizes the holder of the license to purchase, possess, release into the wild, and hunt any of the live captive wild birds specified in s. 169.19 (2) (b) 1. to 6. solely for the purposes of training a dog to retrieve, point, flush, and track game.

(c) The department may restrict the possessing, releasing, and hunting of a species of wild birds specified in par. (b) by persons holding dog training licenses in zones or areas for which the department has by rule imposed special hunting restrictions for that species.

(d) A person training a bird dog in a bird hunting preserve for which the hunting of pheasant, quail, mallard ducks bred in captivity, or partridge has been authorized under a bird hunting preserve license is exempt from holding a bird dog training license to possess, release into the wild, and hunt live captive wild birds for the purposes of training the dog to retrieve, point, flush, and track wild birds.

**(2)** HOUND DOG TRAINING LICENSE. (a) The department shall issue a hound dog training license to any individual who is at least 12 years of age who files a proper application and who pays the applicable fee.

(b) A hound dog training license authorizes the holder of the license to purchase, possess, release into the wild, and hunt any of the following wild animals for the purpose of teaching hound dogs to track game:

1. Live captive rabbit purchased or otherwise acquired from a person holding a captive wild animal farm license.

2. Live captive raccoon.

3. Live captive bear of the species Ursus americanus.

4. Live captive fox.

5. Live captive coyote.

6. Live captive bobcat.

**(3)** DOG CLUB TRAINING LICENSE. (a) The department may issue a dog club training license to an organization that meets the conditions established by the department by rule for dog club training licenses, that files a proper application and that pays the applicable fee.

(b) A dog club training license authorizes the club or its members to purchase, possess, release into the wild, and hunt species of live captive wild animals that are authorized by the department on property owned or leased by the club for the purpose of teaching a bird dog or hound dog to retrieve, point, flush, or track game.

**(4)** RULES. The department may promulgate rules to establish additional standards, limitations, and requirements for licenses issued under this section. The rules may include standards that provide adequate protection for the wild animals that are authorized under a dog training license. The department shall issue a license to an applicant based on the rules in effect under this subsection on the date of the application and may not delay the issuance of a license pending promulgation of additional, modified, or new rules.

**(5)** RESTRICTIONS. (a) No person may sell wild animals under a license issued under this section, but a person holding a bird dog training license who has been contracted to train a dog may charge for the wild birds used in the training.

(b) A license under this section does not authorize organized competitive field events.

**History:** 2001 a. 56; 2003 a. 239.
**Cross Reference:** See also ch. NR 17, Wis. adm. code.

**169.21 Dog trial licenses. (1)** BIRD DOG TRIAL LICENSE. (a) The department shall issue a bird dog trial license to any person who files a proper application and who pays the applicable fee.

(b) A bird dog trial license authorizes the holder of the license to purchase, possess, release into the wild, and hunt any live captive wild bird for any organized competitive field event that involves sporting dog breeds and that is sanctioned, licensed, or recognized by a local, state, regional, or national dog organization.

**(2)** HOUND DOG TRIAL LICENSE. (a) The department shall issue a hound dog trial license to any person who files a proper application and who pays the applicable fee.

(b) A hound dog trial license authorizes the holder of the license to purchase, possess, release into the wild, and hunt live captive raccoon, live captive rabbit, live captive fox, live captive coyote, live captive bobcat, and live captive bear of the species Ursus americanus for any organized competitive field event that involves sporting dog breeds and that is sanctioned, licensed, or recognized by a local, state, regional, or national dog organization.

**(3)** RULES. The department may promulgate rules to establish additional standards, limitations, and requirements for licenses issued under this section. The rules may include standards that provide adequate protection for the wild animals that are authorized under a dog trial license. The department shall issue a license to an applicant based on the rules in effect under this subsection on the date of the application and may not delay the issuance of a license pending promulgation of additional, modified, or new rules.

**History:** 2001 a. 56; 2003 a. 239.
**Cross Reference:** See also ch. NR 17, Wis. adm. code.

**169.23 Stocking license. (1)** ISSUANCE. The department may issue stocking licenses. If the department issues stocking licenses, it shall issue a stocking license to any person who files a proper application and who pays the applicable fee.

**(2)** AUTHORIZATION. A stocking license authorizes the holder of the license to purchase, possess, introduce, or stock wild animals.

**(3)** RULES. The department may promulgate rules to establish additional standards, limitations, and requirements for stocking

Case 3:08-cr-50013    Document 25-3    Filed 07/30/2008    Page 8 of 32

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242.

**169.23    CAPTIVE WILDLIFE**

Updated 05–06 Wis. Stats. Database    8
*Not certified under s. 35.18 (2), stats.*

licenses. The rules may include the species of wild animals that may be introduced or stocked and the locations at which those species of wild animals may be introduced or stocked.

**History:** 2001 a. 56.

**169.24   Rehabilitation license. (1)** ISSUANCE. The department shall issue a rehabilitation license to rehabilitate wild animals to any individual who is at least 18 years of age, who meets the qualifications under rules promulgated under sub. (2), and who files a proper application.

**(2)** QUALIFICATIONS; RULES. The department shall promulgate rules to establish the qualifications required to obtain a rehabilitation license, the types of activities authorized by a rehabilitation license and the standards, limitations, and requirements for rehabilitation licenses. The department may promulgate rules to establish standards for exempting an individual from any of these rules or from any provisions under this chapter.

**History:** 2001 a. 56.

**169.25   Scientific research license. (1)** ISSUANCE. (a) The department shall issue a scientific research license to any person who is engaged in a study or in research that the department determines will lead to increased, useful scientific knowledge and who files a proper application and who pays the applicable fee.

(b) The department may also require the person to submit with the license application a copy of any of the following:

1. The person's study plan or research proposal.

2. An approval received by the person under 9 CFR 2.31.

**(2)** AUTHORIZATION. A scientific research license authorizes the holder of the license to take from the wild, possess, kill, or propagate the species of native wild animals that the department authorizes under the license.

**(3)** SCOPE OF LICENSE; CONTENTS. A scientific research license shall contain the holder's name and address, the date of issuance, and all of the following conditions or limitations:

(a) The specific purposes for which it is issued.

(b) The species of wild animals and the number of each species to be studied.

(c) The locations from where the wild animals will be taken.

(d) The locations at which the wild animals will be kept and studied.

(e) The periods of time in which the wild animals may be studied.

(f) Any other conditions or limitations that the department considers reasonable.

**(4)** EQUIPMENT. A scientific research license may authorize the use of net guns, tranquilizer guns and other equipment or supplies for activities related to scientific research or study.

**(5)** TITLE TO; TRANSFER AND DISPOSAL OF WILD ANIMALS. (a) A person holding a scientific research license may not transfer any wild animal or its carcass held under the authority of the license unless the purpose of the transfer is to trade the wild animals for other animals for scientific research or classroom demonstrations and the transfer is specifically authorized by the department at the time of the transfer.

(b) A person holding a scientific research license shall release or dispose of a live wild animal possessed under the authority of the license, or its carcass, only in the manner specifically authorized by the department.

**(6)** RULES. The department may promulgate rules to establish additional standards, limitations, and requirements for scientific research licenses.

**History:** 2001 a. 56.

**169.26   Nonprofit educational exhibiting license. (1)** ISSUANCE. The department shall issue a nonprofit educational exhibiting license to any nature center, aquarium, or educational institution if the center, aquarium, or institution is a nonstock, non-

profit corporation described under section 501 (c) (3) or (4) of the Internal Revenue Code and exempt from taxation under section 501 (a) of the Internal Revenue Code and if the center, aquarium, or institution files a proper application and pays the applicable fee.

**(2)** AUTHORIZATION. A nonprofit educational exhibiting license authorizes the person holding the license to do all of the following:

(a) Possess and exhibit live wild animals.

(b) Purchase and propagate live wild animals subject to sub (3) (a) for the purpose of exhibiting only.

**(3)** AUTHORIZATION; RESTRICTION; TRADING. (a) A person holding a nonprofit educational exhibiting license may purchase or propagate only those species of wild animals that the department specifically authorizes on the license.

(b) If a person holding a nonprofit educational exhibiting license determines that the person possesses more live wild animals than are necessary for exhibiting purposes, the person may sell the excess wild animals to another person who is not prohibited under this chapter from possessing the wild animals.

**(4)** RULES. The department may promulgate rules establishing standards, limitations, and requirements for nonprofit educational exhibiting licenses.

**History:** 2001 a. 56.

**169.27   Nonresident temporary exhibiting license. (1)** ISSUANCE. The department shall issue a nonresident temporary exhibiting license to any individual who is a nonresident or to any business organization that is not organized under the laws of this state, if the individual or organization meets the requirement under sub. (2), files a proper application, and pays the applicable fee.

**(2)** FEDERAL REQUIREMENT. An applicant for a nonresident temporary exhibiting license shall hold any license or permit that may be required under 7 USC 2131 to 2159 at the time the department issues the applicant the license.

**(3)** AUTHORIZATION. A person holding a nonresident temporary exhibiting license may do all of the following:

(a) Possess and exhibit live wild animals at locations designated by the department under the license for the production of motion pictures or television programs or as parts of theatrical acts, carnivals, or other animal attractions or displays.

(b) Move live wild animals in mobile facilities that do not meet the rules for housing under s. 169.39.

**(4)** RULES. The department may promulgate rules to establish additional standards, limitations, and requirements for nonresident temporary exhibiting licenses.

**History:** 2001 a. 56.

**169.29   Validation licenses. (1)** ELIGIBILITY. (a) *Initial validation license.* A person to whom all of the following conditions apply is eligible for an initial validation license:

1. The person has a license or permit under s. 29.863, 1999 stats., s. 29.865, 1999 stats., s. 29.867, 1999 stats., s. 29.869, 1999 stats., or s. 29.877, 1999 stats., on April 18, 2002.

2. The licenses available under ss. 169.15 to 169.27 do not permit the continuation of an activity that was allowed under the license or permit under s. 29.863, 1999 stats., s. 29.865, 1999 stats., s. 29.867, 1999 stats., s. 29.869, 1999 stats., or s. 29.877, 1999 stats., on April 18, 2002, at the location where the activity is being conducted on April 18, 2002.

3. The person obtains a license under this chapter for any activity that was allowed under the license or permit under s. 29.863, 1999 stats., s. 29.865, 1999 stats., s. 29.867, 1999 stats., s. 29.869, 1999 stats., or s. 29.877, 1999 stats., on April 18, 2002, and for which a license under ss. 169.15 to 169.27 is available.

(b) *Subsequent validation license.* A person who meets all of the following conditions is eligible for a subsequent validation license:

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242

Case 3:08-cr-50013   Document 25-3   Filed 07/30/2008   Page 9 of 32

9   Updated 05–06 Wis. Stats. Database
    *Not certified under s. 35.18 (2), stats.*

CAPTIVE WILDLIFE   169.31

1. The person had a license or permit under s. 29.863, 1999 stats., s. 29.865, 1999 stats., s. 29.867, 1999 stats., s. 29.869, 1999 stats., or s. 29.877, 1999 stats., on April 18, 2002.

2. The person obtained a license under ss. 169.15 to 169.27 for an activity that was allowed under the license or permit under s. 29.863, 1999 stats., s. 29.865, 1999 stats., s. 29.867, 1999 stats., s. 29.869, 1999 stats., or s. 29.877, 1999 stats., on April 18, 2002.

3. Rules applicable to licenses available under ss. 169.15 to 169.27 are promulgated so as not to permit the continuation of an activity that was allowed under the license or permit under s. 29.863, 1999 stats., s. 29.865. 1999 stats., s. 29.867, 1999 stats., s. 29.869, 1999 stats., or s. 29.877, 1999 stats., on April 18, 2002, at the location where the activity was conducted on April 18, 2002.

**(2)** APPLICATION. (a) *Initial validation license.* An eligible person may apply for an initial validation license no later than December 31, 2003.

(b) *Subsequent validation license.* An eligible person may apply for a subsequent license no later than 6 months after the promulgation of rules described under sub. (1) (b) 3.

**(3)** ISSUANCE. The department shall issue a single validation license to any eligible person who files a proper application for the license. The validation license shall apply to all activities described under sub. (4) (a). The department shall specify on the validation license the activities that are permitted under the license. The department shall combine a subsequent validation license with an initial validation license that has been previously issued to the same person.

**(4)** AUTHORIZATION; LIMITATIONS. (a) Except as provided in pars. (c) to (e) and sub. (5), a validation license authorizes the continuation of all activities that the holder of the validation license is authorized to conduct on April 18, 2002, under a license or permit issued under s. 29.863, 1999 stats., s. 29.865, 1999 stats., s. 29.867, 1999 stats., s. 29.869, 1999 stats., or s. 29.877, 1999 stats., if the holder is actually engaged in those activities on April 18, 2002.

(b) The authorization under par. (a) applies even though the activity is prohibited or limited under this chapter or under the rules promulgated under this chapter.

(c) A validation license does not authorize the rehabilitation of wild animals.

(d) A validation license does not authorize the hunting of pheasants in excess of the number of pheasants stocked.

(e) Unless the holder of a validation license also holds a Class A bird hunting preserve license, a validation license does not authorize the hunting or taking of hen pheasants beginning on December 15 of each year and ending on the following March 31 within the boundaries of a pheasant and quail farm licensed under s. 29.865, 1999 stats., that is located totally or partially within a pheasant management zone that is established by the department for purposes of s. 29.191.

**(5)** CONDITIONS. (a) The department shall impose all of the conditions, restrictions and regulations on the validation license that were applicable to the same activity under s. 29.863, 1999 stats., s. 29.865, 1999 stats., s. 29.867, 1999 stats., s. 29.869, 1999 stats., or s. 29.877, 1999 stats., and under any rules promulgated under those sections that were in effect on April 18, 2002.

(b) A validation license is subject to ss. 169.06 (3m), 169.09, 169.11, 169.30, 169.33, 169.34, 169.35, 169.36, 169.37, 169.39, 169.40, 169.42, 169.43, 169.45, and 169.46 and to any applicable provisions under chs. 93 and 95.

**(6)** RENEWAL; TRANSFERABILITY. (a) The department shall renew or transfer a validation license upon the same conditions as the original validation license.

(b) The department shall transfer a validation license, or any portion of a validation license, to any person who does all of the following:

1. Acquires the land that is subject to the validation license.

2. Meets the requirements of this section.

3. Applies to the department for transfer of the validation license, or any portion of the validation license, within 3 months after acquiring the land.

(c) If the holder of a validation license fails to renew the license within 45 days after the license's expiration date, the license expires and may never be renewed.

(d) If the land subject to a validation license is transferred and the validation license is not transferred as provided in par. (b), the license expires and may never be renewed.

**History:** 2001 a. 56.

**169.30  Endangered or threatened species.** No person may take from the wild, introduce, stock, release into the wild, exhibit, propagate, rehabilitate, hunt, sell, purchase, transfer, or engage in any other activity related to a live wild animal that is an endangered or threatened species unless the person is in compliance with this chapter, the rules promulgated under this chapter, and s. 29.604.

**History:** 2001 a. 56.

**169.31  License and tag fees. (1)** FEES. The following fees shall be paid to the department for the issuance or renewal of licenses:

(a) *Captive wild animal farm licenses.* 1. The fee for an initial Class A captive wild animal farm license is $200 and the fee for an initial Class B captive wild animal farm license is $50. The department shall waive the fee for an initial license under this subdivision for an individual who is under 14 years of age if the individual is a member of a 4–H club or a sporting club.

2. The fee for a renewal of a Class A captive wild animal farm license is $100, and the fee for a renewal of a Class B captive wild animal farm license is $25.

(d) *Wild fur farm license.* The fee for a wild fur farm license is $50.

(e) *Bird hunting preserve licenses.* 1. The fee for an initial Class A bird hunting preserve license is $300, and the fee for an initial Class B bird hunting preserve license is $200.

2. The fee for a renewal of a Class A bird hunting preserve license is $200, and the fee for a renewal of a Class B bird hunting preserve license is $100.

(f) *Dog training licenses.* 1. The fee for a bird dog training license is $25.

2. The fee for a hound dog training license is $25.

3. The fee for a dog club training license is $100.

(g) *Dog trial licenses.* 1. The fee for a bird dog trial license is $25.

2. The fee for a hound dog trial license is $25.

(i) *Stocking license.* The fee for a stocking license is $25.

(j) *Rehabilitation license.* There is no fee for a rehabilitation license.

(k) *Scientific research license.* The fee for a scientific research license is $25.

(L) *Nonprofit educational exhibiting license.* The fee for a nonprofit educational exhibiting license is $25.

(m) *Nonresident temporary exhibiting license.* The fee for a nonresident temporary exhibiting license is $50.

(o) *Validation license.* There is no fee for an initial or subsequent validation license.

**(2)** LATE FEE. The late fee for the renewal of any license issued under this chapter that is filed after the expiration date of the license is $20.

**(3)** APPLICABILITY OF LICENSE; CUMULATIVE FEES. (a) Except as provided in par. (b) or (bn), a license issued under this section authorizes the applicable activity on only one block of contiguous land.

(b) The department shall continue to issue one license under this chapter to a business or other operation that was licensed for certain activities as one legal entity with one set of records under

Case 3:08-cr-50013    Document 25-3    Filed 07/30/2008    Page 10 of 32

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242.

**169.31    CAPTIVE WILDLIFE**

Updated 05–06 Wis. Stats. Database    10
*Not certified under s. 35.18 (2), stats.*

one license under s. 29.865, 1999 stats., s. 29.867, 1999 stats., or s. 29.869, 1999 stats. if the activities for which the license was issued were conducted on noncontiguous land and there is one license that authorizes all of those activities. The department shall continue to issue the one license until the person holding that one license ceases to be issued a license for the activities or until the person holding the one license issued ceases to have a controlling interest in that business or operation.

(bn) Upon request of an applicant for a Class A bird hunting preserve license, the department shall issue a single license for a Class A bird hunting preserve that is not in one block of contiguous land if each parcel of the land is at least 80 acres in size and if all of the parcels are located in the same county or if each of the outlying parcels is either in the same county as the parcel on which the hunting preserve bases its operations or in a county that is adjacent to that county.

(c) A person applying for 2 or more licenses under this section that are necessary to engage in a single business or other operation shall pay a total fee that equals the fee for the required license with the highest fee that is required, plus 50% of the fee for each additional required license.

**(4)** TAGS. Any tags required by this chapter or rules promulgated under this chapter shall be provided by the department for a fee that is equal to the cost to the department.

History: 2001 a. 56.

**169.32    Licenses; effective periods. (1)** CAPTIVE WILD ANIMAL FARM LICENSE. A captive wild animal farm license is valid from the date of issuance until the following December 31.

**(4)** WILD FUR FARM LICENSE. A wild fur farm license is valid from the date of issuance until the 3rd December 31 following the date of issuance.

**(5)** BIRD HUNTING PRESERVE LICENSE. A bird hunting preserve license is valid from the date of issuance until the following May 30.

**(6)** DOG TRAINING LICENSES. (a) A bird dog training license is valid from the date of issuance until the 3rd December 31 following the date of issuance.

(b) A hound dog training license is valid from the date of issuance until the 3rd December 31 following the date of issuance.

(c) A dog club training license is valid from the date of issuance until the 3rd December 31 following the date of issuance.

**(7)** DOG TRIAL LICENSES. (a) A bird dog trial license is valid from the date of issuance until the following December 31.

(b) A hound dog trial license is valid from the date of issuance until the following December 31.

**(9)** STOCKING LICENSE. A stocking license is valid for the period specified on the license, which may not exceed 30 days.

**(10)** REHABILITATION LICENSE. A rehabilitation license is valid for 3 consecutive years from the date of issuance.

**(11)** SCIENTIFIC RESEARCH LICENSE. A scientific research license is valid from the date of issuance until the following December 31.

**(12)** NONPROFIT EDUCATIONAL EXHIBITING LICENSE. A nonprofit educational exhibiting license is valid from the date of issuance until the following December 31.

**(13)** NONRESIDENT TEMPORARY EXHIBITING LICENSE. (a) Except as provided in par. (b), a nonresident temporary exhibiting license is valid for the period specified on the license, which may not exceed 30 days.

(b) Upon application, the department may grant extensions of the nonresident temporary exhibiting license beyond 30 days.

**(15)** VALIDATION LICENSES. An initial or subsequent validation license is valid from the date of issuance until the 5th December 31 after the date of issuance and may be renewed for 5–year periods thereafter.

History: 2001 a. 56.

**169.33    Licenses; applications; renewals; terminations. (1)** APPLICATION. The application for a license under this chapter shall be on a form provided by the department or in a format approved by the department, and shall request the information required by the department. The department may not issue a license unless the applicant provides the information required.

**(2)** ELIGIBILITY REQUIREMENTS FOR MINORS. (a) Each applicant for a license under this chapter who is less than 18 years of age shall have the application signed by a parent or guardian.

(b) Except as provided in pars. (c) and (d), an individual who applies for a license under this chapter shall be at least 14 years of age.

(c) An individual who applies for a captive wild animal farm license may be less than 14 years of age if the individual is a member of a 4–H club or a sporting club.

(d) An individual who applies for a bird dog training license or a hound dog training license shall be at least 12 years of age.

**(3)** RENEWALS. (a) Except as provided in par. (b), a person applying to renew a license issued under this chapter shall file an application with the department on or before the expiration date of the license.

(b) A person may apply for a renewal of a license issued under this chapter not more than 45 days after the license's expiration date if the application is accompanied by the late fee specified under s. 169.31 (2), in addition to any regular renewal fee.

**(4)** INCORRECT INFORMATION. No person may provide information that the person knows to be incorrect in order to obtain a license issued under this chapter to which the person is not entitled.

**(4m)** INCORRECT RECORDS OR REPORTS. No person may fail to keep records or submit reports as required under this chapter.

**(5)** EXPIRATION OF LICENSE. A person holding a license issued under this section that expires or is revoked or suspended shall remove or cause to be removed from the land subject to the license any signs indicating that the land was so licensed within 45 days after the expiration, revocation, or suspension.

**(6)** COMPLIANCE. No person may violate any condition or limitation imposed by the department on a license issued under this chapter.

History: 2001 a. 56.

**169.34    Denial and revocation of licenses based on child support delinquency. (1)** SOCIAL SECURITY NUMBERS REQUIRED. The department shall require an applicant who is an individual to provide his or her social security number as a condition of applying for, or applying to renew, any license issued under this chapter.

**(2)** DISCLOSURE OF SOCIAL SECURITY NUMBERS. The department of natural resources may not disclose any social security numbers received under sub. (1) to any person except to the department of children and families for the sole purpose of administering s. 49.22.

**(3)** DENIAL OF APPROVALS. (a) As provided in the memorandum of understanding required under s. 49.857 (2), the department of natural resources shall deny an application to issue or renew, to suspend if already issued, or to otherwise withhold or restrict a license issued under this chapter if the applicant for or the holder of the license is delinquent in making court–ordered payments of child or family support, maintenance, birth expenses, medical expenses, or other expenses related to the support of a child or former spouse or if the applicant or holder fails to comply with a subpoena or warrant issued by the department of children and families or a county child support agency under s. 59.53 (5) and relating to paternity or child support proceedings.

(b) As provided in the memorandum of understanding required under s. 49.857 (2), the department of natural resources shall deny an application to issue or renew a license issued under this chapter if the applicant for or the holder of the license fails to

Electronic reproduction of 2005–06 Wis. Stats database updated and current through June 30, 2008 and 2007 Wis. Act 242

**11   Updated 05–06 Wis. Stats. Database**
*Not certified under s. 35.18 (2), stats.*

**CAPTIVE WILDLIFE      169.36**

provide his or her social security number as required under sub (1).

History: 2001 a 56; 2007 a 20

**169.35   Denial and revocation of licenses based on tax delinquency. (1)** SOCIAL SECURITY AND IDENTIFICATION NUMBERS REQUIRED  The department shall require an applicant who is an individual to provide his or her social security number and an applicant who is not an individual to provide the applicant's federal employer identification number as a condition of applying for, or applying to renew, any of the following licenses:

(a) A captive animal farm license

(b) A wild fur farm license

(c) A bird hunting preserve license

**(2)** DISCLOSURE OF NUMBERS  The department of natural resources may not disclose any information received under sub (1) to any person except to the department of revenue for the sole purpose of making certifications required under s 73.0301.

**(3)** DENIAL AND REVOCATION  The department of natural resources shall deny an application to issue or renew, or shall revoke if already issued, a license specified in sub (1) if the applicant for or the holder of the license fails to provide the information required under sub (1) or if the department of revenue certifies that the applicant or license holder is liable for delinquent taxes under s 73.0301.

History: 2001 a 56

**169.36   Record-keeping and reporting requirements. (1)** CAPTIVE WILD ANIMAL FARM LICENSES  BIRD HUNTING PRESERVE LICENSES AND NONPROFIT EDUCATIONAL EXHIBITING LICENSES  (a) *Records, generally.*  Each person holding a captive wild animal farm license, a bird hunting preserve license, or a nonprofit educational exhibiting license shall keep a correct and complete record of all of the following information:

1  For each transaction in which live wild animals are purchased, sold, acquired, or transferred:

a.  The complete name and address and the number of any license issued under this chapter of the person from whom the wild animals were purchased or acquired or of the person to whom the wild animals were sold or transferred

b.  The date of the transaction and the number and species of the wild animals

2  All wild animals belonging to the holder of the license that have died, have been killed, or have escaped

(b) *Records, additional requirements exemptions*  1  A person holding a bird hunting preserve license is exempt from keeping the records required under par (a) 1 a for those wild birds that are killed on the land subject to the license

2  For the taking of wild reptiles or wild amphibians from the wild, a person required to hold a license for such taking under this chapter shall include in the person's records the date of the taking and the location of the taking

**(2)** WILD FUR FARM LICENSES  Each person holding a wild fur farm license shall keep a correct and complete record of the complete name and address and the number of any license issued under this chapter of each person to whom the license holder sells a live fur–bearing wild animal

**(3)** REHABILITATION LICENSES  Each person holding a rehabilitation license shall keep a correct and complete record of all of the following information for each wild animal:

(a)  The date that the wild animal in need of rehabilitation is received and the species of the wild animal

(b)  The condition of the wild animal that requires rehabilitation

(c)  The disposition of the wild animal, including the date and location of its release into the wild or its transfer to the department

(d)  The cause of death, if known, for a wild animal that dies

(e)  Health records as required by the department

**(4)** DOG TRAINING AND TRIAL LICENSES  Each person holding a bird dog training license, a hound dog training license, a dog club training license, a bird dog trial license, or a hound dog trial license shall keep a receipt of the purchase of each wild animal purchased under the authority of the license and a correct and complete record of any testing for disease on these wild animals that is required under rules promulgated under s  169.06 (3m)

Cross Reference: See also ch. NR 17, Wis. adm. code

**(5)** SCIENTIFIC RESEARCH LICENSES  Each person holding a scientific research license shall keep a correct and complete record of all of the following information for each wild animal:

(a)  The disposition of the wild animal, including the date and location of its release into the wild or its transfer to the department

(b)  The cause of death, if known, for a wild animal that dies

**(7)** ADDITIONAL INFORMATION  The department may impose additional record–keeping requirements on any holders of licenses under this chapter

**(8)** ZOOS  If a zoo or aquarium is not an accredited member of the American Zoo and Aquarium Association, the governing body of the zoo or aquarium shall keep correct and complete records of all transactions involving the movement of wild animals that are native wild animals, nonnative wild animals of the family cervidae, harmful wild animals, or endangered or threatened species  The department shall determine the information to be kept in these records

**(9)** RECORDS; TIMING  (a)  A person holding a license subject to this section shall record all of the information required under this section within 7 days after the occurrence of the transaction or activity  A person holding a license subject to this section shall keep these records for 3 years after the last day of the year in which the record was entered

(b)  In addition to the requirements under par (a) the person holding a license subject to this section shall provide a copy of the record required under this section to the department on a quarterly basis, as determined by the department, if the transaction or activity involved any live wild animal of the family canidae, ursidae, mustelidae, or felidae, or any harmful wild animal

(d)  The department may require, by rule, that submission of the records required under this section to the department be a condition for renewal of any license subject to this section

**(10)** REPORTS  (a)  Each person holding a license subject to this section shall submit an annual summary report for each license year to the department that contains all of the following information for each species of wild animal possessed by the person holding the license:

1  The number of wild animals that the person holding the license possesses on the date of the report

2  The number of wild animals that the person holding the license has purchased or otherwise acquired during the reporting year

3  The number of wild animals that the person holding the license has sold, released into the wild, or otherwise transferred during the reporting year

4  The number of wild animals that have been killed or have escaped or died during the reporting year

(b)  The person holding the license shall submit the annual report under par (a) within 30 days after the last day of the license year that the report covers

**(10m)** PRIOR RECORDS  A person required to keep records or reports under s. 29.853 (3) (b), 1999 stats , 29.855 (3) (c), 1999 stats., s  29.865 (4) (b), 1999 stats., 29.867 (8), 1999 stats , s  29.869 (9), 1999 stats., s  29.871, 1999 stats , or s. 29.877 (6), 1999 stats., shall maintain copies of the records and reports that are in existence on January 1, 2003 for a period of 3 years beginning on January 1, 2003

**(11)** REQUIREMENTS AS TO FORM  The records and reports required under this section shall be in the English language and

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242.

**169.36    CAPTIVE WILDLIFE**

Updated 05–06 Wis. Stats. Database    12
*Not certified under s. 35.18 (2), stats.*

shall be on forms provided by the department or in a format approved by the department.

**History:** 2001 a. 56.

**169.37 Inspections. (1)** DEPARTMENTAL AUTHORITY. For purposes of enforcing this chapter and the rules promulgated under this chapter with respect to a person who is required to have a license or maintain records under this chapter, a conservation warden or representative of the department, upon presenting his or her credentials to that person, may do any of the following:

(a) Enter and inspect any land, vehicle, building, or other structure where live wild animals are possessed or where carcasses of wild animals are possessed.

(b) Inspect any equipment, materials, or other activities related to the wild animals.

(c) Gain access to and inspect any records required to be kept under s. 169.36.

(d) Investigate and inspect any wild animal or any other animal to be introduced, stocked, or released into the wild. Inspection under this paragraph may include the removal of reasonable diagnostic samples from wild animals for biological examination.

**(2)** TIMES FOR INSPECTIONS. An inspection authorized under sub. (1) or (4) may be conducted during any of the following times:

(a) Normal business hours.

(b) During the time that the person who possesses wild animals or carcasses of wild animals is conducting business.

(c) At any time, if the inspection is necessary for public health, safety, or welfare.

**(3)** PROHIBITING INSPECTIONS. No person who has been requested to submit to an inspection under this section or s. 169.38 or an operator of a vehicle for such a person, or employee or person acting on behalf of such a person, may prohibit entry as authorized under this section or s. 169.38 unless a court restrains or enjoins the entry or inspection.

**(4)** INSPECTIONS OF INTRODUCED OR STOCKED ANIMALS. Only persons determined by the department to be experienced in wildlife disease may remove diagnostic samples under sub. (1) (d).

**(5)** TAXIDERMISTS. For an inspection of a taxidermist's place of business, this section does not apply, and the department shall conduct the inspection as authorized under s. 29.506 (7).

**History:** 2001 a. 56.

**169.38 Inspections of items subject to regulation by the department of agriculture, trade and consumer protection. (1)** DEPARTMENTAL AUTHORITY. For purposes of enforcing s. 90.21 and rules promulgated under that section and ch. 29 and rules promulgated under that chapter, with respect to a person who keeps farm–raised deer that are white–tailed deer, and for purposes of enforcing this chapter and ch. 29 and rules promulgated under this chapter and ch. 29, with respect to a person who keeps farm–raised game birds or wild animals under a license issued under s. 95.68, 95.69, or 95.71, a conservation warden or representative of the department, upon presenting his or her credentials to that person, may do any of the following:

(a) Enter and inspect any land, vehicle, building, or other structure where white–tailed deer, farm–raised game birds, or wild animals are possessed or where carcasses of white–tailed deer, farm–raised game birds, or wild animals are possessed.

(b) Inspect any equipment, materials, or other activities related to farm–raised deer that are white–tailed deer, farm–raised game birds, or wild animals.

(c) Gain access to and inspect any records that relate to farm–raised deer that are white–tailed deer and that are required to be kept under s. 93.07 (10), 95.55, or 169.36 (10m) or any rules promulgated under those sections.

(d) Gain access to and inspect any records relating to farm–raised game birds required to be kept under s. 93.07 (10) or 95.57 or any rules promulgated under those sections.

(e) Gain access to and inspect any records relating to wild animals required to be kept under s. 93.07 (10), 95.68, 95.69, 95.71, or 169.36 (10m) or any rules promulgated under those sections.

**(2)** TIMES FOR INSPECTIONS. An inspection authorized under sub. (1) may be conducted during any of the following times:

(a) Normal business hours.

(b) During the time that the person who keeps white–tailed deer, farm–raised game birds, or wild animals is conducting business.

(c) At any time, if the inspection is necessary for public health, safety, or welfare.

(d) At any time, if the inspection is limited to determining whether a fence that is used to contain farm–raised deer that are white–tailed deer complies with the requirements established by rule under s. 90.21 (6).

**History:** 2001 a. 56.

**169.39 Humane care and housing. (1)** COMPLIANCE WITH RULES. No license may be issued under this chapter unless the department determines that the applicant will comply with all of the rules promulgated under subs. (2) and (3).

**(2)** RULES; GENERAL. The department shall promulgate and enforce rules for the housing, care, treatment, enrichment, feeding, and sanitation of wild animals subject to regulation under this chapter to ensure all of the following:

(a) That the wild animals receive humane treatment and enrichment.

(b) That the wild animals are held under sanitary conditions.

(c) That the wild animals receive adequate housing, care, and food.

(d) That the public is protected from injury by the wild animals.

**(3)** RULES; HOUSING. The rules for housing under sub. (2) shall include requirements for the size and location of permanent enclosures and of temporary enclosures at locations other than those where the wild animals are permanently housed. The rules regulating the location of enclosures shall include the distance required between 2 enclosures. The rules for housing shall include specifications for enclosures for each species of harmful wild animal that the department designates under s. 169.11 (1).

**(4)** ORDERS. The department may issue an order requiring any person holding a license under this chapter to comply with the rules promulgated under sub. (2).

**History:** 2001 a. 56.
**Cross Reference:** See also ch. NR 17, Wis. adm. code.

**169.40 Trespassing.** A person who hunts, traps, kills, or takes a wild animal subject to regulation under this chapter on land subject to a license issued under this chapter without the permission of the license holder or of the holder's employee or agent is liable to the license holder for any damage that the person causes to any wild animal that is subject to regulation under this chapter or to any property or land that is subject to the license.

**History:** 2001 a. 56.

**169.42 Taking custody of captive wild animals. (1)** INTAKE OF WILD ANIMALS. A conservation warden may take into custody a wild animal that is subject to regulation under this chapter on behalf of the department if the conservation warden has reasonable grounds to believe that the wild animal is one of the following:

(a) An abandoned or stray captive wild animal.

(b) An unwanted captive wild animal delivered to the conservation warden.

Case 3:08-cr-50013    Document 25-3    Filed 07/30/2008    Page 13 of 32

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242

13   Updated 05–06 Wis. Stats. Database
   *Not certified under s. 35.18 (2), stats.*

CAPTIVE WILDLIFE   169.46

(c)  A wild animal possessed, taken, introduced, stocked, released, exhibited, propagated, rehabilitated, hunted, sold, or purchased in violation of this chapter, any rule promulgated under this chapter, or any ordinance enacted under s. 169.43.

(d)  A captive wild animal that is not confined as required by a quarantine under s. 93.07 (10) or any rule or ordinance relating to the control of any animal disease.

(e)  A captive wild animal that has caused damage to persons or property.

(f)  A participant in an animal fight intentionally instigated by any person.

(g)  A captive wild animal that has been mistreated in violation of this chapter, any rule promulgated under this chapter, or ch. 951.

(h)  A captive wild animal delivered by a veterinarian under s. 173.13 (2).

(i)  A captive wild animal that is dead, dying, or sick and that has been exposed to, or is known to be infected with, a contagious or infectious disease as defined in the rules promulgated by the department of agriculture, trade and consumer protection under s. 95.001 (2) or with a disease or parasite that has pathological significance to humans or to any animals.

(j)  A captive wild animal that has escaped and has not been returned to its owner or another person who is authorized to possess the animal.

(k)  A wild animal that is being housed or held in violation of s. 169.39.

**(2)**  TRANSFER OF WILD ANIMALS.  (a)  A conservation warden shall accept into custody any wild animal that is delivered by a law enforcement officer or humane officer.

(b)  A conservation warden and the department shall comply with the applicable procedures under ss. 29.931, 29.934, and 968.20 as they relate to seized and confiscated wild animals, carcasses, vehicles, boats, or other objects or property.

History: 2001 a. 56.

**169.43   Local ordinances.**  A municipality or county may enact and enforce an ordinance that prohibits the possession or selling of live wild animals.

History: 2001 a. 56.

**169.45   Penalties; revocations.  (1)**  DEFINITION.  In this section, "violation of this chapter" means a violation of this chapter or any rule promulgated under this chapter.

**(2)**  PENALTIES.  For a violation of this chapter, a person shall be subject to a forfeiture of not more than $200, except as follows:

(a)  *Possession.*  For possessing any live wild animal, or a carcass of a wild animal, in violation of this chapter, a person shall forfeit not less than $100 nor more than $500.

(b)  *Sale or purchase.*  For selling or purchasing any live wild animal in violation of this chapter, a person shall be fined not less than $100 nor more than $2,000, or imprisoned for not more than 6 months or both.

(c)  *Possession, sale, release, and descenting of live skunks.*  For possessing, selling, purchasing, descenting, introducing, stocking, or releasing into the wild a live skunk in violation of this chapter, a person shall forfeit not less than $100 nor more than $1,000. This penalty shall apply in lieu of the penalties under pars. (a) and (b).

(d)  *Taking of bear and deer.*  For taking bear or deer from the wild in violation of s. 169.05, or a rule promulgated thereunder, a person shall be fined not less than $1,000 nor more than $2,000 or imprisoned for not more than 6 months or both.

(e)  *Harmful wild animals.*  For a violation of s. 169.11 (1) (b) or (c), a person shall be fined not less than $500 nor more than $5,000 or imprisoned for not more than 6 months or both.

(g)  *Obtaining license during period of revocation.*  For obtaining any license under this chapter during the period of time when that license is revoked or suspended by any court, a person shall

be fined not more than $200 or imprisoned for not more than 90 days or both.

**(3)**  PENALTY; VIOLATION OF ORDER.  Any person who fails to comply with an order issued under s. 169.39 (4) within 10 days after its issuance is subject to a forfeiture of not more than $200.

**(4)**  DIMINISHED PENALTIES.  No penalty imposed under sub. (2) shall be held to be diminished because the violation for which it is imposed falls also within the scope of a more general prohibition.

**(5)**  PENALTIES; REPEATERS.  If a person is convicted of any violation of this chapter and it is alleged in the indictment, information, or complaint, and proved or admitted at trial or ascertained by the court after conviction that the person was previously convicted within a period of 5 years for a violation of this chapter, the person shall be subject to all of the following in addition to the penalty for the current violation:

(a)  The person shall be fined not more than $100 or imprisoned for not more than 6 months or both.

(b)  For violations under sub. (2) (a), (b), (d), and (e), the court shall revoke all of the licenses issued to the person under this chapter, and the department may not issue any license under this chapter to the person for a period of one year after the current conviction.

**(6)**  COURT REVOCATIONS AND SUSPENSIONS.  In addition to or in lieu of any other penalty for violation of this chapter, the court may revoke or suspend any privilege or license under this chapter for a period of up to 3 years.

**(7)**  REVOCATIONS BY THE DEPARTMENT.  In addition to revocations under subs. (5) (b) and (6), the department may revoke any license to which any of the following applies:

(a)  The department determines that the license was fraudulently procured, erroneously issued, or otherwise prohibited by law.

(b)  The department determines that the person holding the license is not in compliance with this chapter or with a rule promulgated under this chapter.

**(8)**  PROHIBITIONS DURING PERIODS OF SUSPENSION OR REVOCATION.  (a)  Any person who has had a license or privilege under this chapter revoked or suspended and who engages in the activity authorized by the license or in the privilege during the period of revocation or suspension is subject to the following penalties, in addition to any other penalty imposed for failure to have a license:

1.  For the first conviction, the person shall forfeit not less than $300 nor more than $500.

2.  If the number of convictions in a 5−year period equals 2 or more, the person shall be fined not less than $500 nor more than $1,000.

(b)  The 5−year period under par. (a) 2. shall be measured from the dates of the violations that resulted in the convictions.

**(9)**  PARTIES TO A VIOLATION.  (a)  Whoever is concerned in the commission of a violation of this chapter is a principal and may be charged with and convicted of the violation of this chapter although he or she did not directly commit it and although the person who directly committed it has not been convicted of the violation of this chapter.

(b)  A person is concerned in the commission of the violation of this chapter if the person does any of the following:

1.  Directly commits the violation of this chapter.

2.  Aids and abets the commission of the violation of this chapter.

3.  Is a party to a conspiracy with another to commit the violation of this chapter or advises, hires, or counsels or otherwise procures another to commit it.

History: 2001 a. 56; 105.

**169.46   Natural resources surcharges and restitution surcharges.  (1)**  NATURAL RESOURCES SURCHARGES.  (a)  If a court imposes a fine or forfeiture for a violation of this chapter or

Electronic reproduction of 2005–06 Wis Stats database, updated and current through June 30, 2008 and 2007 Wis Act 242.

**169.46     CAPTIVE WILDLIFE**

Updated 05–06 Wis. Stats. Database     14
*Not certified under s. 35.18 (2), stats.*

a rule promulgated under this chapter, the court shall impose a natural resources surcharge under ch 814 equal to 75% of the amount of the fine or forfeiture

(b) If a fine or forfeiture is suspended in whole or in part, the natural resources surcharge shall be reduced in proportion to the suspension

(c) If any deposit is made for an offense to which this subsection applies, the person making the deposit shall also deposit a sufficient amount to include the natural resources surcharge under this subsection. If the deposit is forfeited, the amount of the natural resources surcharge shall be transmitted to the secretary of administration under par (d) If the deposit is returned, the natural resources surcharge shall also be returned

(d) The clerk of the court shall collect and transmit to the county treasurer the natural resources surcharge and other amounts required under s 59.40 (2) (m) The county treasurer shall then make payment to the secretary of administration as provided in s 59.25 (3) (f) 2 The secretary of administration shall deposit the amount of the natural resources surcharge in the conservation fund

(e) All moneys collected from natural resources surcharges shall be deposited in the conservation fund and credited to the appropriation under s 20.370 (3) (mu).

**(2)** NATURAL RESOURCES RESTITUTION SURCHARGES (a) If a court imposes a fine or forfeiture for a violation of this chapter for failure to obtain a license required under this chapter the court shall impose a natural resources restitution surcharge under ch. 814 equal to the amount of the fee for the license that was required and should have been obtained

(b) If a fine or forfeiture is suspended in whole or in part, the natural resources restitution surcharge shall be reduced in proportion to the suspension unless the court directs otherwise

(c) If any deposit is made for an offense to which this subsection applies, the person making the deposit shall also deposit a sufficient amount to include the natural resources restitution surcharge under this subsection If the deposit is forfeited, the amount of the natural resources restitution surcharge shall be transmitted to the secretary of administration under par (d) If the deposit is returned, the natural resources restitution surcharge shall also be returned

(d) The clerk of the court shall collect and transmit to the county treasurer the natural resources restitution surcharge and other amounts required under s 59.40 (2) (m) The county treasurer shall then make payment to the secretary of administration as provided in s 59.25 (3) (f) 2 The secretary of administration shall deposit the amount of the natural resources restitution surcharge in the conservation fund

(e) All moneys collected from natural resources restitution surcharges shall be deposited in the conservation fund and credited to the appropriation account under s 20.370 (3) (mu)

**History:** 2001 a 56; 2003 a 33 139 326

Case 3:08-cr-50013    Document 25-3    Filed 07/30/2008    Page 15 of 32

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242

**1    Updated 05–06 Wis. Stats. Database**
*Not certified under s. 35.18 (2), stats.*

ANIMAL HEALTH    95.10

## CHAPTER 95

## ANIMAL HEALTH

95.001   Definitions.
95.01    Administration of drugs to horses
95.10    Feeding garbage to swine
95.11    Livestock branding
95.12    False pedigree
95.13    Misrepresenting breed of domestic animal
95.14    Corporations to improve livestock
95.17    Animal diseases; cooperation with United States
95.18    Animals in transit
95.19    Diseased animals
95.195   Diseases; implied warranty in sale of animals.
95.197   Financial assistance for paratuberculosis testing
95.20    Import and movement of animals
95.21    Rabies control program.
95.22    Reporting animal diseases.
95.23    Disease investigation and enforcement
95.232   Confidentiality of paratuberculosis records
95.235   Sale of certain painted utensils.
95.24    Living vaccine, hog cholera, anthrax, swine erysipelas
95.25    Tuberculosis control program
95.26    Brucellosis control program.
95.27    Pseudorabies control program; indemnities.
95.30    Disposal of animals infected with tuberculosis
95.31    Condemnation of diseased animals
95.32    Appraised value
95.33    Tubercular animals that do not react.
95.34    Slaughter on premises
95.35    Scrapie eradication; indemnities

95.36    Indemnity not allowed
95.37    Claims for indemnity
95.38    Altering records; tampering with ear tags
95.39    Biological products
95.40    Neutralizing tuberculosis test
95.41    Tuberculin; ear tags.
95.42    Revocation of permit to test
95.43    Application of brucellosis test
95.45    Certificates of veterinary inspection; tests for interstate shipment
95.46    Brucellosis vaccination; official vaccinates
95.48    Brucellosis indemnity restrictions
95.49    Movement; sale.
95.50    Disposition of carcasses.
95.51    Livestock premises registration
95.55    Farm–raised deer
95.57    Poultry and farm–raised game birds; national poultry improvement program.
95.60    Importing fish; fish farms.
95.65    Intrastate transportation of white–tailed deer
95.67    Proper use of animal care and disease control products
95.68    Animal markets
95.69    Animal dealers.
95.71    Animal truckers
95.715   Feed lots and veal lots
95.72    Transportation, processing and disposal of dead animals
95.80    Humane slaughtering
95.99    Penalties

Cross–reference: See definitions in s. 93.01

**95.001   Definitions. (1)** As used in this chapter:

(ad) "Domestic animal" means any of the following:

1   An animal that is a member of a species that has been domesticated by humans

2   A farm–raised deer, farm–raised game bird, or farm–raised fish

3   An animal that is listed as a domestic animal by rule by the department

(ag) "Farm–raised deer" means a cervid that is kept in captivity or a cervid that is present in the wild and that has an ear tag or other mark identifying it as being raised on a farm

(ah) "Farm–raised fish" means any fish egg that is present on a fish farm or any fish that is reared on a fish farm

(ai) "Farm–raised game bird" has the meaning given in s. 169.01 (12m)

(aj) "Fish farm" means a facility at which a person hatches fish eggs or rears fish for the purpose of introduction into the waters of the state, human or animal consumption, permitting fishing, use as bait or fertilizer or any other purpose specified by the department by rule or for sale to another person to rear for one of those purposes

(am) "Net salvage value" means the salvage value of an animal plus any federal indemnity paid for the animal

(b) "Official vaccinate" means any female bovine animal officially reported to the department as having been vaccinated by an approved veterinarian at an age and in accordance with the procedures the department prescribes and which was properly tattooed at the time of vaccination as required by law or rules of the department

(c) "Paratuberculosis" means the disease of domestic ruminants, commonly known as Johne's disease, that is caused by mycobacterium paratuberculosis

**(2)** The department shall promulgate rules defining the term "contagious or infectious diseases" as used in this chapter

History: 1979 c. 129 s. 11; 1981 c. 20; 1983 a. 189; 1989 a. 277; 1995 a. 79 450; 2001 a. 56 ss. 119 to 122, 154

**95.01   Administration of drugs to horses. (1)** No person may administer a drug to a horse, either internally or externally, for the purpose of altering the performance of the horse in a horse pulling contest.

**(2)** Persons in charge of a horse pulling contest may require as a condition of participation in the contest that the exhibitor submit the exhibitor's horse for examination by a licensed veterinarian to determine the presence of drugs under sub. (1)

History: 1973 c. 191; 1993 a. 492

**95.10   Feeding garbage to swine. (1)** Beginning July 1, 1968, it is unlawful for any person to feed public or commercial garbage to swine, or to deposit or receive such garbage on any premises where swine are kept, and no swine having fed on such garbage may be sold or removed from the premises

**(3)** "Public or commercial garbage" as used in this section means putrescible animal or vegetable wastes containing animal parts resulting from the handling, preparation, processing, cooking or consumption of food and which is collected from any source, and includes dead animals as defined in s. 95.72 (1) (c). The term does not apply to private household wastes not removed from the premises where produced

**(4)** No indemnity shall be paid to the owner of any swine condemned or destroyed because of any infectious or communicable disease if such swine were located, at any time, on any premises receiving public or commercial garbage. No person shall fail or refuse to conform with the department order specifying the manner of disposal of such infected swine. The definition of "communicable disease" in s. 990.01 (5g) does not apply to this subsection

**(5)** No person shall remove or permit the removal of any swine from any premises where public or commercial garbage is

Case 3:08-cr-50013   Document 25-3   Filed 07/30/2008   Page 16 of 32

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242

95.10     ANIMAL HEALTH

Updated 05–06 Wis. Stats. Database     2
Not certified under s. 35.18 (2), stats.

received, except to federally inspected slaughtering establishments and other slaughtering establishments approved by the state to receive diseased animals, and only if such swine are accompanied by a certificate of veterinary inspection.

**(6)** No person shall bring into this state any raw public or commercial garbage for feeding purposes or for deposit on any premises where swine are kept. Any garbage from vehicles serving food to passengers, if deposited in this state, shall be incinerated.

History: 1981 c. 66, 291; 1981 s. 391 s. 210; 2001 a. 56.

**95.11   Livestock branding. (1)** DEFINITIONS. As used in this section:

(a) "Brand" means an identification mark which is burned, tattooed or otherwise permanently marked onto livestock in accordance with department rules. A brand shall consist of a symbol, letter, or combinations of symbols, letters or numbers in a specific location but does not include ear notches or similar disfigurement, a mark which is solely a numeral or a mark required by law for official identification in disease control programs.

(b) "Livestock" means cattle and horses.

**(2)** ADOPTION AND USE. Any person may adopt an exclusive brand by recording such brand under sub. (3).

**(3)** RECORDING; FEES. (a) Any person desiring to adopt any brand, not the recorded brand of another person, shall forward to the department a facsimile of the desired brand, together with a written application and a recording fee. Upon receipt the department shall record the brand, unless the brand is of record as that of some other person or conflicts with the recorded brand of any person. If the brand does not qualify for recording, or there is a conflict between applications received on the same date, the facsimile and fee shall be returned to the applicant. If the brand is accepted, the ownership thereof shall vest from the date of filing.

(b) In 1984 and every 10th year thereafter, every owner of a brand shall rerecord the brand according to department rules. At the expiration of each recording period the department shall notify every owner of a brand at the owner's address of record that the brand has not been rerecorded and that the brand must be rerecorded within 90 days. Failure to rerecord the brand is an abandonment of the brand, and it can be recorded by another applicant thereafter.

(c) Any recorded brand is subject to transfer as personal property. Instruments evidencing transfer of a brand shall be recorded by the department upon payment of a transfer fee.

(d) The fee for initial recording is $20, and for rerecording and transfer is $10. When any brand is recorded, the owner is entitled to one certified copy of the recorded brand. Additional certified copies may be obtained upon the payment of $2 for each copy.

**(4)** SUIT BY OWNER. An owner of a recorded brand may sue for injunctive relief and damages arising from an unauthorized use of the owner's brand on livestock and a judgment in the owner's favor may include costs and reasonable attorney fees.

History: 1973 c. 239; 1993 a. 190, 492; 1995 a. 225.

**95.12   False pedigree.** No person with intent to defraud shall obtain from any corporation, association, society or company organized for the purpose of improving breeds of domestic animals, a false certificate of registration of any such domestic animal in the herd or other register of any such corporation, association, society or company, or the transfer of any such certificate, or shall, with intent to defraud, give a false pedigree of any such domestic animal.

History: 2001 a. 56.

**95.13   Misrepresenting breed of domestic animal.** No person shall sell or barter or cause to be sold or bartered any domestic animal and represent, or cause to be represented that such domestic animal is a pure bred domestic animal, when in fact such domestic animal is not registered, or entitled to registry, in any pure breed registry maintained for such domestic animals; nor shall any person knowingly utter, pass or deliver to any person as

true, any false, or altered pedigree; nor shall any person refuse to deliver proper certificate of registry for any domestic animal sold or transferred by the person, having represented at the time of sale or transfer, and as an inducement thereto, that such domestic animal was registered and that the person possessed and would deliver a certificate of registry as evidence thereof, or that such domestic animal was entitled to registry and that the person would secure such certificate and deliver the same.

History: 1993 a. 192; 2001 a. 56.

**95.14   Corporations to improve livestock. (1)** Three or more adult persons of this state may form a corporation, without capital stock, to be managed and directed as herein provided, for the purpose of improving the breeding of livestock by such means and methods as may be deemed most advisable, and to receive and manage contributions therefor made from time to time by way of gifts, deed, devise, bequest or otherwise, and to expend the income thereof for the purpose of the corporation. The work of any such corporation shall be entirely educational and designed by practical work with the breeder upon the farm to result in a better understanding and practical application of the scientific and technical principles taught in agricultural colleges and experiment stations, so as to effect the greatest possible coordination between the science and the art or practice of breeding, but such work shall not be merged with the work of any educational institution. Any corporation organized hereunder shall have authority to pay all necessary expenses properly incurred in carrying out the purposes of the corporation, including compensation to employees and to directors for services actually rendered in conducting the affairs of the corporation, but no pecuniary profit shall ever be paid to any incorporator or director.

**(2)** Any corporation organized under this section shall be managed and directed by a self–perpetuating board of directors of 5 members, consisting of the dean of the College of Agricultural and Life Sciences of the University of Wisconsin–Madison, who shall be permanent chairperson of the board, and 4 others to be appointed in the first instance by the incorporators; at least 3 of the 5 members shall always be representative livestock breeders of the state. If the dean of the College of Agricultural and Life Sciences fails to act as a member of the board by reason of refusal, disability, or vacancy in the chair of the dean, the remaining members of the board shall appoint a representative livestock breeder to act in his or her place on the board until the time as such refusal, disability, or vacancy in the chair ceases to exist. Whenever the dean of the College of Agricultural and Life Sciences becomes a member of the board of directors after any such interim, the dean shall automatically become chairperson of the board.

**(3)** The term of office of all members of the board, except the permanent chairperson, shall expire one each year by lot. The remaining members shall elect a member to succeed the person whose term shall have thus expired. Vacancies occurring during the year may be filled at once by the remaining members.

**(4)** Any such corporation shall have the general powers of other corporations and its articles of organization shall conform to s. 181.0202 with such modifications as this section requires.

History: 1973 c. 335 s. 12; 1979 c. 32; 1993 a. 184; 1997 a. 79; 2001 a. 103.

**95.17   Animal diseases; cooperation with United States.** Whenever it is determined by the department and the state constitutional officers that it is necessary to combat dangerous diseases in animals in this state in cooperation with the U.S. department of agriculture and to destroy animals affected with or which have been exposed to any such disease or to destroy property in the disinfection of the premises or to do any other act or incur any other expense reasonably necessary in suppressing or combating such disease, the department may accept, on behalf of the state, the rules and regulations prepared by the U.S. department of agriculture under authority of an act of congress relating to the suppression of any such disease and cooperate with the authorities of the U.S. in the enforcement of their provisions; or it may follow such procedure as to inspection, vaccination, con-

Case 3:08-cr-50013   Document 25-3   Filed 07/30/2008   Page 17 of 32

Electronic reproduction of 2005–06 Wis Stats database, updated and current through June 30, 2008 and 2007 Wis Act 242

3   Updated 05–06 Wis. Stats. Database
   *Not certified under s. 35.18 (2), stats.*

ANIMAL HEALTH       95 21

demnation, appraisal, disinfection and other acts reasonably necessary in the suppression of such diseases as may be agreed upon and adopted by the department and the state constitutional officers with the representatives of the U.S. department of agriculture. Within the amount which may, subsequent to March 23, 1915, be appropriated for this purpose, the state shall pay such proportion of the expense incurred in suppressing or combating any such disease and in compensating owners of animals slaughtered under this section as shall be determined by and mutually agreed upon with the U.S. department of agriculture.

**History:** 1975 c. 308; 2001 a. 56

**95 18   Animals in transit.** Animals in transit in the state are subject to all the provisions of law relating to contagious or infectious diseases of animals, and to the regulations and orders of the department.

**Cross Reference:** See also chs. ATCP 10 and 12, Wis adm code.

**95 19   Diseased animals. (1)** DEFINITIONS. In this section, "knowingly" means that the actor believes that the specified fact exists.

**(2)** PROHIBITIONS. No person may do any of the following:

(a)  Import, sell, transport or exhibit an animal that is exposed to a contagious or infectious disease, except as provided in sub. (3) (a).

(b)  Import, sell, transport or exhibit an animal that is infected with a contagious or infectious disease, except as provided in sub. (3) (a).

(c)  Knowingly conceal that an animal that is imported, sold, transported or exhibited has been exposed to or infected with a contagious or infectious disease.

(d)  Knowingly misrepresent that an animal has not been exposed to or infected with a contagious or infectious disease.

(e)  Knowingly permit an animal that has been exposed to or infected with a contagious or infectious disease to commingle with other animals under conditions that may cause the disease to spread to an animal owned by another person.

**(3)** RULE MAKING. The department may promulgate rules:

(a)  Authorizing the transport under a department permit of an animal exposed to or infected with a contagious or infectious disease for slaughter or other purposes prescribed by the department.

(b)  Specifying those contagious or infectious diseases to which the prohibitions of sub. (2), and the rules promulgated under par. (a), apply.

**(4)** DAMAGES. A person who violates this section is liable to any person injured for damages sustained as a result of the violation.

**History:** 1989 a. 217

**Cross Reference:** See also chs. ATCP 10 and 12, Wis. adm. code.

Use of the phrase "any person injured" does not show that the legislature intended to allow recovery under this section only when a violation of this section causes personal injuries, as opposed to economic losses. Wilson v. Tuxen 2008 WI App 94 ___ Wis. 2d ___, ___ N W 2d ___, 07–1964.

This section specifically gives the department the authority to specify which contagious or infectious diseases can create liability under sub. (2) (a) to (e), which it has done. The two claims found in sub. (2) (a) and (b) are strict liability statutes that are restricted by rule to specified diseases. Sub. (2) (c) to (e) prohibit 3 different kinds of knowing conduct. By rule, liability under sub. (2) (c) to (e) may be based on any disease that is either contagious or infectious. Wilson v. Tuxen 2008 WI App 94 ___ Wis. 2d ___, ___ N W 2d ___, 07–1964

**95 195   Diseases; implied warranty in sale of animals. (1)** DEFINITION. In this section, "covered disease" means a disease that the department specifies under sub. (4) (a) is covered by this section.

**(2)** WARRANTY. Except as provided in sub. (3), in every contract for the sale of an animal of a type specified by the department under sub. (4) (b), there is an implied warranty that the animal is not infected with a covered disease unless the seller discloses to the buyer in writing, prior to sale, all of the following:

(a)  The management classification of the animal's herd with respect to the covered disease.

(b)  If the animal is a reactor with respect to the covered disease, that the animal is a reactor.

**(3)** EXCEPTION. The warranty under sub. (2) does not apply to an animal sold directly to slaughter.

**(4)** RULES. The department shall promulgate rules that do all of the following:

(a)  Specify covered diseases.

(b)  Specify types of animals to which this section applies.

(c)  Prescribe a system for determining management classifications of herds with respect to covered diseases.

**History:** 1989 a. 277; 1999 a. 160.

**Cross Reference:** See also chs. ATCP 10 and 12, Wis. adm. code.

The legislature intended this section as an implied warranty in addition to the implied warranties found in ss. 402.314 and 402.315, not as a stand-alone provision. As a result, the provisions of ch. 402, including the notice of breach requirement in s. 402.607 (3) (a), apply to a claim for breach of the warranty under this section. Wilson v. Tuxen 2008 WI App 94 ___ Wis. 2d ___, ___ N W 2d ___, 07–1964.

**95 197   Financial assistance for paratuberculosis testing. (1)** The department shall provide financial assistance to owners of livestock herds for conducting testing for paratuberculosis.

**(2)** The department shall promulgate rules for providing financial assistance under sub. (1).

**History:** 1999 a. 9.

**Cross Reference:** See also ch. ATCP 10 Wis. adm. code.

**95 20   Import and movement of animals.** The department may prohibit or regulate the importing of animals into this state or the movement of animals within this state if the department has reasonable grounds to believe that regulation or prohibition is necessary to prevent the introduction or spread of a disease in this state that threatens the health of animals or of humans.

**History:** 1981 c. 291; 1981 c. 391 s. 210; 2001 a. 56.

**Cross Reference:** See also chs. ATCP 10 and 12 Wis. adm. code.

**95 21   Rabies control program. (1)** DEFINITIONS. As used in this section:

(a)  "Humane officer" means an officer appointed under s. 173.03.

(am)  "Isolation facility" means a humane society shelter, veterinary hospital, municipal pound or other place specified by an officer which is equipped with a pen or cage which isolates the animal from contact with other animals.

(b)  "Officer" means a peace officer, local health officer, as defined in s. 250.01 (5), humane officer, warden, an employee designated by the department or other person designated by the governing body of the county, city, village or town.

(c)  "Owner" includes a person who owns, harbors, keeps or controls an animal.

(d)  "Peace officer" has the meaning designated under s. 939.22 (22).

(e)  "Veterinarian" has the meaning designated under s. 453.02 (7).

(em)  "Veterinary technician" has the meaning designated under s. 453.02 (12).

(f)  "Warden" has the meaning designated under s. 24.01 (11).

**(2)** RABIES VACCINATION REQUIRED FOR DOGS. (a) *Requirement for vaccination.* Except as provided in s. 174.054 or sub. (9) (d), the owner of a dog shall have the dog vaccinated against rabies by a veterinarian or, if a veterinarian is physically present at the location the vaccine is administered, by a veterinary technician, pursuant to s. 453.05 (2) (d), at no later than 5 months of age and revaccinated within one year after the initial vaccination. If the owner obtains the dog or brings the dog into this state after the dog has reached 5 months of age, the owner shall have the dog vaccinated against rabies within 30 days after the dog is obtained or brought into the state unless the dog has been vaccinated as evidenced by a current certificate of rabies vaccination from this state or another state. The owner of a dog shall have the dog revaccinated against rabies by a veterinarian or, if a veterinarian is physically present at the location the vaccine is administered, by a vet-

Case 3:08-cr-50013   Document 25-3   Filed 07/30/2008   Page 18 of 32

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242.

**95.21      ANIMAL HEALTH**

Updated 05–06 Wis. Stats. Database      4
*Not certified under s. 35.18 (2), stats.*

erinary technician, pursuant to s. 453.05 (2) (d), before the date that the immunization expires as stated on the certificate of vaccination or, if no date is specified, within 3 years after the previous vaccination.

(b) *Issuance of certificate of rabies vaccination.* The person who administers the vaccine under par. (a) shall complete and issue to the owner a certificate of rabies vaccination bearing a serial number and in the form approved by the department stating the owner's name and address, the name, sex, spayed or unspayed, neutered or unneutered, breed and color of the dog, the date of the vaccination, the type of rabies vaccine administered and the manufacturer's serial number, the date that the immunization expires as specified for that type of vaccine by the center for disease control of the U.S. department of health and human services and the city, village or town where the dog is required to be licensed.

(c) *Copies of certificate.* The veterinarian shall keep a copy of each certificate of rabies vaccination in a file maintained for this purpose until the date that the immunization expires or until the dog is revaccinated whichever occurs first.

(e) *Rabies vaccination tag.* After issuing the certificate of rabies vaccination, the person who administers the vaccine under par. (a) shall deliver to the owner a rabies vaccination tag of durable material bearing the same serial number as the certificate, the year the vaccination was given and the name, address and telephone number of the supervising veterinarian.

(f) *Tag to be attached.* The owner shall attach the rabies vaccination tag or a substitute tag to a collar and a collar with the tag attached shall be kept on the dog at all times but this requirement does not apply to a dog during competition or training, to a dog while hunting, to a dog securely confined indoors, to a dog securely confined in a fenced area or to a dog while actively involved in herding or controlling livestock if the dog is under the control of its owner. The substitute tag shall be of a durable material and contain the same information as the rabies vaccination tag. The requirements of this paragraph do not apply to a dog which is not required to be vaccinated under sub. (2) (a).

(g) *Duplicate tag.* The person who administers the vaccine under par. (a) may furnish a new rabies vaccination tag with a new serial number to an owner in place of the original tag upon presentation of the certificate of rabies vaccination. The person who administers the vaccine under par. (a) shall then indicate the new tag number on the certificate and keep a record in the file.

(h) *Cost.* The owner shall pay the cost of the rabies vaccination and the cost associated with the issuance of a certificate of rabies vaccination and the delivery of a rabies vaccination tag.

**(3)** DISTRICT QUARANTINE. (a) *Dogs confined.* If a district is quarantined for rabies, all dogs within the district shall be kept securely confined, tied, leashed or muzzled. Any dog not confined, tied, leashed or muzzled is declared a public nuisance and may be impounded. All officers shall cooperate in the enforcement of the quarantine. The clerk of every town, city or village wholly or partly within the quarantine district shall promptly post in at least 3 public places in the town, city or village, notices of quarantine furnished by the department for posting.

(b) *Exemption of vaccinated dog from district quarantine.* A dog which is immunized currently against rabies as evidenced by a valid certificate of rabies vaccination or other evidence is exempt from the district quarantine provisions of par. (a) if a rabies vaccination tag or substitute tag is attached to the dog's collar.

**(4)** QUARANTINE OR SACRIFICE OF AN ANIMAL SUSPECTED OF BITING A PERSON OR BEING INFECTED OR EXPOSED TO RABIES. (a) *Quarantine or sacrifice of dog or cat.* Except as provided in par. (d), an officer shall order a dog or cat quarantined if the officer has reason to believe that the animal bit a person, is infected with rabies or has been in contact with a rabid animal. If a quarantine cannot be imposed because the dog or cat cannot be captured, the officer may kill the animal. The officer may kill a dog or cat only

as a last resort or if the owner agrees. The officer shall attempt to kill the animal in a humane manner and in a manner which avoids damage to the animal's head.

(b) *Sacrifice of other animals.* An officer may order killed or may kill an animal other than a dog or cat if the officer has reason to believe that the animal bit a person or is infected with rabies. Except as provided in s. 95.36, if an animal of a species raised primarily to produce food for human consumption is killed under this paragraph, the owner is eligible for an indemnity payment in an amount equal to the indemnity provided under s. 95.31 (3). If the decision is made by an employee of the department, the indemnity shall be paid from the appropriation under s. 20.115 (2) (b). If the decision is made by another officer, the indemnity shall be paid from the dog license fund.

(c) *Sacrifice of a dog or cat.* An officer may order killed or may kill a dog or cat if the owner of the dog or cat violates sub. (5) (a), (b) or (c).

(d) *Exception for law enforcement dogs.* 1. In this paragraph, "law enforcement agency" has the meaning given in s. 165.83 (1) (b).

2. The quarantine requirement in par. (a) does not apply to a dog that is used by a law enforcement agency and that bites a person while the dog is performing law enforcement functions if the dog is immunized against rabies as evidenced by a valid certificate of rabies vaccination or other evidence. The law enforcement agency shall have the dog examined by a veterinarian on the day of the incident or the next day, on the 10th day after the incident, and on one intervening day. The law enforcement agency shall ensure that the dog is confined when not performing law enforcement functions until the 3rd examination has been performed.

**(5)** QUARANTINE OF DOG OR CAT. (a) *Delivery to isolation facility or quarantine on premises of owner.* An officer who orders a dog or cat to be quarantined shall deliver the animal or shall order the animal delivered to an isolation facility as soon as possible but no later than 24 hours after the original order is issued or the officer may order the animal to be quarantined on the premises of the owner if the animal is immunized currently against rabies as evidenced by a valid certificate of rabies vaccination or other evidence. If an officer delivers a dog or orders a dog to be delivered to an isolation facility and the dog is exempt from the requirement to be vaccinated against rabies under sub. (9) (d), the owner of the dog may choose an isolation facility that is a veterinary hospital.

(b) *Health risk to humans.* If a dog or cat is ordered to be quarantined because there is reason to believe that the animal bit a person, the custodian of an isolation facility or the owner shall keep the animal under strict isolation under the supervision of a veterinarian for at least 10 days after the incident occurred. In this paragraph, "supervision of a veterinarian" includes, at a minimum, examination of the animal on the first day of isolation, on the last day of isolation and on one intervening day. If the observation period is not extended and if the veterinarian certifies that the dog or cat has not exhibited any signs of rabies, the animal may be released from quarantine at the end of the observation period.

(c) *Risk to animal health.* 1. If a dog or cat is ordered to be quarantined because there is reason to believe that the animal has been exposed to a rabid animal and if the dog or cat is not currently immunized against rabies, the custodian of an isolation facility or the owner shall keep the animal leashed or confined for 180 days. The owner shall have the animal vaccinated against rabies between 155 and 165 days after the exposure to a rabid animal, unless the animal is exempt from the requirement to be vaccinated against rabies under sub. (9) (d).

2. If a dog or cat is ordered to be quarantined because there is reason to believe that the animal has been exposed to a rabid animal but if the dog or cat is immunized against rabies, the custodian of an isolation facility or the owner shall keep the animal leashed or confined for 60 days. The owner shall have the animal revaccinated against rabies as soon as possible after exposure to a rabid animal.

5    Updated 05–06 Wis. Stats. Database
*Not certified under s. 35.18 (2), stats.*

ANIMAL HEALTH      95.23

(d) *Sacrifice of a dog or cat exhibiting symptoms of rabies* If a veterinarian determines that a dog or cat exhibits symptoms of rabies during the original or extended observation period, the veterinarian shall notify the owner and the officer who ordered the animal quarantined and the officer or veterinarian shall kill the animal in a humane manner and in a manner which avoids damage to the animal's head If the dog or cat is suspected to have bitten a person, the veterinarian shall notify the person or the person's physician

**(6)** DELIVERY OF CARCASS; PREPARATION; EXAMINATION BY LABORATORY OF HYGIENE. An officer who kills an animal shall deliver the carcass to a veterinarian or local health department, as defined in s 250 01 (4) The veterinarian or local health department shall prepare the carcass properly prepare and package the head of the animal in a manner to minimize deterioration, arrange for delivery by the most expeditious means feasible of the head of the animal to the state laboratory of hygiene and dispose of or arrange for the disposal of the remainder of the carcass in a manner which minimizes the risk of exposure to any rabies virus The laboratory of hygiene shall examine the specimen and determine if the animal was infected with rabies The state laboratory of hygiene shall notify the department, the veterinarian or local health department which prepared the carcass and, if the animal is suspected to have bitten a person, that person or that person's physician

**(7)** COOPERATION OF VETERINARIAN Any practicing veterinarian who is requested to be involved in the rabies control program by an officer is encouraged to cooperate in a professional capacity with the department, the laboratory of hygiene, the local health department, as defined in s 250 01 (4), the officer involved and, if the animal is suspected to have bitten a person, the person's physician

**(8)** RESPONSIBILITY FOR QUARANTINE AND LABORATORY EXPENSES. The owner of an animal is responsible for any expenses incurred in connection with keeping the animal in an isolation facility, supervision and examination of the animal by a veterinarian preparation of the carcass for laboratory examination and the fee for the laboratory examination If the owner is unknown, the county is responsible for these expenses

**(9)** LOCAL PROGRAMS (a) This section does not prohibit or restrict a county, city, village or town from imposing a rabies control program with more restrictive provisions.

(b) This section does not prohibit a county, city village or town from imposing its own rabies control program if the department approves the program The department may not approve a program unless it provides for at least 2 examinations of the quarantined animal by a veterinarian or a trained individual with veterinarian involvement during a 10-day isolation period. The department shall promulgate rules establishing criteria for the approval of programs under this paragraph and defining ' trained individual" and "veterinarian involvement"

(c) The department may provide training to persons who administer local rabies control programs or who conduct rabies examinations under those programs. The department may charge fees to cover the cost of training The fees collected under this paragraph shall be credited to the appropriation under s 20 115 (2) (j)

(d) A city, village, or town may exempt the owner of a dog from the requirement to have the dog vaccinated against rabies for a year based on a letter from a veterinarian stating that vaccination is inadvisable because of a reaction to a previous vaccination, a physical condition, or a regimen of therapy that the dog is undergoing The city, village, or town shall require the owner to provide a new letter for each year in which the owner seeks an exemption under this paragraph

**(10)** PENALTIES (a) *Failure to obtain rabies vaccination* An owner who fails to have a dog vaccinated against rabies as required under sub (2) (a) may be required to forfeit not less than $50 nor more than $100

(b) *Refusal to comply with order or quarantine* An owner who refuses to comply with an order issued under this section to deliver an animal to an officer, isolation facility or veterinarian or who does not comply with the conditions of an order that an animal be quarantined shall be fined not less than $100 nor more than $1,000 or imprisoned not more than 60 days or both

(c) *Other violation* A person who violates any provision of this section not specified under pars (a) and (b) may be required to forfeit up to $50

History: 1979 c. 129, 289 357; 1981 c. 285; 1981 c. 314 s. 144; 1983 a 189 s. 329 (18); 1983 a 151; 1985 a 135, 134; 1993 a 27; 1995 a 450; 1997 a 192 217; 1999 a. 9; 2005 a 236, 240; 2007 a 37, 97
Cross Reference: See also chs ATCP 10 and 12 and s ATCP 13 02 Wis adm code

**95.22 Reporting animal diseases (1)** A veterinarian and the department of natural resources shall report to the department of agriculture, trade and consumer protection any disease specified in the rules promulgated under sub (2) (a) each time a veterinarian or the department of natural resources discovers that such a disease is present in any animal in this state

**(2)** The department shall promulgate rules that specify all of the following:

(a) The diseases that a veterinarian or the department of natural resources must report under this section

(b) For each disease specified in par. (a), the deadline for reporting the disease after the date of its discovery

(c) The information that a veterinarian or the department of natural resources must include in his or her report

(d) Procedures to be used in preparing and submitting the report

**(3)** The department of agriculture, trade and consumer protection shall notify the department of natural resources of the contents of any report submitted under sub (1) by a veterinarian if the department of agriculture, trade and consumer protection determines that the disease that is the subject of the report may present a threat to any wild animals present in this state

**(4)** The department shall provide the reports of any communicable diseases under sub (1) to the department of health services and to the local health officer, as defined in s 250 01 (5), for the area in which the animal is located.

History: 1981 c. 291; 1981 c 391 s. 210; 1993 a 492; 1999 a 83; 2001 a 56 109; 2003 a. 321; 2005 a. 198; 2007 a 20 s. 9121 (6) (a).
Cross Reference: See also chs ATCP 10 and 12 Wis adm code

**95.23 Disease investigation and enforcement (1)** Authorized inspectors and agents of the department may enter at reasonable times any premises, building or place to investigate the existence of animal diseases or to investigate violations of or otherwise enforce the laws relating to animal health Any animals or materials suspected of being infected may be examined or tested No person shall obstruct or interfere with such investigation or enforcement work, or attempt to do so, in any manner, by threat or otherwise

**(1m)** (a) The department may conduct surveillance testing to determine whether animals have chronic wasting disease, if the department has reason to believe that the animals have been exposed to chronic wasting disease

(b) The department may indemnify the owner of an animal that must be killed in order to conduct testing under par (a) in an amount equal to two–thirds of the difference between the net salvage value and the appraised value of the animal but not more than $1,500 for one animal, except as provided in s. 95.31 (3m) The department may pay an indemnity under this paragraph from the appropriation account under s. 20.115 (2) (b) only if funds received by the department under s 20 115 (2) (m) and (8) (ks) for the payment of indemnities are insufficient to pay the indemnity

**(2)** Upon request of an authorized inspector or agent of the department, sheriffs and police officers shall assist in the enforcement of the laws relating to animal health

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242.

**95.23     ANIMAL HEALTH**

Updated 05–06 Wis. Stats. Database     6
*Not certified under s. 35.18 (2), stats.*

(3) Upon reasonable notice from the department, owners or persons in charge of animals shall cause them to be restrained or confined so that they may be identified, examined and tested or otherwise treated or disposed of as authorized by law.

(4) When any animals or materials infected or suspected of being infected have been quarantined, no person shall remove them from the premises, or otherwise fail to comply with the terms of the quarantine, except upon written permit from the department.

History: 2001 a. 108; 2005 a. 25.

Cross Reference: See also chs. ATCP 10 and 12. Wis. adm. code.

**95.232   Confidentiality of paratuberculosis records.** Any information kept by the department that identifies the owners of livestock herds infected, or suspected of being infected, with paratuberculosis is not subject to inspection or copying under s. 19.35 except as the department determines is necessary to protect the public health, safety or welfare.

History: 1989 a. 31.

**95.235   Sale of certain painted utensils.** Any person who sells, for the purpose of feeding livestock, any utensil painted with a substance having a toxic effect upon livestock when taken orally shall be punished under s. 95.99 (1).

History: 1975 c. 41; 1979 c. 129 s. 15; 1981 c. 66 s. 8.

**95.24   Living vaccine, hog cholera, anthrax, swine erysipelas.** (1) No person shall have in his or her possession or furnish to another any live virus hog cholera vaccine, including vaccines produced from a modified or attenuated strain of hog cholera virus, except that such vaccines may be in the possession of a biological laboratory inspected and licensed by the federal government, persons having written approval from the department for its experimental use, or veterinarians having a permit from the department for its use in vaccinating or treating swine as necessary for export or for such other uses as are authorized by the department for the control of serious outbreaks of the disease.

(3) (a) No type of living vaccine for immunizing against anthrax or swine erysipelas may be administered to any domestic animal or sold or dispensed in this state without first having obtained the written approval of the chief veterinarian of the department. Approval to administer such vaccine shall be granted to licensed veterinarians only, and then only to qualify the domestic animal for export or in the event that any of the following has been established:

1. The domestic animals to be so treated are infected.

2. The domestic animals to be so treated are on premises known to be contaminated.

3. The domestic animals to be so treated have been exposed within 40 days to infection with the disease for which the living vaccine is prescribed as a proper immunizing agent.

(b) Every veterinarian who so administers such living vaccine shall render to the department a report of the use and the results thereof at such time and in such manner as it may require.

History: 1993 a. 213. 492; 2001 a. 56.

**95.25   Tuberculosis control program. (1)** In order to detect and control tuberculosis the department may test for tuberculosis those cattle where indication of possible infection is disclosed by means of the slaughter cattle identification program and any other cattle, farm-raised deer or other species the department has reason to believe may be infected or exposed or considers necessary to test for any other reason. Tuberculosis tests authorized by the department shall be made at such times and in such manner as the department determines, in the light of the latest and best scientific and practical knowledge and experience.

(2) Upon reasonable notice, the department, its authorized agents and all inspectors and persons appointed or authorized to assist in the work of applying the tuberculin test, may enter any buildings or enclosures where cattle, farm-raised deer or other species are, for the purpose of making inspection and applying the

tuberculin test, and any person who interferes therewith or obstructs them in their work or attempts to obstruct or prevent by force the inspection and the testing shall, in addition to the penalty prescribed therefor, be liable for all damages caused thereby to the state or to any person lawfully engaged in the work of inspection and testing.

(2m) The owner or other person in possession of animals subject to inspection or testing under this section shall provide animal handling facilities to ensure the safety of the animals and the persons conducting the inspection or testing under this section.

(3) The department shall provide all the necessary equipment and supplies and inspectors and make all arrangements necessary for the carrying on and completion of the work authorized by this section. If any such equipment or supplies are no longer needed, they may be disposed of by the department of administration, and the proceeds derived from the sale shall be paid into the state treasury and credited to the appropriation for such testing.

(4) Retests of infected herds shall be made by the department at such intervals as the department deems necessary to protect the work already done and to preserve the modified accredited or tuberculosis free status of the state under the specifications and regulations of the U.S. department of agriculture and the agreements among the various states.

(4m) The department is not liable for injury to or death of animals during inspection or testing under this section unless negligence by the department causes the injury or death.

(5) For each animal of a species raised primarily to produce food for human consumption, including farm-raised deer, condemned and slaughtered, except as provided in s. 95.36, the owner shall receive and, upon certificate of the department, the state shall pay two-thirds of the difference between the net salvage value and the appraised value of the animal, but the payment may not exceed $1,500 for an animal.

(6) The department may, with the owner's consent, condemn animals which have been exposed to tuberculosis or which are suspected of being infected, although such animals have not reacted to the tuberculosis tests.

History: 1971 c. 125; 1975 c. 306; 1983 a. 361; 1991 a. 269; 1995 a. 79. 225. 450; 1997 a. 35.

Cross Reference: See also chs. ATCP 10 and 12. Wis. adm. code.

**95.26   Brucellosis control program. (1)** In order to detect and control bovine brucellosis the department shall conduct milk and cream tests and blood tests as provided in this section. Milk and cream shall be tested by the brucellosis ring test, hereafter referred to as the B.R.T. test. Blood shall be tested by blood serum agglutination or other test methods approved by the department, hereafter referred to as the brucellosis test.

(2) All milk and cream received at every dairy plant shall be tested at not more than 6-month intervals by the B.R.T. test, and brucellosis tests shall be applied promptly to cattle when the milk or cream therefrom discloses a positive reaction to the B.R.T. test or to cattle and American bison when other indications of possible infection are disclosed. All cattle and American bison, except steers and spayed heifers, shall be subject to the brucellosis test, but official vaccinates not older than the maximum age prescribed by rules of the department need not be tested except when deemed necessary by the department or the attending veterinarian. Brucellosis tests and official vaccination provided for in this section shall be performed by a veterinarian approved by the department. When brucellosis tests are not conducted by any such veterinarian within 15 days of the date notice to test is mailed to the cattle or American bison owner, the department shall conduct such tests. Except where compensated by the federal government, approved veterinarians performing testing and vaccination under this section shall be paid by the state at uniform rates established by the department. Blood samples drawn for the brucellosis test shall be submitted to the department promptly for laboratory examination.

(3) If the existence of brucellosis within the state results in the termination of its status as a certified brucellosis-free area by the

Case 3:08-cr-50013   Document 25-3   Filed 07/30/2008   Page 21 of 32

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242

7    Updated 05–06 Wis. Stats. Database
*Not certified under s. 35.18 (2), stats.*

ANIMAL HEALTH        95.31

U.S. department of agriculture, the department shall request the release of funds by the joint committee on finance from the appropriation under s. 20.865 (4) (a) to pay for official vaccination, as provided in s. 95.46 (2), of all female calves located within any county where the incidence of brucellosis disqualifies it for such designation.

(4) Cattle and American bison that are classified as "reactors" to the brucellosis test, whether or not conducted pursuant to this section, shall be slaughtered. A report of any test disclosing reactors shall be mailed to the owner thereof. The reactors shall be identified by a reactor tag and permanent mark as prescribed by the department. The owner shall effect slaughter of the reactors within 15 days of the date they are so identified, except that the department, for cause shown, may extend the time an additional 15 days. If the owner of reactors fails to comply with this subsection within the time limited, the department shall cause the removal and slaughter of the reactors. No indemnity shall be paid on any reactors disposed of by the department. No milk shall be sold from any reactors or from any herd of cattle in which reactors are kept contrary to the provisions of this section.

(5) When reactors to any brucellosis test are disclosed in a herd of cattle or American bison the department shall quarantine the entire herd by serving written notice thereof, either personally or by mail, on the owner or person in charge; but such quarantine shall not be imposed if the department, upon the basis of the clinical history of the herd with respect to brucellosis and the recommendation of the attending veterinarian, determines it is improbable that the cattle or American bison will contract brucellosis. No cattle or American bison subject to the quarantine shall be removed from the premises where the cattle or American bison are quarantined, except upon written permit of the department. The quarantine shall remain in full force until removed by the department. Such retests shall be conducted as the department finds necessary to eliminate all reactors or other evidence of infection in the herd.

(5m) (a) The department may obtain blood or tissue samples from swine and farm–raised deer to test for brucellosis.

(b) The department may condemn swine and farm–raised deer that are reactors to the brucellosis test and may quarantine the herd from which the reactors come.

(6) The department may acquire, equip and maintain laboratories, including mobile units and promulgate rules and regulations not inconsistent with law so as to effectively execute its functions under the brucellosis control program.

(7) For each animal of a species raised primarily to produce food for human consumption, including farm–raised deer, condemned and slaughtered, except as provided in ss. 95.36 and 95.48, the owner shall receive and, upon certificate of the department, the state shall pay two–thirds of the difference between the net salvage value and the appraised value of the animal, but the payment may not exceed $1,500 per animal. With the consent of the owner the department may condemn, in infected herds, animals which have been exposed and which are suspected of being infected, although the animals have not reacted to the brucellosis tests.

History: 1971 c. 125, 211; 1973 c. 333; 1975 c. 39, 308; 1977 c. 29; 1979 c. 34; s. 2102 (29) (a); 1981 c. 20; 1995 a. 450; 1999 a. 83.
Cross Reference: See also chs. ATCP 10 and 12. Wis. adm. code.

95.27  Pseudorabies control program; indemnities. (1) In order to detect, control and eradicate pseudorabies the department shall obtain blood or tissue samples from Wisconsin swine on a systematic basis. The department shall test the samples for pseudorabies.

(2) In the eradication and control of pseudorabies, the department may, whenever such action is necessary to prevent or reduce the spread of disease, quarantine or condemn and order the destruction of any swine which in the opinion of the department are infected with or have been exposed to pseudorabies.

(3) The department may enter into cooperative agreements with the federal government or any department or other agency for the control and eradication of pseudorabies in this state, including the payment of indemnities authorized under this section.

(4) Subject to sub. (5) and s. 95.36, the department shall indemnify the owner of swine that have been condemned and destroyed under this section. The department shall pay to the owner for each animal destroyed the difference between the net salvage value and the appraised value of the animal, but the payment may not exceed $1,500 for an animal. State payments shall be made from the appropriation under s. 20.115 (2) (b).

(5) Indemnities may not be paid under this section unless the owner of affected swine enters into, and acts in accordance with, an agreement with the department for the eradication of pseudorabies. An agreement entered into under this section shall contain a plan for the eradication of pseudorabies and shall be based upon scientifically accepted methods. The department shall monitor the implementation of an agreement to determine compliance and to determine whether the agreement needs to be modified.

(6) The owner of any swine affected by this section may appeal an order made under this section by filing with the department a request for a hearing under s. 93.18 within 5 days after receipt of notice of the order.

(7) A person in control of any premises on which swine have died of pseudorabies shall promptly dispose of the carcasses as provided under s. 95.50 or have the carcasses removed by a renderer licensed under s. 95.72.

(8) The department may adopt rules that are necessary to administer this section.

History: 1983 a. 132; 1987 a. 399; 1989 a. 31; 1991 a. 39, 109; 1995 a. 450.
Cross Reference: See also chs. ATCP 10 and 12. Wis. adm. code.

95.30  Disposal of animals infected with tuberculosis. The owner of cattle or farm–raised deer tested and found to be afflicted with bovine tuberculosis shall ship them under the direction of the department to some place designated by it for immediate slaughter under U.S. government inspection, or under the inspection approved by the department.

History: 1995 a. 79.
Cross Reference: See also chs. ATCP 10 and 12. Wis. adm. code.

95.31  Condemnation of diseased animals. (1) The department may condemn animals that are affected with or exposed to a contagious or infectious disease if the department determines that it is necessary to do so to prevent or control the spread of the disease. Condemned animals shall be slaughtered or destroyed as directed by the department.

(2) If the department determines that it is necessary to condemn an animal under sub. (1), the department shall, in all cases where the payment of indemnities is authorized under this chapter, appraise the animal as provided in s. 95.32 and shall notify the owner in writing of the appraised value. The notice shall include the number and description of the animals and the name of the owner.

(3) In addition to the indemnities for specific animal diseases provided under ss. 95.25, 95.26 and 95.27 or under special emergency programs and subject to s. 95.36, the department shall pay indemnities on livestock condemned and slaughtered or destroyed because of other diseases if the department determines that the condemnation and slaughter or destruction is necessary to protect public health or the livestock industry. The indemnity under this subsection shall be two–thirds of the difference between net salvage value and appraised value, but may not exceed $1,500 for an animal, except as provided in sub. (3m). As used in this subsection, "livestock" means animals of species raised primarily to produce food for human consumption, including farm–raised deer.

(3m) If the department condemns an animal because the animal is suspected to have a transmissible spongiform encephalopathy and the owner disposes of the carcass as directed by the department, the department shall increase the amount of the indemnity

Case 3:08-cr-50013   Document 25-3   Filed 07/30/2008   Page 22 of 32

calculated under sub. (3) or s. 95.23 (1m) (b) by the costs of the destruction and of the disposal, transportation, and any necessary storage of the animal's carcass. An indemnity paid because of the condemnation of an animal to which this subsection applies may exceed $1,500.

**(4)** In the event of a major or serious outbreak of a contagious or infectious disease that may affect public health or the health of animals and that requires special control measures, the department may request the joint committee on finance to release funds appropriated under s. 20.115 (2) (b) as needed to conduct emergency control programs independently or in cooperation with federal or local units of government and, subject to s. 95.36, to pay indemnities on animals of species raised primarily to produce food for human consumption, including farm–raised deer, condemned and slaughtered or destroyed under the emergency control programs. For all indemnities paid under this subsection, the state shall pay two–thirds of the difference between the net salvage value and the appraised value of an animal, except that no payment may exceed $1,500 for an animal.

History: 1977 c. 146; 1977 c. 449 s. 497; 1981 c. 20; 1989 a. 31; 1991 a. 269; 1995 a. 79, 450; 2001 a. 56; 2005 a. 25.
Cross Reference: See also chs. ATCP 10 and 12. Wis. adm. code.

**95.32   Appraised value. (1)** The department shall determine the appraised value of an animal that is destroyed under s. 95.21 (4) (b), 95.23 (1m), 95.25, 95.26, 95.27 or 95.31 (3) or (4) if the animal's owner is eligible for an indemnity.

**(2)** Except as provided in sub. (3), the appraised value for an animal that is of an animal type that is frequently sold at public auction shall equal the average price paid for a commercial grade animal of the same animal type at public auction sales during a period specified by the department.

**(3)** The appraised value of a registered purebred animal of an animal type that is frequently sold at public auction shall equal 125% of the amount determined under sub. (2) for that animal type.

**(4)** Using a method specified under sub. (5) (c), the department shall determine the appraised value of an animal of an animal type that is not frequently sold at public auction.

**(5)** (a) The department shall promulgate rules specifying animal types for the purposes of this section. The animal types may be based on characteristics of animals that include species, gender and age. The rules shall specify whether each animal type is frequently sold at public auction.

(b) The department shall promulgate rules specifying the period of public auction sales that will be used in the appraisal of each animal type to which sub. (2) applies. The period may not begin more than 6 months before the date on which the department makes the appraisal.

(c) The department shall promulgate rules specifying methods for determining the appraised value of animals of animal types that are not frequently sold at public auction. The methods shall be as consistent as possible with the method under sub. (2).

History: 1977 c. 146; 1977 c. 449 s. 497; 1981 c. 20; 1995 a. 450; 2001 a. 108
Cross Reference: See also ch. ATCP 10. Wis. adm. code.

**95.33   Tubercular animals that do not react.** Whenever in the opinion of the department a bovine or farm–raised deer is afflicted with tuberculosis, although failing to react to the tubercular test, such animal shall be condemned and the appraisal and all subsequent procedure shall be the same as in the case of reactors.

History: 1995 a. 79.
Cross Reference: See also ch. ATCP 10. Wis. adm. code.

**95.34   Slaughter on premises.** The slaughter of diseased animals on the premises of the owner shall be made under the supervision and direction of the department or an assistant. If upon inspection of the carcass it is found, according to rules of inspection of the U.S. department of agriculture, to be unfit for human food, the inspector shall destroy it or cause it to be buried and covered with a sufficient quantity of lime to destroy it. The hide shall be disinfected and otherwise cared for according to said rules. If the carcass is fit to be used for human food it may be disposed of in accordance with the provisions made by the department.

History: 1975 c. 308.

**95.35   Scrapie eradication: indemnities. (3)** The department may enter into cooperative agreements with the federal government or any department or other agency for the control and eradication of scrapie in this state.

**(6)** Every person in control of premises on which sheep or goats have died of scrapie shall promptly bury or dispose of the carcasses in accordance with rules prescribed by the department.

History: 1981 c. 20; 1995 a. 450.
Cross Reference: See also chs. ATCP 10 and 12. Wis. adm. code.

**95.36   Indemnity not allowed.** The owners of animals condemned and slaughtered under the provisions of this chapter shall receive no indemnity therefor in the following cases:

**(1)** Animals owned by the United States, this state or any county, city, town or village.

**(2)** Animals brought into this state contrary to any provisions of law.

**(3)** Animals which the owner at the time of coming into possession of them knew or had reason to believe to be afflicted with contagious or infectious disease.

**(4)** Animals diseased at the time of arrival in this state.

**(5)** Animals which the owner has negligently or willfully exposed to contagious or infectious disease.

**(6)** Animals brought into this state that fail to pass successfully the retests subsequent to importation as required by regulation of the department.

**(7)** When the infected premises have not been disinfected, to the satisfaction of the department in such manner as to prevent the further spread of the disease.

**(8)** Unless the animal condemned and slaughtered was owned by the claimant at least 30 days prior to the test which discloses the reaction.

**(9)** Where the owner has received indemnity as a result of a former inspection or test, and has thereafter introduced into his or her herd any bovine contrary to law or the regulations of the department.

**(10)** If the owner of the animal has failed to comply with s. 95.51 (2).

History: 1995 a. 225; 2003 a. 229.
Cross Reference: See also ch. ATCP 10. Wis. adm. code.

**95.37   Claims for indemnity. (1)** Claims against the state arising from the condemnation of animals shall be made by delivering to the department, to be forwarded to the department of administration, a request, giving the name and place of residence of the owner, the date on which the animals were condemned and the tag number of each animal, and also a statement of the salvage received and of the sum due from the state and any additional information that the department requires. The department shall promptly transmit all claims to the department of administration and accompany the same with a report of the sum due from the state and thereupon the claims may be audited and paid.

**(2)** Claims for indemnity based on condemnation and appraisal may be paid notwithstanding the death of the animal by means other than slaughter if satisfactory proof of death is filed with such claim.

History: 1977 c. 216; 1977 c. 449 s. 497; 1995 a. 450.
Cross Reference: See also ch. ATCP 10. Wis. adm. code.

**95.38   Altering records; tampering with ear tags. (1)** It shall be unlawful for any person to in any manner change any test record, falsely record any test, misrepresent the identification of any animal or any other material fact on any test record, certificate of veterinary inspection, vaccination record, claim for indemnity, or any disease control report or application to the department. It

Case 3:08-cr-50013   Document 25-3   Filed 07/30/2008   Page 23 of 32

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242

9   Updated 05–06 Wis. Stats. Database
*Not certified under s. 35.18 (2), stats.*

ANIMAL HEALTH          95.48

shall be unlawful for any person to induce or to conspire with another, either directly or indirectly, to do any of the said prohibited acts.

(2) No person is permitted to in any way tamper with, insert or remove from the ear of any animal any ear tag or registration mark which is or may be used for identification in disease control work except upon authorization from the department.

(3) The department may adopt rules that are necessary to administer this section.

History: 1983 a. 132; 2001 a. 56.
Cross Reference: See also chs. ATCP 10 and 12. Wis. adm. code.

95.39   Biological products. (1) It is unlawful for any person to sell, furnish, give away or supply any tuberculin or any biological product containing Brucella organisms for use in this state unless all of the following conditions are met:

(a) The label on the container thereof states the name and address of the manufacturer and the date of expiration.

(b) The vendor, within 15 days, reports to the department the name of the recipient, the date and amount delivered.

(c) The products are sold or delivered only to veterinarians licensed to practice in this state.

(2) It shall be unlawful for any person to use or dispose of any tuberculin until assured in writing by the person from whom received that its sale or delivery to said person has been reported to the department.

(3) Biological products produced or packed outside this state for the treatment, diagnosis or prevention of animal diseases and licensed by the federal government under experimental or special licenses may be sold, distributed or used only under such conditions as the department prescribes. The department may make such rules governing the conditions of manufacture, sale, distribution or use of biological products for the treatment, diagnosis or prevention of animal diseases as are necessary for the protection of animal health, including permit requirements or other restrictions on the importation, sale or experimental use of such products.

History: 1995 a. 225.

95.40   Neutralizing tuberculosis test. (1) No person shall use or cause to be used tuberculin or any other agent upon cattle or farm–raised deer, by injection or otherwise, for the purpose of preventing a proper reaction when a tuberculin test is made.

(2) No person shall at any time or in any manner apply tuberculin to any animal except for the purpose of applying a tuberculin test. The result of every such test shall be reported to the department.

History: 1995 a. 79.

95.41   Tuberculin; ear tags. (1) The department shall furnish and distribute tuberculin and circulars containing the rules and regulations for applying the tuberculin test upon application to all persons authorized to make such test.

(2) The department shall provide ear tags to be used for identifying cattle and farm–raised deer tested for purposes of disease control, and shall distribute the tags to persons authorized by the department to identify cattle and farm–raised deer.

History: 1977 c. 216; 1979 c. 129; 1995 a. 79.

95.42   Revocation of permit to test. Only veterinarians approved by the department may apply the tuberculin test to cattle and farm–raised deer, and no veterinarian applying the test may tag or brand reactors except as specifically authorized or directed by the department. Any veterinarian who fails to comply with this section and the rules and instructions furnished by the department shall forfeit all right to apply the tuberculin test.

History: 1977 c. 216; 1979 c. 129; 1995 a. 79.
Cross Reference: See also chs. ATCP 10 and 12. Wis. adm. code.

95.43   Application of brucellosis test. (1) The brucellosis test shall be applied only by approved veterinarians. Any veterinarian who fails to comply with the laws or regulations of the

department relating to disease control may be denied such approval.

(2) Every veterinarian who applies the brucellosis test shall promptly reactor tag and permanently mark all reactors in conformity with the law and the regulations of the department, and shall promptly report the result of each test to the department. No person shall interfere in any way with the identification of reactors as required herein.

History: 1981 c. 20; 1995 a. 155.
Cross Reference: See also chs. ATCP 10 and 12. Wis. adm. code.

95.45   Certificates of veterinary inspection; tests for interstate shipment. (1) Tests to determine the health status of animals for the purpose of interstate shipment shall be made only by licensed graduate veterinarians approved by the department. Such veterinarians shall report the results of every such test to the department in triplicate.

(4) (a) If the department requires that a certificate of veterinary inspection accompany an animal imported into this state, the veterinarian who issues the certificate shall file a copy of the certificate with the department.

(b) If a certificate of veterinary inspection is required for a wild animal under s. 169.04 (2) (d) and (3) (a) or 169.06 (1) (d) 1. the veterinarian who issues the certificate shall file a copy of the certificate with the department of agriculture, trade and consumer protection. The department of agriculture, trade and consumer protection shall provide a copy of the certificate to the department of natural resources.

(c) The department may promulgate rules to impose requirements on the form, issuance, and filing of certificates of veterinary inspection.

(5) Any certificate of veterinary inspection prepared under this chapter or ch. 169 shall comply with any rules that are promulgated by the department.

History: 2001 a. 56.
Cross Reference: See also chs. ATCP 10 and 12. Wis. adm. code.

95.46   Brucellosis vaccination; official vaccinates. (1) It is unlawful for any person other than an approved veterinarian to treat any bovine animal with any biological product containing Brucella organisms.

(2) No bovine animals may be vaccinated against brucellosis except calves within age ranges prescribed by department rules. Such calves may be vaccinated by approved veterinarians if officially reported to the department and permanently identified as official vaccinates as required under this section and rules of the department.

(3) All animals vaccinated by approved veterinarians shall be identified by a tattoo on the inner surface of the right ear of each such animal, using such symbols as the department by rule prescribes.

(4) All veterinarians shall use only vaccine provided under federal regulations or produced by or under the direction or supervision of the department. They shall identify the vaccinates as required in sub. (3) and record in triplicate on forms prepared by the department the information it requires. The veterinarian shall transmit one copy of the vaccination record to the department within 15 days after the date of vaccination, furnish one copy to the owner of the animals, and retain one copy for the veterinarian's own file.

(6) Official vaccinates need not be identified as reactors until they are past 20 months of age unless there is other evidence of infection in the herd.

History: 1973 c. 123; 1979 c. 129.
Cross Reference: See also chs. ATCP 10 and 12. Wis. adm. code.

95.48   Brucellosis indemnity restrictions.          (1) No indemnity for brucellosis shall be paid:

(a) On steers.

(b) On any animal unless reactor tagged and permanently marked as required by department regulation and unless the claim

Case 3:08-cr-50013   Document 25-3   Filed 07/30/2008   Page 24 of 32

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242

Updated 05–06 Wis. Stats. Database    10
*Not certified under s. 35.18 (2), stats.*

95.48    ANIMAL HEALTH

is accompanied by such proof, as the department may require, of (1) slaughter within the time limited, (2) actual salvage and (3) cleaning and disinfection of the premises.

(c) On any animal vaccinated against brucellosis, other than official vaccinates, unless it can be established that such animal, subsequent to vaccination, returned to a negative status as established by a negative test conducted not less than 30 days prior to the test on which the claim is based but more than 30 days after vaccination.

(d) Except as provided in sub. (2), on any animal which was a member of a herd into which was introduced any animal which failed to first pass a completely negative brucellosis test prior to movement as required by s. 95.49.

(e) Except as provided in sub. (2), on any animal other than an official vaccinate which was a part of a herd any member of which, when above the maximum qualifying age for official vaccination, was treated with any biological product containing Brucella organisms.

(2) Notwithstanding the provisions of sub. (1) (d) and (e), indemnity shall be paid on such animals if the reaction is disclosed on any test conducted subsequent to the elimination without claim of all reactors disclosed on a complete herd test conducted after the time of making any addition or treating any animal as therein described.

Cross Reference: See also chs. ATCP 10 and 12. Wis. adm. code

**95.49   Movement; sale.** (1) No person may sell or move from one place to another any American bison, or animal of another species identified by the department by rule, born on or after June 1, 1984, unless it is accompanied by a report of complete negative brucellosis test conducted within 30 days prior to movement, but this subsection does not apply to the following:

(a) Official vaccinates.

(b) Neutered males and spayed females.

(c) Animals consigned directly to slaughter establishments if the animals are moved and held in conformity with department rules.

(d) Male animals under 6 months of age and female animals under the maximum age allowable for vaccination as defined by rule.

(e) Animals not known to be reactors moved to the premises of an animal market operator licensed under s. 95.68 or an animal dealer licensed under s. 95.69, for sale and removal as provided in sub. (2).

(f) Animals which are moved for exhibition purposes if accompanied by a report of a negative brucellosis test conducted within 90 days.

(g) Animals moved by the owner between farm premises owned or operated by him or her.

**(1m)** If this state is not designated Class Free under 9 CFR 78.41 or if this state is so designated but the department has promulgated rules under sub. (2m), no person may sell or move from one place to another any cattle born on or after June 1, 1984, unless it is accompanied by a report of complete negative brucellosis test conducted within 30 days before movement. This subsection does not apply to any of the following:

(a) Official vaccinates.

(b) Steers and spayed heifers.

(c) Animals consigned directly to slaughter establishments if the animals are moved and held in conformity with department rules.

(d) Male animals under 6 months of age and female animals under the maximum age allowable for vaccination as defined by rule.

(e) Animals not known to be reactors moved to the premises of an animal market operator licensed under s. 95.68 or an animal dealer licensed under s. 95.69, for sale and removal as provided in sub. (2).

(f) Animals which are moved for exhibition purposes if accompanied by a report of a negative brucellosis test conducted within 90 days.

(g) Animals moved by the owner between farm premises owned or operated by him or her.

(h) Feeder cattle sold or moved to an approved feedlot if the cattle are moved and held in conformity with department rules.

(i) Female beef breed cattle under one year of age if sold or moved for feeding purposes.

**(2)** Animals moved to the premises of an animal market or animal dealer pursuant to the exemption from brucellosis test in sub. (1) (e) or (1m) (e) may be removed only in compliance with the brucellosis test requirements in sub. (1) or (1m).

**(2m)** The department may promulgate emergency rules upon the outbreak in this state of brucellosis to prevent the movement and sale of cattle unaccompanied by reports of complete negative brucellosis tests.

**(3)** This section shall not be construed to authorize the movement of any animals in violation of any other provision of this chapter or of any quarantine or animal health regulation issued by the department as authorized by law.

History: 1973 c. 123; 1981 c. 390 s. 252; 1983 a. 127; 1993 a. 16; 1995 a. 155; 2001 a. 56.

Cross Reference: See also chs. ATCP 10 and 12. Wis. adm. code

**95.50   Disposition of carcasses.** (1) No person shall deposit or throw or allow to be deposited or thrown into any stream, lake or swale, or leave or deposit or cause to be left or deposited upon any public highway or other place the carcass of any animal; nor deposit or leave or permit to be deposited or left upon any premises under that person's control any dead animal exposed in such manner as to be reached by dogs or wild animals for a longer period than 24 hours in the months of April to November, or 48 hours during the months of December to March. The owner of such a carcass or any other person may report to the proper county officials or the contracting private rendering plant pursuant to s. 59.54 (21) for removal and burial or other disposition of a carcass within the time specified in this subsection.

**(2)** No person shall transport, haul or drag or permit to be transported, hauled or dragged along any public highway in this state the carcass of any animal suspected of having died from anthrax, blackleg, foot and mouth disease, sleeping sickness or glanders or any other disease which the department may designate as highly dangerous. All such carcasses shall be burned or be buried at least 6 feet below the surface of the ground and shall be completely covered so as to prevent their being reached by wild animals or dogs. Whenever it is necessary to transport any such carcass across any public highway for burial, it shall be transported in such manner as not to contaminate any part of the public highway. The carcasses of animals dying from other communicable diseases may be transported to and disposed of under such regulations as are prescribed by the department. The definition of "communicable disease" in s. 990.01 (5g) does not apply to this subsection.

**(3)** Any dead animal found upon a public highway or other public place shall, in case the owner of the animal cannot be found, be buried or otherwise disposed of at public expense by the local health department, as defined in s. 250.01 (4) (a) 1. or 3. or (b), in whose jurisdiction the animal is found. This subsection applies if a county does not exercise its authority under s. 59.54 (21).

**(4)** In a county which does not exercise its authority under s. 59.54 (21), the owner of a carcass is obligated to dispose of it as specified in this section.

History: 1981 c. 291; 1981 c. 391 s. 210; 1993 a. 27, 492; 1995 a. 201.

Cross Reference: See also chs. ATCP 10 and 12. Wis. adm. code

**95.51   Livestock premises registration.** (1) DEFINITION. In this section, "livestock" means bovine animals, equine animals, goats, poultry, sheep, swine, farm–raised deer, and any other kind of animal that the department identifies by rule for the purposes of this section.

Electronic reproduction of 2005–06 Wis Stats database, updated and current through June 30, 2008 and 2007 Wis Act 242

**11    Updated 05–06 Wis. Stats. Database**
*Not certified under s 35.18 (2), stats.*

ANIMAL HEALTH    **95.55**

**(2)** REGISTRATION (a) Except as provided under sub (3m), no person may do any of the following at a location in this state unless that person registers that location with the department:

1  Keep any bovine animals, equine animals, goats, sheep swine, poultry, or farm–raised deer

2  Keep any other kind of livestock that the department identifies by rule

(b) A person shall register under par (a) on a form provided by the department and shall provide all of the following information:

1  The registrant's legal name and any trade names under which the registrant keeps livestock in this state.

2  The registrant's business address

3  The address of each location at which the registrant keeps livestock in this state.

4  The type of livestock kept at each location under subd 3 and the type of livestock operation, using standards and guidelines from the national animal identification plan developed by the animal and plant health inspection service of the federal department of agriculture to the extent practicable

**(3)** COORDINATION A person to whom sub (2) applies may comply with sub (2) as part of the registration process under s 95.55 or 95 68 or the licensing process under s 97.22

**(3m)** EXEMPTIONS The department may promulgate rules specifying exemptions from sub (2), including exemptions based on the number or type of livestock kept by a person or on the type of locations where a person keeps livestock

**(4)** PREMISES CODE (a) The department shall assign a unique identification code to each location registered under sub (2) (a) The department shall use a uniform system to assign codes that is reasonably designed to facilitate animal health and disease control, interstate consistency, and interstate commerce The department shall use a system that complies with any applicable standards established by the animal and plant health inspection service of the federal department of agriculture The department shall use premises codes that are federally allocated for premises in this state

(b) The department shall establish and maintain an electronic data base related to livestock premises in this state. The department shall include in the data base the premises code assigned to each location under par (a) and the registration information under this section that is associated with that premises code The department may include in the data base global positioning system coordinates and other information that the department considers appropriate

**(5)** CONFIDENTIALITY (a) Information that a person is required to provide to the department under sub (2) is not subject to public inspection under s 19 35 Except as provided in pars. (b) and (c), the department may not disclose information provided under sub (2) to any other person or agency

(b) Paragraph (a) does not apply to information that a person is required to provide to the department under other laws

(c) The department may disclose information that a registrant provides under sub (2) to any of the following:

1  A person to whom the registrant authorizes disclosure

2  The animal and plant health inspection service of the federal department of agriculture, if the animal and plant health inspection service agrees not to disclose the information except in situations in which the department is authorized to disclose the information under subd 1 or 4

3  Any agent of the department under sub (8)

4  Another person or agency if the department believes that the release is necessary to prevent or control disease or to protect public health, safety or welfare The department may disclose information under this subdivision subject to any confidentiality requirements that the department determines are appropriate under the circumstances

(d) Any agent of the department under sub (8) may not disclose information provided under sub (2) except to a person to whom the registrant or the department authorizes disclosure

**(6)** FUNDING The department shall seek federal funding for the administration of this section.

**(7)** RULES The department shall promulgate rules for the administration of this section. The department shall promulgate rules to govern the release of aggregate information under this section by the department

**(8)** CONTRACT AGENT The department may contract with an agent to administer the registration program under this section on behalf of the department The department may not authorize an agent to release aggregate information under this section

History: 2003 a 229.

Cross Reference: See also chs ATCP 10 and 12 Wis adm code

**95.55  Farm–raised deer. (1)** REGISTRATION (a) Except as provided in par (b) and s 169 04 (5m), no person may keep farm–raised deer unless the person is registered with the department under this section

(b) 1 Establishments licensed under s 97.42 may keep live farm–raised deer for slaughtering purposes for up to 72 hours without being registered under this section

2 The department may promulgate rules to exempt groups of persons or species of farm–raised deer from the registration requirement under this section

(c) The department shall register a person to keep farm–raised deer in a fenced area that is located in this state and another state without having the entire area in this state enclosed with a fence if all of the following apply:

1  The person is keeping farm–raised deer in the fenced area on June 2, 2006.

2  The fenced area located in this state complies with the applicable fencing requirements under ss 90 20 and 90 21, or the fencing requirements of the adjoining state, whichever are more stringent, as determined by the department of natural resources

3  The person complies with all of the rules promulgated under this section for the prevention of disease in farm–raised deer or all such laws of the adjoining state, whichever are more stringent, as determined by the department of agriculture, trade and consumer protection.

4. The person has the carcass of each farm–raised deer that dies, in either state, inside the fenced area, from being harvested or from natural causes tested for chronic wasting disease and has the test results submitted to the department of agriculture, trade and consumer protection and to the department of natural resources

5 The person notifies the department of agriculture, trade and consumer protection and the department of natural resources of the escape of any deer from the portion of the fenced area that is located in this state immediately upon discovering the escape

6 The person does not release into this state any deer from the fenced area

**(2)** APPLICATION A person shall register under this section using a form provided by the department The form shall be accompanied by the fee specified under sub (3) Upon registration, the department shall issue the person a registration certificate.

**(3)** FEE The department shall, by rule, specify the fee for registration under this section

**(3c)** TRANSFERS (a) No person may transfer a registration certificate issued under this section or an ownership interest in a farm registered under this section except as provided in par (b).

(b) An individual may transfer his or her registration certificate or his or her ownership interest in a farm registered under this section to a member of his or her immediate family

**(3m)** AUTHORIZATION A person who is registered under this section may do any of the following:

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242

**95.55    ANIMAL HEALTH**

(a) Possess, propagate, purchase, sell, hunt, kill, and exhibit farm–raised deer.

(b) Hunt or sell or offer to sell the opportunity to hunt farm–raised deer that the person owns.

**(4)** ANIMAL HANDLING FACILITIES. A person required to register under this section shall provide animal handling facilities to ensure the safety of farm–raised deer during handling and of the persons handling the farm–raised deer.

**(5)** HUNTING. (a) A person hunting farm–raised deer is exempt from having any hunting approval issued under ch. 29 and is exempt from any closed season restrictions or bag limits established by the department of natural resources. In order to regulate the hunting of farm–raised deer, the department of agriculture, trade and consumer protection may promulgate rules to establish tagging requirements or other methods for identifying dead farm–raised deer that have been legally hunted or killed and to impose other conditions or requirements regulating the hunting of farm–raised deer. Section 29.314 applies to the hunting of farm–raised deer.

(b) No owner of farm–raised deer may sell, or offer to sell, the opportunity to hunt farm–raised deer unless the farm–raised deer to be hunted are confined in an area of 80 contiguous acres or more, except as provided in pars. (bg) and (br).

(bg) The area required under par. (b) may be less than 80 contiguous acres if all of the following applies:

1. The owner subject to par. (b) had a license for a deer farm issued under s. 29.871, 1999 stats., that was in effect on December 31, 2002, and that authorized persons other than the licensee or the licensee's employees to hunt deer.

2. The owner was in compliance with the requirement to register with the department under this section beginning on January 1, 2003, and has been registered continuously since that date.

3. The deer are confined in an area that is not less than the acreage subject to the deer farm license on December 31, 2002.

4. Before January 1, 2003, the owner offered for sale the opportunity to hunt as authorized under the license.

5. The owner submits to the department evidence that demonstrates that the owner meets the requirements of this paragraph, and the department verifies the evidence.

(bk) The evidence required under par. (bg) 5. that relates to par. (bg) 4. may include any of the following:

1. A copy of the notice given by the owner to the department of natural resources before the taking of deer, as required under s. 29.871 (7), 1999 stats.

2. The acknowledgement by the department of natural resources of the notice submitted by the owner before the taking of deer, as required under s. 29.871 (7), 1999 stats.

3. An annual report submitted by the owner to the department of natural resources under s. 29.871 (12), 1999 stats.

4. State or federal income tax records or sales tax records.

5. A conditional use permit or other regulation imposed by a political subdivision.

6. Receipts or other business records.

7. Brochures, advertisements, Internet sites, or other promotional information.

(bm) An owner who wishes to demonstrate compliance with par. (bg) shall make application to the department no later than November 1, 2006.

(bn) Notwithstanding any authorization for hunting under this section, no person may do any of the following:

1. Shoot or shoot at a farm–raised deer while hunting unless the person is in physical possession of the weapon.

2. Provide or operate, or offer to provide or operate, a facility that allows a person the opportunity to hunt a farm–raised deer if the person who is hunting is in violation of subd. 1.

(br) If an individual under this section to whom par. (bg) applies transfers his or her registration certificate or his or her ownership interest to a member of his or her immediate family under sub. (3c) (b), the area required under par. (b) may be less than 80 contiguous acres but may not be less than the acreage subject to the deer farm license on December 31, 2002.

(c) The department of natural resources and the department of agriculture, trade and consumer protection shall cooperate with each other with respect to the hunting of farm–raised deer.

**(6)** RULES. (a) The department shall promulgate rules to regulate persons who keep farm–raised deer. The rules shall establish disease testing requirements for bovine tuberculosis and chronic wasting disease and may establish testing requirements for other diseases.

(b) The rules promulgated under this subsection may include any of the following:

1. Standards to be followed by persons keeping farm–raised deer to prevent the spread of disease.

2. Provisions requiring that registration under this section be on an annual basis.

3. Exemptions from any annual registration requirements established under subd. 2.

**History:** 1995 a. 79; 2001 a. 56; 2003 a. 179; 2005 a. 35, 359, 409; 2007 a. 97.
**Cross Reference:** See also chs. AICP 10 and 12, Wis. adm. code.

**95.57  Poultry and farm–raised game birds; national poultry improvement program.** **(1)** PARTICIPATION IN PROGRAM. The department may promulgate rules to require that any of the following originate from a flock of a person participating in the national poultry improvement plan under 9 CFR part 145:

(a) Poultry, including their eggs, that are used for breeding purposes.

(b) Farm–raised game birds, including their eggs, that are used for breeding purposes.

**(2)** FEES. The department shall promulgate a rule to set any fee that it imposes on a person for participation in the national poultry improvement plan.

**History:** 2001 a. 56.
**Cross Reference:** See also chs. AICP 10 and 12, Wis. adm. code.

**95.60  Importing fish; fish farms.** **(1)** In this section, "waters of the state" has the meaning given in s. 281.01 (18).

**(2)** (a) No person may bring any fish or fish eggs into this state for the purpose of introduction into the waters of the state, of use as bait or of rearing in a fish farm without an annual permit issued by the department.

(b) No person may bring any fish or fish eggs of the family salmonidae into this state for the purpose of introduction into the waters of the state unless the fish are certified, as provided in the rules promulgated under sub. (4s) (d), to be free of the diseases specified under sub. (4s) (d).

(c) The department may require a person who is subject to par. (a) or (b) to notify the department before bringing fish or fish eggs into this state.

(d) The department of natural resources is exempt from par. (a).

**(3)** The department may promulgate rules, applicable to persons who operate fish farms, that require any evidence of fish health that the department determines is necessary.

**(3m)** A person who operates a fish farm shall annually register the fish farm with the department. The person registering the fish farm shall provide any evidence of fish health required under sub. (3) and shall identify the activities that will be engaged in, the species of fish that will be used, and the facilities that will be used on the fish farm.

**(4)** (a) The department shall inspect a fish farm upon initial registration under sub. (3m). The department may inspect a fish farm at any other time.

(b) The department may inspect fish and fish eggs subject to subs. (2) and (3) and the rules under sub. (4s) (b) to ensure the health of the fish and fish eggs. The inspection may include

Case 3:08-cr-50013    Document 25-3    Filed 07/30/2008    Page 27 of 32

Electronic reproduction of 2005–06 Wis. Stats. database; updated and current through June 30, 2008 and 2007 Wis. Act 242

13    Updated 05–06 Wis. Stats. Database
*Not certified under s. 35.18 (2), stats.*

ANIMAL HEALTH    95.68

removal of reasonable samples of the fish and fish eggs for biological examination.

(c) A person who operates a fish farm shall keep records on purchases, sales and production of fish and fish eggs and any other records required by the department by rule. The department may inspect these records upon request.

**(4m)** The department shall maintain a registry of fish farms.

**(4s)** The department shall do all of the following:

(a) In consultation with the department of natural resources, promulgate rules specifying requirements for the labeling and identification, in commerce, of fish reared in fish farms.

(b) In consultation with the department of natural resources, promulgate rules specifying fish health standards and requirements for certifying that fish meet those standards for the purpose of s. 29.736.

(c) Promulgate rules specifying the qualifications that a person who is not a veterinarian must satisfy in order to provide evidence of fish health.

(d) In consultation with the department of natural resources, promulgate rules specifying diseases and requirements for certifying that fish are free of those diseases for the purposes of sub. (2) (b).

(e) Promulgate rules establishing the period for which a record required under sub. (4) (c) must be retained.

**(5)** The department shall, by rule, specify the fees for permits, certificates, registration and inspections under this section.

**(6)** No person, except the department of natural resources, may rear lake sturgeon in a fish farm.

**(7)** Any information kept by the department that identifies the type or number of fish or fish eggs bought, raised or sold by a privately owned fish farm or the supplier or purchaser of those fish or fish eggs is not subject to inspection or copying under s. 19.35 (1) except as the department determines is necessary to protect fish health or prevent the spread of disease.

**(8)** The department may provide training to veterinarians and other persons who issue fish health certificates for the purposes of this section. The department may charge fees to recover the cost of providing the training.

**History:** 1997 a. 27, 237; 1999 a. 32; 2001 a. 16, 56; 2003 a. 136; 2005 a. 25.
**Cross Reference:** See also chs. ATCP 10 and 12, Wis. adm. code.

**95.65    Intrastate transportation of white−tailed deer.**
**(1)** In this section, "cervid" means a member of the family of animals that includes deer and moose.

**(2)** The department shall impose the same requirements on the intrastate transportation of white−tailed deer that it imposes on the intrastate transportation of other cervids.

**History:** 2001 a. 109.
**Cross Reference:** See also chs. ATCP 10 and 12, Wis. adm. code.

**95.67    Proper use of animal care and disease control products.** No person may use chemical, biological or disease control products in the treatment or care of food producing animals without substantially complying with instructions, warnings and directions for use on the product label. No animal or food product including milk of the animal shall be marketed for processing or use as food prior to the time specified on the label of a product used in the treatment or care of the animal. This section applies neither to licensed veterinarians who prescribe or administer drugs in conformity with federal restrictions nor to persons using drugs in a manner prescribed by a licensed veterinarian. This section shall not prevent a farmer from administering animal disease control products to livestock in compliance with instructions on the product label.

**History:** 1971 c. 240.

**95.68    Animal markets. (1)** DEFINITIONS. In this section:

(ag) "Animal market" means any premises which are open to the public for the purpose of trading in livestock or wild animals

and on which facilities are maintained for their yarding, feeding and watering prior to sale.

(ai) "Animal transport vehicle" has the meaning given in s. 95.71 (1) (dm).

(am) "Equine animal" means a horse, mule, zebra, donkey or ass.

(b) "Equine market" means an animal market that is open to the public solely for the purpose of trading in equine animals.

(d) "Livestock" means bovine animals, sheep, goats, swine, farm−raised deer and equine animals.

(g) "Wild animal" means a wild animal that is subject to regulation under ch. 169.

**(2)** LICENSE. Except as provided in sub. (2m), no person may operate an animal market without an annual license from the department. An animal market license expires on June 30 annually. A separate license is required for every animal market. A license is not transferable between persons or locations.

**(2m)** EXEMPTIONS. (a) A person is not required to obtain a license under sub. (2) to operate an occasional auction sale sponsored by a livestock breeder association or a youth agricultural organization if records of the transactions at the sale are maintained by an auctioneer registered under ch. 480 or by an animal dealer licensed under s. 95.69.

(b) The department may promulgate rules to exempt groups of persons from the licensing requirement under sub. (2) or the registration requirement under sub. (7) or both.

**(3)** APPLICATION. An application for a license under sub. (2) shall be made on a form provided by the department and shall include information reasonably required by the department for licensing purposes. An application shall be accompanied by the applicable fees and surcharges required under subs. (4) and (5).

**(4)** FEES. Unless the department specifies a different fee by rule, the fee for a license issued under this section is the following amount:

(a) For an animal market that is not an equine market and that conducted sales at the market on at least 5 days during the year immediately preceding the year for which the license is issued, $150.

(b) For an animal market that is not an equine market and that conducted sales on fewer than 5 days during the year immediately preceding the year for which the license is issued, $75.

(c) For an animal market other than one described in par. (a) or (b), $100.

**(5)** SURCHARGE AND PAST FEES. (a) An applicant for a license under sub. (2) shall pay a license fee surcharge of $100 if the department determines that within 365 days prior to submitting the license application the applicant did any of the following:

1. Operated an animal market without a license in violation of sub. (2).

1m. Operated a livestock market, as defined in s. 95.68 (1) (e), 1999 stats., without a license in violation of s. 95.68 (2), 1999 stats.

2. Operated an unregistered animal transport vehicle in violation of sub. (7).

2m. Operated an unregistered livestock vehicle, as defined in s. 95.71 (1) (g), 1999 stats., in violation of s. 95.68 (7), 1999 stats.

(b) In addition to the surcharge under par. (a), an applicant for a license under sub. (2) shall pay the fees due for the year in which the applicant was in violation.

(c) The payment of the surcharge and fees under this subsection does not relieve the applicant of other civil or criminal liability that may result from the failure to obtain a license or from the operation of an unregistered vehicle, but does not constitute evidence of a violation of a law.

**(6)** LICENSE CONTINGENT ON FEES. The department may not issue or renew a license under sub. (2) unless the applicant pays all fees and surcharges that are due under subs. (4) and (5) as set forth in a statement from the department. The department shall

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242

Updated 05–06 Wis. Stats. Database    14
Not certified under s. 35.18 (2), stats.

95.68    **ANIMAL HEALTH**

refund a fee or surcharge paid under protest if the department determines that the fee or surcharge was not due as a condition of licensing under this section. If a fee or surcharge is paid by check, a license issued in reliance upon that check is void if the check is not honored.

**(7)** ANIMAL TRANSPORT VEHICLE REGISTRATION. No animal market operator may operate an animal transport vehicle unless the animal transport vehicle is registered with the department in the name of the animal market operator. The animal transport vehicle shall be registered on a form provided by the department. The registration shall include a description and the serial number of the animal transport vehicle.

**(8)** RULES. The department may promulgate rules to specify license fees under sub. (4) or to regulate the operation of animal markets, including rules related to market operator qualifications, market construction and maintenance, construction and maintenance of animal transport vehicles, identification of animal transport vehicles, disease sanitation, humane treatment of animals, identification of animals, record keeping, reports to the department and compliance with applicable financial security requirements under state or federal law.

**(9)** PENALTIES. A person conducting a business regulated by this section after revocation of his or her license shall be fined not less than $500 nor more than $1,000 or imprisoned not to exceed 6 months or both.

**History:** 1993 a. 79; 1995 a. 79, 95; 2001 a. 56.
**Cross Reference:** See also ch. ATCP 12, Wis. adm. code.

**95.69    Animal dealers. (1)** DEFINITIONS. In this section:

(c) 'Animal dealer" means a person who, as principal or agent, engages in the business of buying for resale or for slaughter, selling or exchanging livestock or wild animals. "Animal dealer" does not include any of the following:

1. An animal dealer employee.

2. The operator of a farm who sells livestock if the operator keeps them on the farm solely for dairy, breeding or feeding purposes and the operator is not otherwise engaged in the business of buying them for resale, slaughter, sale or exchange.

2m. A person holding a license issued under s. 169.15, 169.18, 169.19, or 169.26 who sells wild animals if the person keeps them solely for breeding or feeding purposes and the person is not otherwise engaged in the business of buying them for resale, slaughter, sale or exchange.

3. An auctioneer registered under ch. 480 who conducts any of the following:

a. A farm sale at which no livestock is sold on a consignment basis.

b. A sale conducted at a state, county or district fair or a breeder association show.

c. A sale conducted by a youth agricultural organization.

(d) "Animal dealer employee" means an employee of a licensed animal dealer, who does business in the name of the licensed animal dealer.

(e) "Animal market" has the meaning given in s. 95.68 (1) (ag).

(f) "Animal transport vehicle" has the meaning given in s. 95.71 (1) (dm).

(g) "Livestock" has the meaning given in s. 95.68 (1) (d).

(h) "Wild animal" has the meaning given in s. 95.68 (1) (g).

**(2)** LICENSE. No person may operate as an animal dealer without an annual license from the department, except that no license is required of a person licensed as an animal market operator under s. 95.68. An animal dealer license expires on June 30 annually. An animal dealer license is not transferable.

**(2m)** EXEMPTION. The department may promulgate rules to exempt groups of persons from the licensing requirement under sub. (2) or the registration requirement under sub. (7) or both.

**(3)** APPLICATION. An application for a license under sub. (2) shall be made on a form provided by the department and shall

include information reasonably required by the department for licensing purposes. An application shall be accompanied by the applicable fees and surcharges required under subs. (4) and (5).

**(4)** FEES. Unless the department specifies a different fee by rule, the fee for an animal dealer license is $75.

**(5)** SURCHARGE AND PAST FEES. (a) An applicant for a license under sub. (2) shall pay a license fee surcharge of $100 if the department determines that within 365 days prior to submitting the license application the applicant did any of the following:

1. Operated as an animal dealer without a license in violation of sub. (2).

1m. Operated as a livestock dealer, as defined in s. 95.69 (1) (c), 1999 stats., without a license in violation of s. 95.69 (2), 1999 stats.

2. Operated an unregistered animal transport vehicle in violation of sub. (7).

2m. Operated an unregistered livestock vehicle, as defined in s. 95.71 (1) (g), 1999 stats., in violation of s. 95.69 (7), 1999 stats.

(b) In addition to the surcharge under par. (a), an applicant for a license under sub. (2) shall pay the fees due for the year in which the applicant was in violation.

(c) The payment of the surcharge and fees under this subsection does not relieve the applicant of other civil or criminal liability that may result from the failure to obtain a license or from the operation of an unregistered vehicle but does not constitute evidence of a violation of a law.

**(6)** LICENSE CONTINGENT ON FEES. The department may not issue or renew a license under sub. (2) unless the applicant pays all fees and surcharges that are due under subs. (4) and (5) as set forth in a statement from the department. The department shall refund a fee or surcharge paid under protest if the department determines that the fee or surcharge was not due as a condition of licensing under this section. If a fee or surcharge is paid by check, a license issued in reliance on that check is void if the check is not honored.

**(7)** ANIMAL TRANSPORT VEHICLE REGISTRATION. No animal dealer may operate an animal transport vehicle unless the animal transport vehicle is registered with the department in the name of the animal dealer. The animal transport vehicle shall be registered in the name of the animal dealer on a form provided by the department. The registration shall include a description and the serial number of the animal transport vehicle.

**(8)** RULES. The department may promulgate rules to specify license fees under sub. (4) or to regulate animal dealers, including rules related to animal dealer qualifications, construction and maintenance of animal transport vehicles, identification of animal transport vehicles, disease sanitation, humane treatment of animals, identification of animals, record keeping, reports to the department and compliance with applicable financial security requirements under state or federal law.

**(8m)** TRANSACTION RECORDS. An auctioneer registered under ch. 480 who sells livestock or wild animals and who is not required to obtain a license under this section shall make records of the sales available to the department upon request for disease investigation purposes.

**(9)** PENALTIES. A person conducting a business regulated by this section after revocation of his or her license shall be fined not less than $500 nor more than $1,000 or imprisoned not to exceed 6 months or both.

**History:** 1993 a. 16; 1995 a. 95; 2001 a. 56.
**Cross Reference:** See also ch. ATCP 12, Wis. adm. code.

**95.71    Animal truckers. (1)** DEFINITIONS. In this section:

(dm) "Animal transport vehicle" means any vehicle used to transport livestock or wild animals.

(e) "Animal trucker" means a person engaged in the business of transporting for hire, by means of an animal transport vehicle, livestock and wild animals, except that "animal trucker" does not include an animal trucker employee.

Case 3:08-cr-50013    Document 25-3    Filed 07/30/2008    Page 29 of 32

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242

15  Updated 05–06 Wis. Stats. Database
*Not certified under s. 35.18 (2), stats.*

ANIMAL HEALTH    95.715

(f) "Animal trucker employee" means the employee of a person who holds an animal trucker license if the employee, in the name of the licensed animal trucker, operates an animal transport vehicle which is registered by the animal trucker and on which the name and the business address of the licensed animal trucker are prominently displayed.

(h) "Livestock" has the meaning given in s. 95.68 (1) (d).

(i) "Wild animal" has the meaning given in s. 95.68 (1) (g).

(2) LICENSE. No person may operate as an animal trucker without an animal license issued by the department. An animal trucker license authorizes an animal trucker to operate only those animal transport vehicles that are registered by the animal trucker under sub. (4). A license expires on June 30 annually. An animal trucker license is not transferable.

(3) APPLICATION. An application for an animal trucker license under sub. (2) shall be made on a form provided by the department. The application shall include information reasonably required by the department for licensing purposes. As part of the application, the applicant shall register every animal transport vehicle operated by the applicant as provided under sub. (4). An application shall be accompanied by the applicable fees and surcharges required under subs. (5) and (6).

(4) ANIMAL TRANSPORT VEHICLE REGISTRATION. No animal trucker may operate an animal transport vehicle unless the animal transport vehicle is registered with the department in the name of the animal trucker. The animal transport vehicle shall be registered on a form provided by the department. The registration shall include a description and the serial number of the animal transport vehicle.

(5) FEES. (a) Unless the department specifies different fees by rule, an applicant for an animal trucker license shall pay a fee in an amount equal to $20 plus $5 for each animal transport vehicle registered with the applicant's license application under sub. (3).

(b) If during any license year an animal trucker registers an animal transport vehicle that was not registered with the animal trucker's annual license application under sub. (3) the animal trucker shall, at the time of the additional registration, pay a registration fee of $5 for each animal transport vehicle registered.

(6) SURCHARGE AND PAST FEES. (a) An applicant for an animal trucker license shall pay a license fee surcharge of $100 if the department determines that within 365 days prior to submitting the license application the applicant did any of the following:

1. Operated as an animal trucker without a license in violation of sub. (2).

1m. Operated as a livestock trucker, as defined in s. 95.71 (1) (e), 1999 stats., without a license in violation of s. 95.71 (2), 1999 stats.

2. Operated an unregistered animal transport vehicle in violation of sub. (4).

2m. Operated an unregistered livestock vehicle, as defined in s. 95.71 (1) (g), 1999 stats., in violation of s. 95.71 (4), 1999 stats.

(b) In addition to the surcharge under par. (a), an applicant for a license under sub. (2) shall pay the fees due for the year in which the applicant was in violation.

(c) The payment of the surcharge and fees under this subsection does not relieve the applicant of other civil or criminal liability that may result from the failure to obtain a license or to register a vehicle but does not constitute evidence of a violation of a law.

(7) LICENSE CONTINGENT ON FEES. The department may not issue or renew a license under sub. (2) unless the license applicant pays all fees and surcharges that are due under subs. (5) and (6). The department shall refund a fee or surcharge paid under protest if the department determines that the fee or surcharge was not due as a condition of licensing under this section. If a fee or surcharge is paid by check, a license issued in reliance upon that check is void if the check is not honored.

(8) RULES. The department may promulgate rules to specify license fees under sub. (5) or to regulate animal truckers, including rules related to animal trucker qualifications, construction and maintenance of animal transport vehicles, identification of animal transport vehicles, disease sanitation, humane treatment of animals, identification of animals, record keeping, reports to the department and compliance with applicable financial security requirements under state or federal law.

(9) PENALTIES. A person conducting a business regulated by this section after revocation of his or her license shall be fined not less than $500 nor more than $1,000 or imprisoned not to exceed 6 months or both.

History: 1993 a. 16; 2001 a. 56, 105.
Cross Reference: See also ch. ATCP 12. Wis. adm. code.

**95.715  Feed lots and veal lots. (1)** DEFINITIONS. In this section:

(a) "Feeder cattle" means bovine animals that are kept for the sole purpose of feeding prior to slaughter, that are not more than 18 months old as evidenced by the absence of permanent teeth and that are one of the following:

1. Nonspayed females that are not parturient or postparturient.

2. Spayed heifers.

3. Steers.

(b) "Feed lot" means a facility at which feeder cattle are assembled for feeding prior to slaughter.

(c) "Veal calf" means a bovine animal of either sex that is not more than 120 days old and that is kept for the sole purpose of feeding prior to slaughter for veal.

(d) "Veal lot" means a facility at which veal calves are assembled for feeding prior to slaughter.

(2) APPROVED FEED LOT. (a) The department may issue an annual permit designating a feed lot as an approved feed lot. A feed lot operator is not required to hold an approved feed lot permit.

(b) If a person imports feeder cattle directly to an approved feed lot in this state, the department may by rule exempt that person from import rules and preimport testing rules promulgated by the department that apply to persons who import feeder cattle into this state.

(c) Unless specifically authorized by the department, no person may remove feeder cattle or cattle commingled with feeder cattle from an approved feed lot except to a slaughtering establishment for slaughter.

(d) The department may promulgate rules to specify permit fees under par. (a) and to regulate feed lots. The rules may include requirements related to the construction and maintenance of approved feed lots, the segregation of imported feeder cattle and record–keeping requirements related to feeder cattle.

(3) APPROVED VEAL LOT. (a) The department may issue an annual permit designating a veal lot as an approved veal lot. A veal lot operator is not required to hold an approved veal lot permit.

(b) If a person imports veal calves directly to an approved veal lot in this state, the department may by rule exempt that person from import rules and preimport testing rules promulgated by the department that apply to persons who import veal calves into this state.

(c) Unless specifically authorized by the department, no person may remove veal calves or cattle commingled with veal calves from an approved veal lot except to a slaughtering establishment for slaughter.

(d) The department may promulgate rules to regulate approved veal lots. The rules may include requirements related to the construction and maintenance of approved veal lots, the segregation

Case 3:08-cr-50013 Document 25-3 Filed 07/30/2008 Page 30 of 32

Electronic reproduction of 2005–06 Wis. Stats. database, updated and current through June 30, 2008 and 2007 Wis. Act 242

95.715 ANIMAL HEALTH

Updated 05–06 Wis. Stats. Database 16
*Not certified under s. 35.18 (2), stats*

of imported veal calves and record–keeping requirements related to veal calves

History: 1993 a. 16.

Cross Reference: See also ch. ATCP 12, Wis. adm. code.

### 95.72 Transportation, processing and disposal of dead animals. (1) DEFINITIONS. In this section:

(a) "Animal food processor" means a person, other than a renderer, engaged in the business of slaughtering animals or collecting or receiving dead animals in a raw or uncooked state for processing into animal food

(b) "Collector" means a person engaged only in the business of collecting or receiving dead animals for sale or delivery to a renderer, animal food processor, grease processor or operator of a fur farm and who does not otherwise process the dead animals

(c) "Dead animal":

1. Means any dead animal or part of a dead animal other than an animal slaughtered as food for humans

2. Means an animal slaughtered as food for humans but which becomes unsuitable as food for humans

3. Includes animals slaughtered or processed as food for animals and all inedible parts and by–products of animals slaughtered or processed as food for humans

4. Does not include commercial feed as defined under s. 94.72 (1) (b) or fully rendered products of dead animals

(cm) "Grease processor" means any person engaged in the business of collecting or receiving and melting or refining previously cooked materials containing dead animal fat or tallow or a combination of dead animal fat or tallow and vegetable oil to produce grease

(d) "Renderer" means a person engaged in the business of collecting or receiving dead animals for rendering or processing into grease or other products

(e) "Rendering or processing plant" means a plant or facility for slaughtering animals or collecting dead animals and rendering or processing them to produce grease or other products or a plant or facility for collecting or receiving and melting or refining previously cooked materials containing dead animal fat or tallow or a combination of dead animal fat or tallow and vegetable oil to produce grease

(2) LICENSES; FEES. (a) *Requirement*. Except as provided in par. (b), no person may engage in the business of collecting or processing dead animals as a renderer, animal food processor, grease processor or collector unless the person pays a license fee and is issued an annual license by the department for that specific type of business operation.

(b) *Exemptions*. 1. A license is not required for a person who operates a slaughtering establishment licensed under s. 97.42 or inspected under the federal meat and poultry inspection acts if the establishment renders or disposes of offal or dead animals resulting from its operations only, but a person who operates a slaughtering establishment is subject to the transportation requirements under sub. (7) (b).

2. A license is not required for a person who operates a fur farm which collects or receives dead animals as food for fur–bearing animals produced by the fur farm, but a person who operates a fur farm is subject to transportation requirements under sub. (7) (b) and (c)

3. A license is not required for a person who is engaged solely in the collection or disposal of public or commercial garbage without the separate collection or retrieval of dead animals or dead animal parts for further sale, use or processing

4. A license is not required for a person who collects or receives individual animal parts exclusively for the manufacture of glue, gelatin, pharmaceuticals or other specialty products.

5. A license is not required for a person who collects, receives or processes hides

6. An animal food processor, grease processor or collector license is not required for a person who is licensed as a renderer

7. A grease processor or collector license is not required for a person who is licensed as an animal food processor

8. A collector license is not required for a person who is licensed as a grease processor

9. A renderer or animal food processor license is not required for a person who is licensed as a grease processor if he or she does not render or process dead animals other than incidental solid animal parts that are commingled with previously cooked materials containing dead animal fat or tallow or a combination of dead animal fat or tallow and vegetable oil

(c) *Application; fees; expiration; renewal*. 1. An applicant for a license shall submit a completed application form prescribed by the department which states the type of operation for which a license is desired, the business or plant location where operations are to be conducted and other information required by the department

2. An applicant for a license as a renderer, grease processor or an animal food processor shall submit a fee of $200 for each separate plant where processing operations are to be conducted, and an applicant for an initial license shall submit the inspection fee required under par. (e)

3. An applicant for a license as a collector shall submit a fee of $100 for each separate business location from which operations are to be conducted

4. Each license expires on February 28

5. Subject to s. 93.135, a person may renew a license by submitting the required license fee and renewal form

(d) *Issuance; standards*. The department may not issue a license unless the applicant's plant or business location is suitably located, constructed and equipped for the type of operation for which a license is required, all vehicles, facilities and equipment are maintained in a clean and sanitary condition and all processing and other operations are conducted in compliance with this section and rules promulgated under sub. (5).

(e) *Inspection; fee*. An applicant for an initial license as a renderer, grease processor or animal food processor shall submit an inspection fee of $25 for each separate plant to be operated by the applicant. The department may grant a temporary permit pending final action on the application, but the department may not issue the license unless it finds that the applicant's plant, premises, facilities and equipment are in compliance with the requirements of this section and rules promulgated under sub. (5). The department may not refund the inspection fee if the application is denied. Inspection fees are not required for the annual renewal of a license

(f) *Nontransferable*. No license issued under this section is transferable. In the case of any transfer of ownership of a plant or business for which a license is issued, the new owner shall apply for a new license

(3) RENDERING OR PROCESSING PLANT LOCATION. No person may establish a rendering or processing plant within one–eighth mile of a dwelling, other than a dwelling associated with the rendering or processing plant, or within one–eighth mile of a public or private business building, but a rendering or processing plant is not required to cease operations because a dwelling or business building is constructed closer than one–eighth mile to an existing plant. This subsection does not prohibit the continued operation of the plant of a renderer, animal food processor or grease processor in existence on November 26, 1981, or the erection of new or improved rendering or processing plant facilities on the existing premises subject to provisions of any local ordinances

(4) RENDERING AND PROCESSING PLANTS; CONSTRUCTION AND OPERATION. (a) *New plants*. No person may construct a rendering or processing plant unless it is constructed and equipped according to rules promulgated under sub. (5). No person may operate a rendering or processing plant unless the plant has sewage facilities and floor drains, all areas of the building and premises on which the plant is situated are kept in a clean and sanitary condi-

Case 3:08-cr-50013   Document 25-3   Filed 07/30/2008   Page 31 of 32

tion, and all operations are conducted to prevent the creation of a nuisance.

(b) *Closed vessels*  A person who operates a rendering or processing plant shall conduct all rendering in closed vessels

(c) *Disposal of dead animals*  1  A person who operates a rendering or processing plant shall deposit all dead animals received for rendering or processing within the plant or other enclosed structure immediately upon their arrival

2  A person who operates a rendering or processing plant shall dispose of an animal within 24 hours after its arrival during the days of Sunday to Friday, or within 48 hours after its arrival on a Saturday or a Sunday followed by a holiday, unless any of the following occurs:

a  The department issues a permit allowing a longer amount of time

b. The carcass is received in a frozen condition and is disposed of within a reasonable period of time

c. Disposal of the animal within the time period is impossible and the department is so notified by telephone

(d) *Diseased or contaminated animals*  The department may detain or hold for further inspection dead animals or animal hides it suspects are affected with a highly contagious or infectious disease, or any dead animal products suspected of containing any poisonous or deleterious substance which may render the products unfit for use as food for animals  The department shall order the destruction of dead animals or any animal hides or products determined to be infected with a highly contagious or infectious disease or unfit for use as food for animals

(5) RULES  The department shall promulgate rules governing the collection, transportation, processing, rendering and disposal of dead animals, entrails and paunch materials, the slaughtering of animals for animal food processing or rendering, the location, construction and maintenance of all buildings, facilities and equipment used in collecting, slaughtering and processing operations, the sale or use of dead animal products as food for animals, the issuance of licenses or permits and other rules for the conduct of operations subject to a license under this section

(6) INSPECTION  (a)  *Initial inspection*  Upon receipt of an application for an initial license as a renderer, grease processor or animal food processor, the department shall inspect the plant, premises, facilities and equipment to be used in conducting the business

(b) *Annual inspection.*  The department shall inspect all plants, premises, facilities, equipment and transport vehicles used by each licensee at least once each year, and more often if necessary, to ensure that the licensee conducts the business operations in conformity with this section and rules promulgated under sub (5).

(c) *Deficiencies*  If the department finds that any of the applicant's or licensee's plants, premises, facilities, equipment or transport vehicles do not comply with the requirements of this section or rules promulgated under sub (5), it shall notify the applicant or licensee in writing of the deficiencies and shall order the applicant or licensee to make appropriate changes  The department shall allow a reasonable time not exceeding 90 days for the applicant or licensee to make the changes  The department shall conduct a reinspection to determine compliance with the department's order or the need to order further changes  The department may allow an additional 90 days if it is necessary for the applicant or licensee to correct deficiencies discovered during the reinspection. Failure to correct deficiencies within the time allowed is grounds for the denial, suspension or revocation of the license or temporary permit.

(7) TRANSPORTATION OF DEAD ANIMALS  (a)  *License requirement*  No person may transport dead animals on public highways in this state without a license issued under this section.  A licensee may not transport dead animals under conditions not authorized by the license  This paragraph does not apply to persons exempt from obtaining a license under this section, a farmer transporting dead animals raised on his or her farm, the transportation of hides

or fully rendered or processed dead animal products, the transportation of dead animals by government agencies or private agencies engaged in scientific research, persons transporting dead animals for destruction or burial, or animal truckers transporting animals which have died in transit if the dead animals are transported directly to a licensed renderer, animal food processor or collector

(b) *Enclosure or covering of dead animals*  No person may transport a dead animal on a public highway unless it is transported in a closed vehicle or container or unless it is completely covered with a tarpaulin or other suitable material  Vehicles or containers used for the transportation of dead animals shall be leakproof to prevent spilling or dripping of liquid waste.  This paragraph does not apply to the transportation of animal hides or to a farmer transporting dead animals raised on his or her farm

(c) *Permit*  No licensee or fur farmer may operate any vehicle for the transportation of dead animals unless the person is issued a vehicle permit by the department.  There is no charge for this permit  An applicant for a vehicle permit shall submit a completed application form prescribed by the department which states the applicant's name and address, vehicle identification and other information required by the department  The permit holder shall keep the permit with the vehicle for which it was issued

(d) *Interstate transport.*  Except as provided in reciprocal agreements between this state and contiguous states, no dead animals or parts of dead animals which are raw or unrendered, except green or salted hides, may be transported into this state unless the requirements of this subsection and rules promulgated under sub. (5) relating to the transportation of dead animals are complied with

(8) TRUCK TRANSFER STATIONS; PERMITS  No person may own or operate a truck transfer station for the unloading or reloading of dead animals unless the person is issued a permit by the department  The department shall issue permits only to persons licensed under this section  Truck transfer stations may be used only for unloading or reloading dead animals for delivery to licensees under this section.  No person may operate a truck transfer station unless the building is constructed, maintained and operated according to rules promulgated under sub (5) and water and sewerage facilities are provided on the premises

(9) MISREPRESENTATION  No person may represent that he or she is engaged in or offer to provide services in connection with an activity for which a license is required under this section unless the person holds a license or permit for the activity issued under this section  All advertising by a person licensed under this section shall specify the activity for which the license was issued

(10) HUMANE HANDLING  Live downer animals picked up for animal food processing or rendering shall be slaughtered before loading for transport to a processing or rendering plant  Slaughtering shall be done by humane methods as defined in s  95 80 (1) (a)

(11) PENALTIES  Any person who violates this section or any rule promulgated under this section shall forfeit not less than $500 nor more than $1,000

**History:** 1981 c  66 314; 1983 a. 111, 115; 1983 a  329 (20); 1989 a  56; 1991 a. 39; 1995 a  102; 1997 a  191; 2001 a  56
**Cross Reference:** See also ch  ATCP 12  Wis adm code

**95.80  Humane slaughtering. (1)** DEFINITIONS  As used in this section:

(a) "Humane method" means:

1  Any method of slaughtering livestock which normally causes animals to be rendered insensible to pain by a single blow or shot of a mechanical instrument or by electrical, chemical or other means that is rapid and effective, before being shackled, hoisted, thrown, cast, or cut; or

2  The method of slaughtering, including handling and other preparation for slaughtering, required by or used in connection with the ritual of any religious faith, whereby the animal suffers loss of consciousness by anemia of the brain caused by the simul-

Electronic reproduction of 2005–06 Wis. Stats database, updated and current through June 30 2008 and 2007 Wis Act 242

**95.80    ANIMAL HEALTH**

Updated 05–06 Wis. Stats. Database    18
*Not certified under s. 35.18 (2), stats.*

taneous and instantaneous severance of the carotid arteries with a sharp instrument

(b) "Livestock" means cattle, horses, swine, sheep, goats, farm-raised deer and other species of animals susceptible of use in the production of meat and meat products

(c) "Slaughterer" means any person operating a slaughterhouse licensed under s. 97 42, or registered under s. 97.44

**(2)** PROHIBITION No slaughterer may slaughter livestock except by a humane method

**History:** 1971 c 40 s 93; 1973 c 206; 1983 a 111 189; 1995 a 79

**95.99   Penalties (1)** Any person who violates this chapter, or an order issued or a rule adopted under this chapter, for which a specific penalty is not prescribed shall, for the first offense be fined not more than \$1 000; and for any subsequent offense fined not less than \$500 nor more than \$1,000, or imprisoned not more than 6 months or both

**(2)** The department may seek an injunction restraining any person from violating this chapter or any rule promulgated under this chapter

**(3)** A person who violates this chapter or any rule promulgated or order issued under this chapter, for which a specific penalty is not prescribed, may be required to forfeit not less than \$200 nor more than \$5,000 for the first offense and may be required to forfeit not less than \$400 nor more than \$5,000 for the 2nd or subsequent offense committed within 5 years of an offense for which a penalty has been assessed under this section A forfeiture under this subsection is in lieu of a criminal penalty under sub. (1)

**History:** 1977 c 216; 1979 c 129; 1981 c 66 ss 4 6; 1983 a 111; 1995 a 450

*Text from the 2005–06 Wis. Stats. database updated by the Revisor of Statutes. Only printed statutes are certified under s. 35.18 (2), stats. Statutory changes effective prior to 4–2–08 are printed as if currently in effect. Statutory changes effective on or after 4–2–08 are designated by NOTES. Report errors at (608) 266–3561, FAX 264–6948, http://www.legis state wi us/rsb/stats html*

73207-000272

COPY

WISCONSIN DEPARTMENT OF AGRICULTURE,
TRADE AND CONSUMER PROTECTION
P.O. BOX 8911, MADISON, WI 53708-8911

# LICENSE PERMIT or REGISTRATION

ACTIVITY CODES    FARM RAISED DEER REGISTRATION

EL

NUMBER
19 001011

EXPIRES    12/31/2004

NON TRANSFERABLE

BUSINESS LOCATION
JOHNSON, RBT/SITARSKI, RICHARD
21177 LITTLE HANEY RD
GAYS MILLS WI 54631

MAIL ADDRESS
JOHNSON, RBT/SITARSKI, RICHARD
HARD ROCK HUNTING RANCH
4910 GRADY LANE
KERRYVILLE TX 78028

SUBJECT TO REVOCATION OR
SUSPENSION AS PROVIDED BY LAW

STATUTE    95, 55

THIS IS YOUR CERTIFICATION DOCUMENT.
POST OR CARRY AS REQUIRED BY LAW

---

ADMST-27

REMOVE THIS CARD TO CARRY AS
AN IDENTIFICATION

TEAR ON THIS LINE

WISCONSIN DEPARTMENT OF AGRICULTURE,
TRADE AND CONSUMER PROTECTION

FARM RAISED DEER REGISTRATION

EXPIRATION DATE    12/31/2004

NUMBER    19 001011

ACTIVITY CODES    EL

JOHNSON, RBT/SITARSKI, RICHARD
HARD ROCK HUNTING RANCH
4910 GRADY LANE
KERRYVILLE TX 78028

12/1/9

---

EXHIBIT
C



AH-FROKA100

Wisconsin Department of Agriculture, Trade and Consumer Protection
Division of Animal Health
PO Box 8911
Madison, WI 53708-8911
Phone: 608-224-4872    Fax: 608-224-4871

COPY

| OFFICE USE ONLY |
| --- |
| REG. NO |
| DATE ISSUED |
| DATE EXPIRES |

### PLEASE PRINT

## FARM-RAISED DEER KEEPER REGISTRATION APPLICATION
.95.55, Wis. Stats. and s. ATCP 10.61, Wis. Adm. Code)
Refer to enclosed Guidelines for assistance in completing this application)

**Applicant Information**

**1. Business Information:**

Business Name: **Hard Rock Hunting Ranch**

Primary Contact Name: **Robert       S       Johnson**
First          MI          Last

Home Phone: **830-792-6951**    Office Phone: _____    Cell Phone: _____    Email: _____

Business Mailing Address
**111 Grady Ln          Kerrville          Tx          78028**
Street Address          City          State          Zip

Type of Entity: Individual **X**    Partnership___    Corporation___    Cooperative___    LLC___    Trust___
Other _____    State that business is formed in: _____

DBA, trade names, other names used to carry out business (List all):
**Hard Rock Game Farms**

Name of officers, partners, manager/members or trustees:

| me | Title | Phone | Email |
| --- | --- | --- | --- |
| ne | Title | Phone | Email |
| e | Title | Phone | Email |

Custodian/Caretaker Information: (If no ownership interest)

odian Name: **Dan              Lund**
First          MI          Last

**21177 Little Haney Rd          Gays Mills          WI          54631**
Street Address          City          State          Zip

Phone: _____    Office Phone: **608-872-2251**    Cell Phone: _____    Email: _____

ated Activities:
e you a dealer of farm-raised deer or elk?    Y    **N**
Do you transport farm-raised deer for compensation?    Y    **N**

ATTACHMENT ___
Page **171** of **332**



# Herd Information

**General Information:**

This herd enrolled in the CWD monitoring program ? (Y)   (N)   CWD enrollment number _____  *Testing no #*

If this herd was registered last year, what was the herd registration number? __19 00101l__

Is this registration application for a herd that is operated as a hunting preserve*? (Y)   N

If yes, how many acres does the cervid herd have access to while being hunted? __200 t —__

List any other licenses/registrations issued by the Department. __IE-0004  12 8824 - Ac__

* A separate application will be required to operate as a hunting preserve in addition to the farm-raised deer registration application.

**8. Leased Cervids:**

Are any of the cervids in this herd leased? Y   (N)

If yes, please provide legal name of the cervid owner and contact information

Lessor's Legal Name: _____

_____

Street Address _____     City _____     State ___     Zip ___

Home Phone: _____     Office Phone: _____     Cell Phone: _____     Email: _____

**9. Inventory:**

| | ELK | | | RED DEER | |
|---|---|---|---|---|---|
| Fawn: Male____ | Female____ | | Fawn: Male____ | Female____ | |
| Yearling: Male____ | Female____ | | Yearling: Male____ | Female____ | |
| Adult: Male____ | Female____ | | Adult: Male____ | Female____ | |
| TOTAL # _29_ | | | TOTAL # (0) | | |

| | WHITETAILED DEER | | | SIKA | |
|---|---|---|---|---|---|
| Fawn: Male____ | Female____ | | Fawn: Male____ | Female____ | |
| Yearling: Male____ | Female____ | | Yearling: Male____ | Female____ | |
| Adult: Male__63__ | Female____ | | Adult: Male____ | Female____ | |
| TOTAL # (  ) | | | TOTAL # (  ) | | |

| | FALLOW DEER | | | REINDEER | |
|---|---|---|---|---|---|
| Fawn: Male____ | Female____ | | Fawn: Male____ | Female____ | |
| Yearling: Male____ | Female____ | | Yearling: Male____ | Female____ | |
| Adult: Male____ | Female____ | | Adult: Male____ | Female____ | |
| TOTAL # (  ) | | | TOTAL # (  ) | | |

**OTHER FARM-RAISED DEER**

| Identify species: | | | |
|---|---|---|---|
| Male____ | Female____ | | TOTAL # (  ) |
| Male____ | Female____ | | |
| Male____ | Female____ | | |

**TOTAL NUMBER OF ALL FARM-RAISED DEER INCLUDED IN THIS HERD:** __63__

ATTACHMENT __1__

10. Herd Location:

First Location:

COPY

21177 Little Harry Rd    Geer Mills    WZ    54631
Street Address              City              State        Zip

Crawford    Harry    16-9    21177                    200+
County      Township    Section    Fire Number        Number of Acres

t. Landowner if different than applicant: Richard Sitarski

Phone number: 630-407-4594    630-993 1004
Home              Office              Cell              Email

. Are there other herds registered separately at this location?  (Y)    N

If yes, what is the registration number(s) of the other herd(s) 19 000077

Have you had an inspection conducted by the department to determine whether there is medically significant separation? Y    (N)

If you have whitetailed deer in this herd, what is the DNR fencing certificate number

---

2. this herd is maintained at more than one location, list additional farm locations also:

Street Address              City              State        Zip

ty    Township    Section    Fire Number    Number of Acres

Landowner if different than applicant:

Phone number:
Home              Office              Cell              Email

re there other herds registered separately at this location?    Y    N

If yes, what is the registration number(s) of the other herd(s)

Have you had an inspection conducted by the department to determine whether there is medically significant separation? Y    N

you have whitetailed deer in this herd, what is the DNR fencing certificate number

11. **Fees:**

$50 per calendar year for 15 or fewer farm-raised deer
OR          $ _____
$100 per calendar year for more than 15 farm-raised deer.   $ _100.00_

Keeper of farm-raised deer registration Surcharge, if applicable
$100 (for keeping farm-raised deer within 365 days prior to
submitting an application)**      $ _____

Subtotal     $ _100.00_

Registration Late Fee, if applicable.
20% of subtotal amount (for renewals, submitted after December 31) $ _$20.00_

Total fees:     $ _$120.00_

12. **Signature(s):**

I (We) certify that the above information in this application is correct, and that I (we) are familiar with the Wisconsin statutes and administrative code applicable to keepers of farm-raised deer in Wisconsin.

Applicant(s) or authorized representative of applicant must sign and date below.

_____  12/30/04
Applicant or Authorized Representative Signature    Date

Robert Johnson
Print name of person signing

Owner of Elk
Title of person signing

_____  _____
Applicant or Authorized Representative Signature    Date

_____
Print name of person signing

_____
Title of person signing

Enclose check or money order made payable to:
Wisconsin Department of Agriculture, Trade and Consumer Protection

| **Mail Renewal Applications to:** | **Mail First Time Applications to:** |
|---|---|
| PO BOX 93479 | WDATCP – DAH |
| Milwaukee, WI 53293-0479 | PO BOX 8911 |
| | Madison, WI 53708-8911 |

If you have any questions regarding this form, contact the Division of Animal Health at 608-224-4872.
_ form contains personally identifiable information which may be used for purposes other than that for which it was collected.
_ e department may deny this registration if it determines you have been operating without a registration and have not paid the
_ ddditional surcharge fees. Payment of fees does not relieve you of civil or criminal liability for the violation.

ATTACHMENT _____
Page _174_ of _332_